**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| TPI COMPOSITES, INC., *et al.*, | § | Case No. 25-34655 (CML) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |

### THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
### OBJECTION TO REMOTE TESTIMONY BY ANDREW MOIR

The Official Committee of Unsecured Creditors (the "Committee") of TPI Composites,

Inc. ("TPI") and its affiliated debtors-in-possession (together with TPI, the "Debtors") hereby

submits this objection (the "Objection") to the *Notice of Intent to Adduce Testimony from a Remote*

*Location by Telephone and Video Technology* (Bankr. Dkt. No. 435, the "Notice"), seeking to

permit Andrew Moir, Managing Director in the Power Opportunities Strategy of Oaktree Capital

Management, L.P. ("Oaktree"), to testify remotely.  In support of this Objection, the Committee

respectfully states as follows.

### PRELIMINARY STATEMENT

1.      The Committee objects to the Notice and requests that the Court require Mr. Moir

to appear and testify live in person.  Oaktree did not reach out to confer before filing the notice.

Had it done so, the Committee would have explained that it anticipates a document-based cross

examination during a one-day hearing where as many as six (6) witnesses are expected to testify

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  TPI Texas, LLC (4000), TPI Composites, Inc. (0775), TPI International, LLC (9537), TPI Turkey, LLC (2552), TPI APAC, LLC (8038), TPI APAC II, Inc. (3515), TPI Turkey II, LLC (2551), TPI Turkey Izbas, LLC (0185), TPI Composites Services, LLC (4547), TPI Mexico, LLC (0745), TPI Mexico II, LLC (8269), TPI Mexico III, LLC (7315), TPI Mexico IV, LLC (1231), TPI Mexico V, LLC (5628), TPI Mexico VI, LLC (7260), Ponto Alto Holdings, LLC (0322), TPI Arizona, LLC (9641), TPI Iowa, LLC (2887), TPI Iowa II, LLC (4175), Composite Solutions, Inc. (1486), TPI Holdings Mexico, LLC (1936), and TPI Technology, Inc. (2727).  The Debtors' mailing address is 9200 E. Pima Center Parkway, Suite 250, Scottsdale, AZ 85258.

and be cross-examined.  Further, the need for this Objection is another example of the usual course of dealing with Oaketree during these proceedings.   Last week, Oaktree produced an additional 19,043 pages of documents five (5) weeks after its original production, citing an alleged clerical error.  The Committee reviewed in haste, and will depose Mr. Moir on November 19, 2025.

2.     Under the circumstances, remote cross examination will be unduly cumbersome, potentially less effective, and in any event the rules only permit remote testimony upon a showing of good cause in compelling circumstances, which does not include mere inconvenience.  Even a witness's unavailability does not amount to good cause if foreseeable. This hearing has been on the Court's calendar for weeks, the outcome of which is important to the Committee and all general unsecured creditors in this case.  Oaktree bears the burden to show good cause in compelling circumstances.  Unless it meets that burden, the Court should require Mr. Moir to appear and testify live in person.

### RELEVANT FACTUAL BACKGROUND

3.     On August 11, 2025 (the "Petition Date"), the Debtors commenced voluntary cases under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in this Court (the "Chapter 11 Cases").  The Debtors claim to owe $472 million to Oaktree on a secured basis as of the Petition Date (the "Oaktree Claim").

4.     Immediately upon its appointment, the Committee began to investigate, among other things, the Oaktree Claim and the Uptier Transaction,[2] pursuant to which Oaktree converted its preferred equity in the Debtors to secured debt without providing any additional consideration. While the Committee's investigation was expedited and abbreviated by the terms of the DIP

---

[2] The "Uptier Transaction" is described in more detail in the *Adversary Complaint* (Adv. Dkt. No. 1, the "Complaint") in Adv. No. 25-03762 (the "Adversary").

Orders[3] governing a DIP loan from Oaktree to the Debtors, the Committee accessed documents and information that demonstrate Oaktree's clear intent was to inequitably leapfrog unsecured creditors on the eve of the bankruptcy filings.

5.      Under the DIP Orders, however, (i) the Debtors stipulated, *inter alia*, that "no portion of the Prepetition Liens or Senior Secured Obligations [as defined in the DIP Orders] is subject to any challenge, cause of action, or defense, including . . . recharacterization . . . [or] subordination (whether equitable or otherwise)," and (ii) the Debtors' stipulations (including the foregoing) are binding *unless* the Committee timely filed a challenge as set forth in the DIP Orders. The Debtors have confirmed they will not pursue any claims or causes of action against Oaktree to challenge the Uptier Transaction or the Oaktree Claim.

6.      On October 1, 2025, therefore, the Committee filed its Complaint against Oaktree, thereby initiating the Adversary and asserting causes of action for (i) recharacterization of the Oaktree Claim, (ii) equitable subordination of the Oaktree Claim, (iii) avoidance of the Uptier Transaction, and (iv) declaratory relief to limit Oaktree's ability to credit bid.  The next day, the Committee filed its Standing Motion,[4] seeking standing to assert certain claims in the Complaint that otherwise only the trustee (or debtor-in-possession exercising the powers of a trustee) would have standing to pursue.

---

[3] *Interim Order (I) Authorizing Debtors and Debtors in Possession to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Senior Secured Parties, (IV) Modifying Automatic Stay, (V) Scheduling a Final Hearing and (VI) Granting Related Relief* (Bankr. Dkt. No. 73, the "Interim DIP Order" made final pursuant to Bankr. Dkt. No. 373, together with the Interim DIP Order, the "DIP Orders")

[4] *Emergency Motion of the Official Committee of Unsecured Creditors for Standing to Prosecute Claims on Behalf of the Debtors' Estates* (Bankr. Dkt. No. 301, the "Standing Motion").

7.     The court entered an order on October 21, 2025, which set a hearing on the Standing Motion and motions to dismiss the Adversary Complaint for November 24, 2025.[5]  On November 11, 2025, less than two weeks before the upcoming hearing on the Standing Motion, Oaktree for the first time produced 19,043 pages of documents, citing a purported clerical error that caused their allegedly inadvertent withholding.  Oaktree claimed it intended to produce these documents five weeks earlier on October 1, 2025.

8.     On November 17, 2025, without conferring beforehand, Oaktree filed the Notice, seeking to permit Andrew Moir, Managing Director in the Power Opportunities Strategy of Oaktree, to testify remotely at the November 24 hearing on the Standing Motion.

9.     Normally, the Committee would not object to such a request.  Here, however, given the critical nature of the relief under consideration, the fact that Oaktree just recently produced a material trove of documents it previously withheld, the Committee's significant anticipated use of exhibits during Moir's cross examination, and the limited Court time in light of the expected evidentiary presentation and argument, the Committee objects to Mr. Moir testifying remotely and requests instead that he appear to testify in person.

## **ARGUMENT**

10.     Federal Rule of Civil Procedure 43 applies in bankruptcy cases.  Fed. R. Bankr. P. 9017 ("The Federal Rules of Evidence and Fed. R. Civ. P. 43 , 44 , and 44.1 apply in a bankruptcy case.); L.B.R. 9017-1 ("FED. R. CIV. P. 43 applies to the taking of testimony.).  Titled "Taking Testimony", rule 43 provides in relevant part as follows:

> (a) In Open Court. At trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence , these rules, or other rules adopted by the Supreme Court provide otherwise. **For good cause in compelling circumstances and with appropriate safeguards, the court may permit**

---

[5] *Order Approving Schedule for Standing Motion and Related Matters* (Adv. Dkt. No. 24).

**testimony in open court by contemporaneous transmission from a different location**.

Fed. R. Civ. P. 43(a) (emphasis added).  Under rule 43, there is "a clear preference for live in-court testimony."  *See U.S. v. Navarro*, 169 F.3d 228, 239 (5th Cir. 1999).

11.     The Advisory Committee Notes for the 1996 amendments to rule 43(a) explain the importance of and preference for live, in-person testimony:

> Contemporaneous transmission of testimony from a different location is permitted only on showing good cause in compelling circumstances. The importance of presenting live testimony in court cannot be forgotten. The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling. The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition. Transmission cannot be justified merely by showing that it is inconvenient for the witness to attend the trial.

*U.S. v. Navarro*, 169 F.3d at 238 (quoting FED. R. CIV. P. 43 advisory committee's note); *see also Eller v. Trans Union, LLC*, 739 F.3d 467, 478 (10th Cir. 2013) ("the rule is intended to permit remote testimony when a witness's inability to attend trial is the result of 'unexpected reasons, such as accident or illness,' and **not when it is merely 'inconvenient for the witness to attend the trial**.'" (emphasis added)).

12.     "Courts most frequently allow remote testimony in special circumstances, such as where a vital witness would be endangered or made uncomfortable by appearing in a courtroom." *Eller v. Trans Union, LLC*, 739 F.3d at 478 (citing *Parkhurst v. Belt,* 567 F.3d 995, 997, 1002–03 (8th Cir.2009) (child victim of sexual abuse); *Jennings v. Bradley,* 419 Fed. Appx. 594, 598 (6th Cir.2011) (unpublished) (three witnesses posed security threats and the fourth would be deprived of necessary mental health support if he had to testify in person)).   By contrast, when an impediment to appearing in person is foreseeable, it typically does not rise to the level of "good cause" under rule 43.  For example, in *Eller v. Trans Union*, one witness, a military attorney, could not attend trial because he had a conflicting court marshal proceeding in Turkey, and he submitted

an affidavit to the effect that "it was more than 'inconvenient for [him] to attend trial ….'" *Eller v. Trans Union*, 739 F.3d 467, 478.  But "there was no evidence to suggest that [his] trip to Turkey arose for 'unexpected reasons,' as is typically required in a showing of good cause …." *Id.*  "In these circumstances, [the plaintiff] could (and perhaps should) have foreseen that [the witness] might not be available for trial and made alternative arrangements for his testimony." *Id.*; *see also Politis v. Noblin*, Civil Action H–08–2595, 2009 WL 10693537 (S.D. Tex. April 16, 2009) (denying remote appearance even though the requesting party was not legally permitted to enter the United States).

13.     Under the local rules, "the party choosing to call a witness to testify remotely must first demonstrate that good cause in compelling circumstances exists and that appropriate safeguards have been established." *See* L.B.R. 9017-1(c).  Oaktree can preliminarily establish good cause under the local rules by filing the Notice, provided that no one objects.  *See* L.B.R. 9017-1(c)(2)(B).  But, "[i]f a party-in-interest files a timely objection, the Court will rule on the objection prior to or at the scheduled hearing or trial." *Id.*  The Committee objects and intends to hold Oaktree to its burden of proof.

## <u>CONCLUSION</u>

For the foregoing reasons, the Committee respectfully requests that the Court deny remote participation by Mr. Moir and provide the Committee such other and further relief to which it is entitled at law or in equity.

*[Signature page follows]*

-6-

Dated: November 18, 2025

**MUNSCH HARDT KOPF & HARR, P.C.**

*/s/ John D. Cornwell*
John D. Cornwell (24050450)
Julian P. Vasek (24070790)
Alexander R. Perez (24074879)
700 Milam St., Suite 800
Houston, Texas 77002
Phone: (713) 222-1470
Fax: (713) 222-1475
E-mail: jcornwell@munsch.com
E-mail: jvasek@munsch.com
E-mail: arperez@munsch.com

-and-

**LOWENSTEIN SANDLER LLP**
Jeffrey L. Cohen (admitted *pro hac vice*)
Eric Chafetz (admitted *pro hac vice*)
David M. Posner (admitted *pro hac vice*)
Erica G. Mannix (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020
Phone: (212) 262-6700
Fax: (212) 262-7402
E-Mail: jcohen@lowenstein.com
E-mail: echafetz@lowenstein.com
E-mail: dposner@lowenstein.com
E-mail: emannix@lowenstein.com

-and-

**LOWENSTEIN SANDLER LLP**
Michael A. Kaplan *(admitted pro hac vice)*
Colleen M. Restel (SDTX Fed. No. 3867989)
One Lowenstein Drive
Roseland, New Jersey 07068
Phone: (973) 597-2500
Fax: (973) 597-2400
E-Mail: mkaplan@lowenstein.com
E-Mail: crestel@lowenstein.com

*Counsel for the Official Committee
of Unsecured Creditors*

### <u>CERTIFICATE OF SERVICE</u>

I certify that on November 18, 2025, I caused a true and correct copy of the foregoing document to be served on Oaktree and the Debtors to counsel of record, and on all other parties who have appeared, by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ John D. Cornwell*
John D. Cornwell
