United States Bankruptcy Court
Southern District of Texas

**ENTERED**

July 01, 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | § § § | **Chapter 11** |
| **TPI COMPOSITES, INC.,** *et al.*, | § § | **Case No. 25-34655 (CML)** |
| **Debtors.**[1] | § § § § | **(Jointly Administered)** **Re: Docket Nos. 931 & 932** |

**FINDINGS OF FACT, CONCLUSIONS
OF LAW, AND ORDER (I) APPROVING
DISCLOSURE STATEMENT ON FINAL BASIS AND
(II) CONFIRMING AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
OF TPI COMPOSITES, INC. AND CERTAIN OF ITS AFFILIATED DEBTORS**

WHEREAS, on May 22, 2026, TPI Composites, Inc., TPI Texas, LLC, TPI International, LLC, TPI Turkey, LLC, TPI APAC, LLC, TPI APAC II, Inc., TPI Turkey II, LLC, TPI Turkey Izbas, LLC, TPI Composites Services, LLC, TPI Mexico, LLC, TPI Mexico II, LLC, TPI Mexico III, LLC, TPI Mexico IV, LLC, Ponto Alto Holdings, LLC, TPI Arizona, LLC, TPI Iowa, LLC, TPI Iowa II, LLC, Composite Solutions, Inc., TPI Holdings Mexico, LLC, and TPI Technology, Inc. (collectively, the "**RemainCo Debtors**"), as debtors and debtors in possession in the above captioned chapter 11 cases (collectively with TPI Mexico V, LLC and TPI Mexico VI, LLC, the "**Debtors**"),[2] proposed and filed the *Amended Joint Chapter 11 Plan of Liquidation of*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  TPI Texas, LLC (4000), TPI Composites, Inc. (0775), TPI International, LLC (9537), TPI Turkey, LLC (2552), TPI APAC, LLC (8038), TPI APAC II, Inc. (3515), TPI Turkey II, LLC (2551), TPI Turkey Izbas, LLC (0185), TPI Composites Services, LLC (4547), TPI Mexico, LLC (0745), TPI Mexico II, LLC (8269), TPI Mexico III, LLC (7315), TPI Mexico IV, LLC (1231), TPI Mexico V, LLC (5628), TPI Mexico VI, LLC (7260), Ponto Alto Holdings, LLC (0322), TPI Arizona, LLC (9641), TPI Iowa, LLC (2887), TPI Iowa II, LLC (4175), Composite Solutions, Inc. (1486), TPI Holdings Mexico, LLC (1936), and TPI Technology, Inc. (2727).  The Debtors' mailing address is 9200 E. Pima Center Parkway, Suite 250, Scottsdale, AZ 85258.

[2] On June 30, 2026, this Court entered the *Final Decree Closing Cases of TPI MX V, LLC & TPI MX VI, LLC* (Docket No. 998), which closed the chapter 11 cases for TPI Mexico V, LLC and TPI Mexico VI effective as of June 15, 2026.

*TPI Composites, Inc. and Certain of Its Affiliated Debtors* (Docket No. 931) (as may be amended, supplemented, or otherwise modified from time to time in accordance with the terms thereof and this Order, the "**Plan**"),[3] annexed hereto as **Exhibit A**, and filed the *Disclosure Statement for Amended Joint Chapter 11 Plan of Liquidation of TPI Composites, Inc. and Certain of Its Affiliated Debtors* (Docket No. 932) (the "**Disclosure Statement**");

WHEREAS, on May 21, 2026, after notice and hearing, this Court entered the *Order (I) Conditionally Approving Disclosure Statement, (II) Establishing Solicitation, Voting, and Related Procedures, (III) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan, (IV) Establishing Notice and Objection Procedures for Confirmation of Plan, and (V) Granting Related Relief* (Docket No. 927) (the "**Solicitation and Scheduling Order**"), which, among other things, (i) conditionally approved the Disclosure Statement, (ii) approved the solicitation procedures related to the Disclosure Statement, and (iii) scheduled a combined hearing on July 1, 2026 at 1:00 p.m. (Prevailing Central Time) to consider final approval of the Disclosure Statement and confirmation of the Plan (the "**Combined Hearing**");

WHEREAS, the RemainCo Debtors, through their solicitation and balloting agent, Kroll Restructuring Administration LLC ("**Kroll**"), caused the transmittal of the Disclosure Statement and the Plan and related solicitation materials, including copies of the Court-approved ballot (the "**Ballot**"), notice of non-voting status (the "**Notice of Non-Voting Status**"), and notice of the Combined Hearing (collectively, the "**Solicitation Materials**"), as applicable, to holders of Claims and Interests, in each case, in accordance with the Solicitation and Scheduling Order, as described in the *Affidavit of Service of Solicitation Materials*, filed on June 24, 2026 (Docket

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

No. 986) (the "**Solicitation Affidavit**"), as well as the *Declaration of Craig Johnson of Kroll Restructuring Administration LLC Regarding Solicitation of Votes and Tabulation of Ballots Cast on Amended Joint Chapter 11 Plan of Liquidation of TPI Composites, Inc. and Certain of Its Affiliated Debtors*, filed on June 29, 2026 (Docket No. 992) (the "**Tabulation Declaration**");

WHEREAS, on June 1, 2026, the RemainCo Debtors, through Kroll, caused notice of the Combined Hearing to be published in *USA Today* as set forth in the *Certificate of Publication*, filed on June 4, 2026 (Docket No. 955) (the "**Publication Affidavit**");

WHEREAS, due and proper notice of the Combined Hearing was given to holders of Claims against and Interests in the RemainCo Debtors and all other parties in interest in compliance with chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Local Rules**"), the Procedures for Complex Chapter 11 Cases in the Southern District of Texas, and the Solicitation and Scheduling Order, as established by the affidavits of service, mailing, and publication filed with this Court, including the Solicitation Affidavit and the Publication Affidavit, and such notice being sufficient under the circumstances and no further notice being required;

WHEREAS, on June 17, 2026, the RemainCo Debtors filed the *Notice of Filing of Plan Supplement for Amended Joint Chapter 11 Plan of Liquidation of TPI Composites, Inc. and Certain of Its Affiliated Debtors* (Docket No. 982) (as may be amended, supplemented, or otherwise modified from time to time, the "**Plan Supplement**");

WHEREAS, on June 29, 2026, the RemainCo Debtors filed the (i) *Memorandum of Law in Support of (I) Final Approval of Disclosure Statement and (II) Confirmation of Amended Joint Chapter 11 Plan of Liquidation of TPI Composites, Inc. and Certain of Its Affiliated Debtors*

(Docket No. 991), (ii) *Declaration of Brian Cejka in Support of RemainCo Debtors' Request for (I) Final Approval of Disclosure Statement and (II) Confirmation of Amended Joint Chapter 11 Plan of Liquidation of TPI Composites, Inc. and Certain of Its Affiliated Debtors* (Docket No. 995), (iii) *Declaration of Neal P. Goldman in Support of Confirmation of Amended Joint Chapter 11 Plan of Liquidation of TPI Composites, Inc. and Certain of Its Affiliated Debtors* (Docket No. 993), and (iv) *Declaration of Brian Cejka in Support of Liquidation Analysis with Respect to Confirmation of Amended Joint Chapter 11 Plan of Liquidation of TPI Composites, Inc. and Certain of Its Affiliated Debtors* (Docket No. 994);

WHEREAS, on July 1, 2026, this Court held the Combined Hearing;

WHEREAS, this Court has fully considered the entire record of the Combined Hearing;

WHEREAS, this Court has heard the arguments of counsel and considered the evidence presented, proffered, or adduced at the Combined Hearing;

WHEREAS, any objections to final approval of the Disclosure Statement or confirmation of the Plan have been settled, withdrawn, resolved, or overruled on the merits by this Court;

NOW, THEREFORE, after due deliberation and sufficient cause appearing therefor, this Court hereby FINDS, DETERMINES, and CONCLUDES as follows:

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

A.      Findings of Fact and Conclusions of Law.  The findings and conclusions set forth herein and in the record of the Combined Hearing constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact

4

constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.     Chapter 11 Petitions.  On August 11, 2025, TPI Composites, Inc. ("**Parent**") and certain of its subsidiaries, including the RemainCo Debtors, commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").  The RemainCo Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases pursuant to section 1104 of the Bankruptcy Code.  On August 21, 2025, the United States Trustee for Region 7 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (Docket No. 113) (the "**Creditors' Committee**") pursuant to section 1102 of the Bankruptcy Code.

C.     Jurisdiction, Venue, Core Proceeding.  This Court has jurisdiction over the Chapter 11 Cases of the RemainCo Debtors pursuant to 28 U.S.C. § 1334.  Final approval of the Disclosure Statement and confirmation of the Plan are core proceedings pursuant to 28 U.S.C. § 157(b) and this Court has jurisdiction to enter a final order with respect thereto.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The RemainCo Debtors are eligible debtors under section 109 of the Bankruptcy Code.  The RemainCo Debtors are proper plan proponents under section 1121(a) of the Bankruptcy Code.

D.     Judicial Notice.  This Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of this Court, including all pleadings and other documents filed, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before this Court during the pendency of the Chapter 11 Cases.  All unresolved objections, statements, informal objections, and reservations of rights, if

any, related to the Disclosure Statement, the Plan, or confirmation of the Plan are overruled on the merits and denied in their entirety.

E.      Burden of Proof.  Based on the record of these Chapter 11 Cases, each of the RemainCo Debtors has met the burden of proving each applicable element of section 1129 (other than 1129(a)(8)) and (b) of the Bankruptcy Code by a preponderance of the evidence.

**Disclosure Statement**

F.      Adequacy of Disclosure Statement.  The Disclosure Statement contains "adequate information," as such term is defined in section 1125(a)(1) of the Bankruptcy Code, with respect to the RemainCo Debtors, the Plan, and the transactions contemplated therein.

G.      Solicitation.  As described in and evidenced by the Solicitation Affidavit and the Tabulation Declaration, transmittal and service of the Solicitation Materials (collectively, the "**Solicitation**") were timely, adequate, appropriate, and sufficient under the circumstances.  The Solicitation (i) was conducted in good faith and (ii) complied with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Solicitation and Scheduling Order, and all other applicable non-bankruptcy rules, laws, and regulations applicable to the Solicitation. The Released Parties and the Exculpated Parties are entitled to the protection of section 1125(e) of the Bankruptcy Code.

H.      Notice.  As evidenced by the Solicitation Affidavit, the Publication Affidavit, and the Tabulation Declaration, all parties required to be given notice of the Combined Hearing (including the deadline for filing and serving objections to final approval of the Disclosure Statement and confirmation of the Plan) have been given due, proper, adequate, timely, and sufficient notice of the Combined Hearing in accordance with the Solicitation and Scheduling Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and

all other applicable non-bankruptcy rules, laws, and regulations and such parties have had an opportunity to appear and be heard with respect thereto.

        I.        Tabulation. As described in the Tabulation Declaration, (i) the holders of Claims in Class 3 (Senior Secured Term Loan Claims) are Impaired under the Plan and voted to accept the Plan in the numbers and amounts required by section 1126 of the Bankruptcy Code at each RemainCo Debtor and (ii) the holders of Claims in Class 4 (General Unsecured Claims) are Impaired under the Plan and voted to accept or were deemed to accept the Plan at all but six of the RemainCo Debtors.[4] All procedures used to tabulate the Ballots were fair, reasonable, and conducted in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Solicitation and Scheduling Order, and all other applicable non-bankruptcy rules, laws, and regulations.

**Plan**

        J.        Plan Proposed in Good Faith. The RemainCo Debtors have proposed the Plan (and all documents necessary to effectuate the Plan) in good faith and not by any means forbidden by law. The RemainCo Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, the record of the Combined Hearing, and other proceedings held by this Court in these Chapter 11 Cases. The Plan (including all documents necessary to effectuate the Plan) was negotiated at arm's length among the RemainCo Debtors, the DIP Agent, the Prepetition Administrative Agent, the Creditors' Committee, and their respective advisors.

---

[4] Holders of Claims in Class 4 (General Unsecured Claims) voted to accept or were deemed to accept the Plan at all but the following six RemainCo Debtors: (i) TPI APAC II, Inc., (ii) TPI Composites, Inc., (iii) TPI International, LLC, (iv) TPI Turkey II, LLC, (v) TPI Turkey Izbas, LLC, and (vi) TPI Turkey, LLC. No holders of Claims in Class 4 (General Unsecured Claims) at RemainCo Debtors Ponto Alto Holdings, LLC, TPI Holdings Mexico, LLC, or TPI Texas, LLC were entitled to vote on the Plan, accordingly pursuant to Article 3.5 of the Plan, such Classes were eliminated for voting purposes.

K. <u>Cram Down Requirements</u>. The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code and may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code. The Plan does not unfairly discriminate between similarly situated Classes of Claims or Interests. Furthermore, the Plan is fair and equitable with respect to the Classes of Claims and Interests that voted, or are deemed to reject, the Plan as the Plan provides that no holder of any Claim or Interest that is junior to the Claims or Interests of such Classes will receive or retain any property under the Plan on account of such junior Claim or Interest.

L. <u>Best Interest of Creditors</u>. The liquidation analysis provided in the Disclosure Statement and the other evidence presented, proffered, or adduced at the Combined Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence, and (iii) establish that each holder of an Impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Plan Effective Date, that is not less than the amount that such holder would receive or retain if the RemainCo Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

M. <u>Plan Supplement</u>. The documents contained in the Plan Supplement comply and are consistent with the Bankruptcy Code and the terms of the Plan, and the filing and notice of such documents were good and proper and in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Solicitation and Scheduling Order, and the facts and circumstances of the Chapter 11 Cases. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. Subject to the terms of the Plan, the RemainCo Debtors reserve the right to alter, amend, update, or modify the Plan Supplement in a manner consistent with this Confirmation Order and the Plan, subject to any consent or

consultation rights contained therein and compliance with the Bankruptcy Code and the Bankruptcy Rules.

N.   Injunctions, Releases, and Exculpation.  This Court has jurisdiction under 28 U.S.C. §§ 1334(a) and 1334(b) to approve the injunction, release, and exculpation provisions set forth in Articles 10.5, 10.6, and 10.7 of the Plan.  The injunctions, releases, and exculpation contained in Article X of the Plan for the benefit of the RemainCo Debtors, the Released Parties, and the Exculpated Parties are essential components of the Plan.  The releases granted by Releasing Parties pursuant to Article 10.6(b) of the Plan (the "**Third-Party Releases**") are consensual in that all Releasing Parties were given due and adequate notice thereof and sufficient opportunity and instruction to elect to opt out of or opt in to such releases, as applicable.  The Third-Party Releases were conspicuously disclosed, as applicable, in the Ballots (forms of which were attached as Schedules 3A, 3B, 3C, and 3D to the Solicitation and Scheduling Order), the Combined Hearing Notice (a form of which was attached as Schedule 2 to the Solicitation and Scheduling Order), and the Release Opt-Out Form (as defined in the Solicitation and Scheduling Order) attached to the Notice of Non-Voting Status (a form of which was attached as Schedule 4 to the Solicitation and Scheduling Order), as well as the Disclosure Statement and the Plan.  The RemainCo Debtors have also demonstrated good and valid justification in support of the releases granted by the RemainCo Debtors and their Estates pursuant to Article 10.6(a) of the Plan (the "**RemainCo Debtor Releases**"), and the RemainCo Debtor Releases represent an appropriate exercise of the RemainCo Debtors' business judgment.  Additionally, the Released Parties substantially contributed to the success of the Plan, which provided a significant benefit to the Debtors' estates.  Failure to implement the release, injunction, and exculpation provisions set forth in the Plan would materially impair and jeopardize the ability of the RemainCo Debtors to confirm and implement the Plan and

the compromises and settlements provided therein.  Accordingly, as has been established based upon the record in the Chapter 11 Cases, including this Court's findings stated on the record at the Combined Hearing, the Goldman Declaration, and the evidence presented, proffered, or adduced at the Combined Hearing related thereto, the release provisions contained in Article X of the Plan (i) are essential to the formulation and implementation of the Plan, as required by section 1123 of the Bankruptcy Code, and are integral elements of the transactions incorporated into the Plan and inextricably bound with the other provisions of the Plan, (ii) are consistent with and permissible under applicable law, (iii) were given in exchange for good and valuable consideration provided by the Released Parties, (iv) are in the best interests of the RemainCo Debtors, their Estates, holders of Claims and Interests, and all other parties in interest, (v) were negotiated in good faith and at arm's length, (vi) confer substantial benefits on the RemainCo Debtors, the Estates, and their creditors, and (vii) are fair, equitable, and reasonable.

O.     The exculpation provision contained in Article X of the Plan is tailored appropriately to the circumstances of the Chapter 11 Cases of the RemainCo Debtors and is appropriate under applicable law, including *NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Capital Mgmt., L.P.)*, 48 F.4th 419 (5th Cir. 2022) and *Highland Cap. Mgmt. Fund Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Capital Mgmt., L.P.)*, 132 F.4th 353 (5th Cir. 2025) ("**Highland II**"), because it is supported by proper evidence, proposed in good faith, formulated following extensive good faith, arm's-length negotiations with key constituents, and appropriately limited in scope.  The Exculpated Parties reasonably relied upon the exculpation provision as a material inducement to engage in postpetition negotiations with key stakeholders that culminated in the Plan and the settlements and compromises therein that maximize value for the Estates.  The record in the Chapter 11 Cases, including this Court's findings stated on the

record at the Combined Hearing, supports the conclusion that the exculpation provision is appropriately tailored to protect the Exculpated Parties from unnecessary litigation, and the provision contains appropriate carve-outs for actions determined by a Final Order to have constituted actual fraud, gross negligence, or willful misconduct subject to certain exceptions as stated in the Plan.

P.      The record in the Chapter 11 Cases, including this Court's findings stated on the record at the Combined Hearing, further supports that the Independent Directors exhibited the highest standards of professionalism and due diligence in the performance of their responsibilities as Independent Directors.  The Independent Directors (i) were integral to the RemainCo Debtors' efforts to maximize the value of their Estates, including through the entry into the ECP Purchase Agreement, (ii) exercised the highest level of prudent business judgment after exhaustive diligence in their decision making, (iii) owed duties only to the Debtors, the Debtors' Estates, and this Court in their roles as Independent Directors, and (iv) satisfied such duties fully, completely, and professionally at all times throughout the Chapter 11 Cases.

Q.      The injunction provisions contained in the Plan are essential to the Plan, are appropriate under applicable law, including *Highland II*, and are necessary to implement the Plan and to preserve and enforce the release and exculpation provisions of the Plan.  The injunction provisions are appropriately tailored to achieve those purposes.  Subject in all respects to Article 11.1 of the Plan, no Person may commence or pursue a claim or Cause of Action of any kind against any Exculpated Party that arose or arises from, in whole or in part, such claims and Causes of Action as described in Article 10.5 of the Plan, without this Court (i) first determining, after notice and a hearing, that such claim or Cause of Action represents a colorable claim that has

not been exculpated under the Plan and (ii) specifically authorizing such Person to bring such claim or Cause of Action against any such Exculpated Party.

R.     The record of the Combined Hearing and the Chapter 11 Cases is sufficient to support the injunctions, releases, and exculpation provisions provided for in Article X of the Plan and in this Order.   Accordingly, based upon the record of the Chapter 11 Cases, the representations of the parties, and the evidence proffered, adduced, and presented at the Combined Hearing, the injunctions, releases, and exculpation provisions set forth in Article X of the Plan and in this Order are consistent with the Bankruptcy Code and applicable law.

S.     Good Faith.   The record in the Chapter 11 Cases, including this Court's findings stated on the record at the Combined Hearing, supports that each manager, director, member, and officer, as applicable, of the RemainCo Debtors exhibited the highest standards of professionalism and due diligence in the performance of his or her responsibilities as a manager, director, member, or officer, as applicable.   Further, the managers, directors, members, and officers, as applicable, of the RemainCo Debtors (i) were integral to the RemainCo Debtors' efforts to maximize the value of their Estates, including through the entry into the ECP Purchase Agreement, (ii) exercised the highest level of prudent business judgment after exhaustive diligence in their decision making, (iii) owed duties only to the Debtors, the Debtors' Estates, and this Court in their roles as managers, directors, members, or officers, as applicable, and (iv) satisfied such duties fully, completely, and professionally at all times throughout the Chapter 11 Cases.   The RemainCo Debtors, the Released Parties, and Exculpated Parties have been and will be acting in good faith if they proceed to (i) consummate the Plan and the agreements, settlements, transactions, and transfers set forth therein, and (ii) take any actions authorized and directed by this Order.

**ORDER**

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

1.      <u>Findings of Fact and Conclusions of Law</u>.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  All findings of fact and conclusions of law announced by this Court at the Combined Hearing in relation to final approval of the Disclosure Statement or confirmation of the Plan are hereby incorporated into this Order.  To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be deemed so, and vice versa.

**Disclosure Statement**

2.      <u>Final Approval of Disclosure Statement</u>.  The Disclosure Statement is approved on a final basis as having adequate information as contemplated by section 1125(a)(1) of the Bankruptcy Code.

3.      <u>Solicitation</u>.  The Solicitation complied with the Solicitation and Scheduling Order, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

**Plan**

4.      <u>Confirmation of Plan</u>.  The Plan and each of its provisions are confirmed pursuant to section 1129 of the Bankruptcy Code.  The documents contained in or contemplated by the Plan, including the documents contained in the Plan Supplement (collectively, the "**Plan Documents**"), are hereby authorized and approved.  The terms of the Plan and the Plan Documents

13

are incorporated herein by reference and are an integral part of this Order.  The terms of the Plan, the Plan Documents, all exhibits thereto, and all other relevant and necessary documents shall be effective and binding as of the Plan Effective Date.  Subject to and consistent with the terms of the Plan and this Confirmation Order, including any consent or consultation rights contained therein and compliance with the Bankruptcy Code and the Bankruptcy Rules, the RemainCo Debtors reserve the right to alter, amend, update, or modify the Plan Documents.  The failure to specifically include or refer to any particular article, section, or provision of the Plan or the Plan Documents in this Order shall not diminish or impair the effectiveness or enforceability of such article, section, or provision nor constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

5.      Objections.  To the extent that any objections (including any reservations of rights contained therein) to approval of the Disclosure Statement or confirmation of the Plan or other responses or reservations of rights with respect thereto have not been withdrawn prior to entry of this Order, such objections and responses shall be, and hereby are, overruled on the merits and denied.

6.      No Action.  Pursuant to the appropriate provisions of any applicable State's general corporation or limited liability company laws, other applicable non-bankruptcy law, and section 1142(b) of the Bankruptcy Code, no action of the security holders, managers, directors, members, or officers, as applicable, of the RemainCo Debtors, the GUC Trust, or the WindDown Co, as applicable, shall be required to authorize such parties to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan and any contract, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan, including any of the Plan Documents.

14

7.      Governmental Approvals Not Required.  This Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation and consummation of the Plan and the Plan Documents and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan or the Plan Documents.

8.      Implementation of Plan.  Before, on, or after the Plan Effective Date, the appropriate managers, directors, members, and officers, as applicable, of the RemainCo Debtors, the GUC Trust, and the WindDown Co, as applicable, shall be authorized to issue, execute, and deliver the agreements, contracts, securities, instruments, and other documents, including those contained in the Plan Documents, and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan in the name of and on behalf of the RemainCo Debtors, the GUC Trust, and the WindDown Co, as applicable, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan and this Confirmation Order.

9.      Cancellation of Liens.  Except as otherwise specifically provided herein or in the Plan, all notes, instruments, certificates, and all other documents evidencing debt of the RemainCo Debtors, and Existing Equity Interests will be cancelled and obligations of the RemainCo Debtors thereunder will be discharged and of no further force or effect, except for the purpose of allowing the applicable agents and trustees to receive distributions from the RemainCo Debtors under the Plan and to make any further distributions to the applicable holders on account of their Claims and Interests.  Upon the full payment or other satisfaction of an Allowed Secured Claim, or promptly thereafter, any Lien securing any Secured Claim against any RemainCo Debtor shall be deemed released and the holder of such Allowed Secured Claim shall deliver to the

15

RemainCo Debtors any collateral or other property of the RemainCo Debtors held by such holder, together with any termination statements, instruments of satisfaction, or releases of all security interests with respect to its Allowed Secured Claim that may be reasonably required to terminate or evidence the termination of any related financing statements, mortgages, mechanics' or other statutory Liens, or lis pendens, or similar interests or documents.

10.     Existing Equity Interests (Class 6) Treatment.   Article 4.6(a) of the Plan shall provide as follows:[5]

(a) *Treatment*: On the Plan Effective Date, **all Existing Equity Interests shall be cancelled and** (i) the Single Share shall be issued to the WindDown Agent to hold in trust as custodian for the benefit of the holders of Existing Equity Interests as of the Plan Effective Date consistent with their former relative priority and economic entitlements and the Single Share shall be recorded on the books and records maintained by the WindDown Agent, and (ii) each holder of Existing Equity Interests as of the Plan Effective Date (through their interest in the Single Share, as applicable) shall neither receive nor retain any property of the Parent's Estate or direct interest in property of the Parent's Estate on account of such Existing Equity Interests; provided, that in the event that all Allowed Claims have been satisfied in full or as otherwise satisfied and released in accordance with the Bankruptcy Code and the Plan, each holder of an Existing Equity Interest as of the Plan Effective Date may receive its share of any remaining assets of the Parent consistent with such holder's rights of payment under applicable law or contract, as applicable, existing immediately prior to the Petition Date.  The continuing rights of former holders of Existing Equity Interests (including through their interest in *the* Single Share or otherwise) shall be nontransferable other than if transferred by will, intestate succession, or otherwise by operation of law.

11.     Resignation of Managers, Directors, Members, and Officers.   Except as agreed to by the RemainCo Debtors or the WindDown Agent, as applicable, upon the Plan Effective Date, (i) the managers, directors, members, and officers, as applicable, of each RemainCo Debtor shall be relieved of any and all duties with respect to such RemainCo Debtor and shall be deemed to have resigned without the requirement of having to take any further action and (ii) the WindDown Agent shall be the sole manager, director, or member, as applicable, and

---

[5] Changes to Article 4.6(a) of the Plan have been indicated by bolded and italicized font.

the sole officer of each RemainCo Debtor without the requirement of having to take any further action.

12.      GUC Trust and GUC Trustee.  The GUC Trust Agreement with respect to the RemainCo Debtors is hereby approved in all respects.  The effective date of the *Second Amended Joint Chapter 11 Plan of TPI Mexico V, LLC and TPI Mexico VI, LLC* (Docket No. 903) (the "**TPI MX V & VI Plan**") occurred on June 15, 2026 (the "**TPI MX V & VI Plan Effective Date**"), and the GUC Trust was established on such date in accordance with the GUC Trust Agreement for the purpose of being vested with and liquidating the GUC Trust Assets, reconciling Claims, and making distributions to holders of Allowed General Unsecured Claims in accordance with the terms of the Plan, the TPI MX V & VI Plan, and the GUC Trust Agreement.  The authority of the GUC Trustee shall be exercised in a manner consistent with the purpose of the GUC Trust, as set forth in Article 5.2(a) of the Plan and in accordance with the TPI MX V & VI Plan and the GUC Trust Agreement, and the intended qualification of the GUC Trust as a "liquidating trust" for U.S. federal income tax purposes.  For the avoidance of doubt, the GUC Trust shall be the same Entity as the "GUC Trust" under the TPI MX V & VI Plan, and the Plan Effective Date must occur before the GUC Trust shall be authorized to effectuate the provisions of the Plan for the RemainCo Debtors notwithstanding the establishment of the GUC Trust upon the TPI MX V & VI Plan Effective Date.

13.      WindDown Co.  The WindDown Co was established on the TPI MX V & VI Plan Effective Date in accordance with the TPI MX V & VI Plan.  Subject to and to the extent set forth in the Plan, the TPI MX V & VI Plan, this Order, or any other order of this Court entered in connection therewith, the WindDown Co shall be authorized and empowered on behalf of the RemainCo Debtors to carry out and implement all provisions of the Plan and the TPI MX V & VI

Plan, as applicable, such that there shall be one WindDown Co to wind down the Debtors' Estates. For the avoidance of doubt, the Plan Effective Date must occur before the WindDown Co shall be authorized to effectuate the provisions of the Plan for the RemainCo Debtors notwithstanding the establishment of the WindDown Co upon the TPI MX V & VI Plan Effective Date.

14.     WindDown Agent.  After the Plan Effective Date, pursuant to the Plan, the WindDown Agent shall, in an expeditious but orderly manner, wind down, sell, and otherwise liquidate and convert to Cash (i) the remaining Assets, Causes of Action, and Intercompany Interests of the RemainCo Debtors as of the Plan Effective Date and (ii) any non-Debtor Affiliate in which the RemainCo Debtors held equity directly or indirectly immediately prior to the Plan Effective Date, or, as necessary or appropriate, reasonably assist any third-party designee(s) to accomplish each of the foregoing, with no objective to continue or conduct a trade or business except to the extent reasonably necessary to, and consistent with, the liquidation and orderly wind down of the RemainCo Debtors, or any non-Debtor Affiliate, as applicable, and shall not unduly prolong the duration of the liquidation and the wind down.

15.     WindDown Reserve.  On the Plan Effective Date, the RemainCo Debtors shall establish and fund a $5.5 million Cash reserve from the ECP Sale Proceeds that shall fund wind-down costs of the RemainCo Debtors and any Restructuring Expenses incurred after the Plan Effective Date, which reserve shall not be allocable to the GUC Trust or available for payment of any costs incurred by the GUC Trust.

16.     Distributions.  The Disbursing Agent shall make all applicable distributions under the Plan to the holders of Allowed Claims in accordance with the terms of the Plan and the GUC Trust Agreement, as applicable.  The GUC Trust or the WindDown Co, as applicable, shall from time to time determine and announce subsequent distribution dates.

17.     <u>Executory Contracts and Unexpired Leases</u>.  Pursuant to <u>Article VIII</u> of the Plan, as of and subject to the occurrence of the Plan Effective Date and the payment of any applicable Cure amount, and <u>Article 8.6</u> of the Plan, all executory contracts and unexpired leases to which any RemainCo Debtor is a party, and which have not expired by their own terms on or prior to the Confirmation Date shall be deemed rejected except for any executory contract or unexpired lease that (i) previously has been assumed, assumed or assigned, or rejected pursuant to a Final Order of the Bankruptcy Court, including the Sale Order, (ii) is the subject of a separate assumption or rejection motion filed by any RemainCo Debtor under section 365 of the Bankruptcy Code before the Confirmation Date, (iii) is specifically designated as a contract or lease to be assumed on the Schedule of Assumed Contracts, or (iv) is the subject of a pending Cure Dispute.  Subject to the occurrence of the Plan Effective Date, entry of this Order shall constitute approval of the assumptions or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Each executory contract and unexpired lease assumed pursuant to the Plan or Plan Supplement shall vest in and be fully enforceable by the RemainCo Debtors in accordance with its terms, except as modified by the Plan, any order of this Court authorizing and providing for its assumption or applicable law.

18.     <u>Insurance Policies/Claims Payable by Third Parties</u>.  Notwithstanding anything to the contrary in the Plan, the Plan Supplement, any bar date notice or claim objection, and any other document related to any of the foregoing, on the Plan Effective Date all insurance policies (i) to which any RemainCo Debtor is a party as of the Plan Effective Date and (ii) issued or providing coverage to a RemainCo Debtor pursuant to which the applicable RemainCo Debtor has, prior to the Plan Effective Date, made a claim, including any D&O Policy, shall be deemed to be and treated as executory contracts and shall be assumed, in their entirety, by the RemainCo

Debtors, and assigned to the WindDown Co, to the extent applicable, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Plan Effective Date, pursuant to sections 105 and 365 of the Bankruptcy Code, and shall continue in full force and effect thereafter in accordance with their respective terms, and all such insurance policies shall be maintained by the WindDown Co.  Coverage for defense and indemnity under the D&O Policy shall remain available to all individuals within the definition of "Insured" in any D&O Policy.

19.      United HealthCare.  United HealthCare Services, Inc. ("**UHSI**") and Debtor TPI Composites, Inc. are parties to an Administrative Services Agreement under Contract No. 907917 with an effective date of April 1, 2016, as amended from time to time (the "**ASA**"). Pursuant to the ASA, UHSI renders certain administrative services in connection with Debtor TPI Composites, Inc.'s self-funded group health insurance plan (the "**Self-Funded Health Plan**"), in exchange for certain fees.  UnitedHealthcare Insurance Company ("**UHIC**" and together with UHSI, "**United**") and Debtor TPI Composites, Inc. are parties to a Group Policy under Policy No. GA-907917AL with an original effective date of January 1, 2018, as amended from time to time (the "**Excess Loss Policy**" and together with the ASA, the "**United Agreements**").  Pursuant to the Excess Loss Policy, UHIC provides certain specific excess loss (i.e., stop loss) insurance coverage for the Self-Funded Health Plan, in exchange for the payment of monthly premium.  On the Plan Effective Date, the United Agreements shall be deemed to be and treated as executory contracts and shall be assumed by the RemainCo Debtors.  Notwithstanding anything in the Plan or this Order to the contrary, all obligations owing to either the RemainCo Debtors or United under the United Agreements shall pass through and survive assumption, and will be paid in the ordinary course of business under the United Agreements.  Nothing in the Plan or this Order shall affect United's rights of recovery, setoff, or recoupment of any kind, including without limitation such

rights arising from obligations owing to United from the RemainCo Debtors under the United Agreements; *provided*, *however*, that the rights and defenses of the RemainCo Debtors, the WindDown Co, the GUC Trustee, and any of their successors and assigns, as applicable, with respect thereto and the United Agreements are fully preserved. For the avoidance of doubt, nothing in this paragraph shall create any new rights to setoff that did not exist under any applicable law or agreement in existence before the Plan Effective Date.

20.     Conditions Precedent to Plan Effective Date. The Plan shall not become effective unless and until all conditions set forth in Article 9.1 of the Plan have been satisfied or waived pursuant to Article 9.2 of the Plan

21.     Injunctions, Releases, and Exculpation. As of the Plan Effective Date, all injunctions, releases, and exculpation provisions embodied in the Plan, including those contained in Articles 10.5 (Injunction), 10.6(a) (Releases by the RemainCo Debtors), 10.6(b) (Releases by Holders of Claims and Interests), and 10.7 (Exculpation) are hereby approved and shall be effective and binding on all Persons, in each case, to the extent provided in the Plan and, in the case of the exculpation provisions in the Plan, without further order or action by this Court.

22.     Injunction Related to Releases and Exculpation. This Order permanently enjoins the commencement or prosecution by any Person, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or this Order.

23.     Reservation of Rights of any Governmental Unit, including the United States. Nothing in this Confirmation Order, the Plan, or the Plan Supplement discharges,

releases, precludes, or enjoins: (i) any liability to any governmental unit as defined in 11 U.S.C. § 101(27) ("**Governmental Unit**") that is not a Claim; (ii) any Claim of a Governmental Unit arising on or after the Confirmation Date; (iii) any liability to a Governmental Unit under police and regulatory law that any entity would be subject to as the owner or operator of property after the Confirmation Date; or (iv) any liability to a Governmental Unit on the part of any Person other than the RemainCo Debtors.  Nor shall anything in this Confirmation Order or the Plan enjoin or otherwise bar any Governmental Unit from asserting or enforcing, outside this Bankruptcy Court, any liability described in the preceding sentence.

24.     Continued Effect of Stays and Injunction.  Unless otherwise provided in the Plan or this Order, all injunctions or stays arising under or entered during the Chapter 11 Cases of the RemainCo Debtors under sections 105 or 362 of the Bankruptcy Code and in existence on the Confirmation Date shall remain in full force and effect until the later of the Plan Effective Date and the date indicated in the order providing for such injunction or stay.

25.     Administrative Expense Claims Bar Date.  Except as otherwise provided in this Order or the Plan, requests for payment of Administrative Expense Claims must be filed with this Court and served on the WindDown Co electronically through the website maintained by Kroll at https://restructuring.ra.kroll.com/TPIComposites or by email, first class mail, overnight mail, or hand delivery to the applicable address listed in the Notice of Plan Effective Date (as defined below) within 60 calendar days after the Plan Effective Date (the "**Administrative Expense Claims Bar Date**").  Such proof of Administrative Expense Claim must include at a minimum (i) the name of the applicable Debtor that is purported to be liable for the Administrative Expense Claim and if the Administrative Expense Claim is asserted against more than one Debtor, the exact amount asserted to be owed by each such Debtor, (ii) the name of the holder of the Administrative

Expense Claim, (iii) the asserted amount of the Administrative Expense Claim, (iv) the basis of the Administrative Expense Claim, and (v) supporting documentation for the Administrative Expense Claim.  FAILURE TO FILE AND SERVE SUCH PROOF OF ADMINISTRATIVE EXPENSE CLAIM TIMELY AND PROPERLY SHALL RESULT IN SUCH CLAIM BEING FOREVER BARRED.  IF FOR ANY REASON ANY SUCH ADMINISTRATIVE EXPENSE CLAIM IS INCAPABLE OF BEING FOREVER BARRED AND DISALLOWED, THEN THE HOLDER OF SUCH CLAIM SHALL IN NO EVENT HAVE RECOURSE TO ANY PROPERTY TO BE DISTRIBUTED PURSUANT TO THE PLAN.

26.     Rejection Damages Bar Date.  Except as otherwise provided in this Order or the Plan, any Person that asserts a Claim based on the rejection of an executory contract or unexpired lease of any RemainCo Debtor pursuant to the Plan or otherwise must file with this Court a Proof of Claim with respect to such Claim and serve the same on the GUC Trust electronically through the website maintained by Kroll at https://restructuring.ra.kroll.com/TPIComposites or by email, first class mail, overnight mail, or hand delivery to the applicable address listed in the Notice of Plan Effective Date, no later than 30 days after the later of (i) the Plan Effective Date or (ii) the effective date of rejection of such executory contract or unexpired lease by any RemainCo Debtor pursuant to the Plan (the "**Rejection Damages Claims Bar Date**").  Such Proof of Claim must include at a minimum (i) the name of the applicable Debtor that is purported to be liable for such Claim and if such Claim is asserted against more than one Debtor, the exact amount asserted to be owed by each such Debtor, (ii) the name of the holder of the Claim, (iii) the asserted amount of the Claim, (iv) the basis of the Claim, and (v) supporting documentation for the Claim.  FAILURE TO FILE AND SERVE SUCH PROOF OF CLAIM TIMELY AND PROPERLY SHALL RESULT IN SUCH

CLAIM BEING FOREVER BARRED.  IF FOR ANY REASON ANY SUCH CLAIM IS INCAPABLE OF BEING FOREVER BARRED AND DISALLOWED, THEN THE HOLDER OF SUCH CLAIM SHALL IN NO EVENT HAVE RECOURSE TO ANY PROPERTY TO BE DISTRIBUTED PURSUANT TO THE PLAN.

27.     Dissolution of Creditors' Committee.  On the Plan Effective Date, the Creditors' Committee shall dissolve; *provided*, *however*, that following the Plan Effective Date, the Creditors' Committee shall continue in existence solely for the purposes of (i) filing and prosecuting applications for allowance of Professional Fee Claims pursuant to sections 330 and 331 of the Bankruptcy Code in accordance with Article 2.5 of the Plan and Article 2.5 of the TPI MX V & VI Plan and (ii) participating in any appeals of this Order.  Following the completion of the Creditors' Committee's remaining duties set forth above, and upon the dissolution of the Creditors' Committee, such committee members and their respective Professionals shall cease to have any duty, obligation, or role arising from or related to the Chapter 11 Cases and shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases.

28.     Statutory Fees.  All Statutory Fees payable prior to the Plan Effective Date shall be paid by the RemainCo Debtors in full in Cash on the Plan Effective Date.  The RemainCo Debtors shall file all monthly operating reports through the Plan Effective Date.  The RemainCo Debtors and the WindDown Co, as applicable, shall remain obligated to pay quarterly fees to the U.S. Trustee until the closure of the Chapter 11 Cases of the RemainCo Debtors.  After the Plan Effective Date, the WindDown Co shall file with this Court quarterly reports in a form reasonably acceptable to the U.S. Trustee, which reports shall include a separate schedule of disbursements made by the WindDown Co and GUC Trustee during the applicable period, attested to by the GUC Trustee.

29. Documents and Instruments. Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan and this Order.

30. Reversal/Stay/Modification/Vacatur of Order. Except as otherwise provided in this Order, if any or all of the provisions of this Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or Lien incurred or undertaken by the RemainCo Debtors, the GUC Trustee, the WindDown Agent, or any other party authorized or required to take action to implement the Plan, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Order, the Plan, the Plan Documents, or any amendments or modifications to the foregoing in effect immediately prior to such reversal, stay, modification, or vacatur.

31. Provisions of Plan and Order Non-Severable and Mutually Dependent. The provisions of the Plan and this Order, including the findings of fact and conclusions of law set forth herein, are (i) valid and enforceable pursuant to their terms, (ii) integral to the Plan, and (iii) non-severable and mutually dependent. The provisions of the Plan may be amended or modified by the RemainCo Debtors, in consultation with the Creditors' Committee and the Prepetition Administrative Agent. In addition, solely to the extent such amendment or modification materially and adversely affects the treatment of the DIP Facility or the Senior

25

Secured Term Loan Claims and the recovery the holders of such Claims are entitled to under the Plan, the consent of the DIP Agent or the Prepetition Administrative Agent, as applicable, shall be required.

## Miscellaneous

32.     Retention of Jurisdiction.  Subject to Article XI of the Plan, pursuant to sections 105(a) and 1142 of the Bankruptcy Code, this Court retains jurisdiction with respect to all matters arising in, arising under, and related to the Chapter 11 Cases of the RemainCo Debtors, the Plan, and the implementation of the Plan and this Order, including those matters set forth in Article XI of the Plan.

33.     Headings.  Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Order for any other purpose.

34.     Governing Law.  Except to the extent that the Bankruptcy Code or other federal law is applicable or to the extent that a Plan Document provides otherwise, the rights, duties, and obligations arising under the Plan and the Plan Documents shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York, without giving effect to the principles of conflicts of laws thereof.

35.     Applicable Non-Bankruptcy Law.  Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Order, the Plan, the Plan Documents, and any other related documents or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

36.     Notice of Entry of Order and Plan Effective Date.  In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Plan Effective Date but not later than three Business Days following the Plan Effective Date, the RemainCo Debtors shall serve notice of entry of this Order and occurrence of the Plan Effective Date,

26

substantially in the form annexed hereto as Exhibit B, on all parties who hold a Claim in the Chapter 11 Cases of the RemainCo Debtors, the U.S. Trustee, and any other parties in interest in the Chapter 11 Cases of the RemainCo Debtors (the "**Notice of Entry of Confirmation Order and Occurrence of Plan Effective Date**").  Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of both the entry of this Order and the occurrence of the Plan Effective Date, the Administrative Expense Claims Bar Date, and the Rejection Damages Claims Bar Date.  Notwithstanding the foregoing, the requirement to serve the Notice of Entry of Confirmation Order and Occurrence of Plan Effective Date on holders of Interests in Class 5 (Intercompany Interests) and Class 6 (Existing Equity Interests) (other than service on Known Equity Holders and Equity Nominees, each term as defined in the Solicitation and Scheduling Order), is hereby waived.

37.     Final Order.  This Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

38.     Waiver of Stay.  The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of 14 days after entry of the order are hereby waived.  This Order shall take effect immediately and shall not be stayed pursuant to the Bankruptcy Code, Bankruptcy Rules 3020(e), 6004(h), or 7062, or otherwise.

39.     Inconsistency.  To the extent of any inconsistency between this Order and the Plan, this Order shall govern.

40.     Closure of Chapter 11 Cases.  After the Plan Effective Date, the WindDown Co may submit one or more order(s) to this Court seeking to close certain individual Chapter 11 Cases and changing the caption of the Chapter 11 Cases accordingly.  Matters concerning Claims shall be heard and adjudicated in a Debtor's Chapter 11 Case that remains open regardless of

whether the applicable Claim is against a Debtor in a Chapter 11 Case that is closed.  Upon the filing of a motion to close the last Chapter 11 Case remaining open, the WindDown Co shall file a final report with respect to all of the Chapter 11 Cases in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

Signed: July 01, 2026

_____

Christopher Lopez
United States Bankruptcy Judge

**<u>Exhibit A</u>**

**Plan**

*Solicitation Version*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **TPI COMPOSITES, INC., et al.,** | § | **Case No. 25-34655 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |
| | § | |

## AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
## OF TPI COMPOSITES, INC. AND CERTAIN OF ITS AFFILIATED DEBTORS

**WEIL, GOTSHAL & MANGES LLP**
Gabriel A. Morgan (24125891)
Clifford W. Carlson (24090024)
Emma Wheeler (24145695)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

**WEIL, GOTSHAL & MANGES LLP**
Matt Barr (admitted *pro hac vice*)
Lauren Tauro (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for the Debtors*
*and Debtors in Possession*

Dated:  May 22, 2026
        Houston, Texas

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  TPI Texas, LLC (4000), TPI Composites, Inc. (0775), TPI International, LLC (9537), TPI Turkey, LLC (2552), TPI APAC, LLC (8038), TPI APAC II, Inc. (3515), TPI Turkey II, LLC (2551), TPI Turkey Izbas, LLC (0185), TPI Composites Services, LLC (4547), TPI Mexico, LLC (0745), TPI Mexico II, LLC (8269), TPI Mexico III, LLC (7315), TPI Mexico IV, LLC (1231), TPI Mexico V, LLC (5628), TPI Mexico VI, LLC (7260), Ponto Alto Holdings, LLC (0322), TPI Arizona, LLC (9641), TPI Iowa, LLC (2887), TPI Iowa II, LLC (4175), Composite Solutions, Inc. (1486), TPI Holdings Mexico, LLC (1936), and TPI Technology, Inc. (2727).  The Debtors' mailing address is 9200 E. Pima Center Parkway, Suite 250, Scottsdale, AZ 85258.

Table of Contents

Page

ARTICLE I.    DEFINITIONS AND INTERPRETATION ................................................. 1
    A.    Definitions ............................................................................................................. 1
    B.    Interpretation; Application of Definitions and Rules of Construction ...................... 14
    C.    Computation of Time ............................................................................................... 14
    D.    Reference to Monetary Figures ................................................................................ 14
    E.    Controlling Document .............................................................................................. 15

ARTICLE II.    ADMINISTRATIVE EXPENSE CLAIMS, PROFESSIONAL FEE
              CLAIMS, DIP CLAIMS, RESTRUCTURING EXPENSES, AND
              PRIORITY TAX CLAIMS ................................................................. 15
    2.1.    Administrative Expense Claims Bar Date ................................................................ 15
    2.2.    Administrative Expense Claims ............................................................................... 15
    2.3.    Priority Tax Claims ................................................................................................. 15
    2.4.    DIP Claims .............................................................................................................. 15
    2.5.    Professional Fee Escrow ......................................................................................... 16
    2.6.    Restructuring Expenses ........................................................................................... 16

ARTICLE III.    CLASSIFICATION OF CLAIMS AND INTERESTS ............................... 17
    3.1.    Classification in General ......................................................................................... 17
    3.2.    Formation of Debtor Groups for Convenience Only ............................................... 17
    3.3.    Summary of Classification ...................................................................................... 17
    3.4.    Special Provision Governing Unimpaired Claims ................................................... 18
    3.5.    Elimination of Vacant Classes ................................................................................ 18
    3.6.    No Waiver ............................................................................................................... 18

ARTICLE IV.    TREATMENT OF CLAIMS AND INTERESTS ....................................... 18
    4.1.    Other Priority Claims (Class 1) ............................................................................... 18
    4.2.    Other Secured Claims (Class 2) .............................................................................. 19
    4.3.    Senior Secured Term Loan Claims (Class 3) ........................................................... 19
    4.4.    General Unsecured Claims (Class 4) ....................................................................... 19
    4.5.    Intercompany Interests (Class 5) ............................................................................. 20
    4.6.    Existing Equity Interests (Class 6) .......................................................................... 20

ARTICLE V.    MEANS FOR IMPLEMENTATION .......................................................... 20
    5.1.    WindDown Co ......................................................................................................... 20
    5.2.    GUC Trustee and GUC Trust .................................................................................. 23
    5.3.    Corporate Action .................................................................................................... 26
    5.4.    Compromise and Settlement of Claims, Interests, and Controversies ...................... 27
    5.5.    Cancellation of Existing Securities and Agreements ............................................... 27
    5.6.    Cancellation of Liens .............................................................................................. 28
    5.7.    Effectuating Documents; Further Transactions. ...................................................... 28
    5.8.    Wind Down ............................................................................................................. 29
    5.9.    Closing of Chapter 11 Cases ................................................................................... 29
    5.10.    Notice of Plan Effective Date ................................................................................. 29
    5.11.    Separate Plans ........................................................................................................ 30
    5.12.    Convertible Notes Trustee Fees and Expenses ....................................................... 30

ARTICLE VI.    DISTRIBUTIONS ........................................................................................ 30
    6.1.    Distributions Generally ........................................................................................... 30
    6.2.    Distribution Record Date ........................................................................................ 31

i

Table of Contents
(continued)

Page

6.3.     Date of Distributions...................................................................................................31
6.4.     Rights and Powers of Disbursing Agent.....................................................................31
6.5.     No Postpetition Interest on Claims .............................................................................31
6.6.     Delivery of Distributions ............................................................................................31
6.7.     Distributions after Plan Effective Date ......................................................................32
6.8.     Unclaimed Property ....................................................................................................32
6.9.     Manner of Payment under Plan...................................................................................32
6.10.    Satisfaction of Claims.................................................................................................32
6.11.    Minimum Cash Distributions......................................................................................32
6.12.    Setoffs .........................................................................................................................33
6.13.    Allocation of Distributions between Principal and Interest .......................................33
6.14.    No Distribution in Excess of Amount of Allowed Claim...........................................33
6.15.    Withholding and Reporting Requirements .................................................................33

ARTICLE VII.  PROCEDURES FOR DISPUTED CLAIMS...........................................................34
7.1.     Disputed Claims Generally .........................................................................................34
7.2.     Objections to Claims...................................................................................................34
7.3.     Estimation of Claims ..................................................................................................34
7.4.     Adjustment to Claims Register Without Objection ....................................................35
7.5.     Disallowance of Claims..............................................................................................35
7.6.     No Distributions Pending Allowance .........................................................................35
7.7.     Distributions after Allowance.....................................................................................35
7.8.     Claim Resolution Procedures Cumulative .................................................................35

ARTICLE VIII.EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................................35
8.1.     General Treatment .......................................................................................................35
8.2.     Determination of Cure Disputes and Deemed Consent ..............................................36
8.3.     Payments Related to Assumption or Assignment of Contracts and Leases.....................37
8.4.     Rejection Claims.........................................................................................................37
8.5.     Survival of RemainCo Debtors' Indemnification Obligations ...................................37
8.6.     Insurance Policies/Claims Payable by Third Parties..................................................38
8.7.     Intellectual Property Licenses and Agreements.........................................................38
8.8.     Modifications, Amendments, Supplements, Restatements, or Other Agreements ...........39
8.9.     Reservation of Rights..................................................................................................39

ARTICLE IX.   CONDITIONS PRECEDENT TO CONFIRMATION OF PLAN AND
              PLAN EFFECTIVE DATE ...........................................................................39
9.1.     Conditions Precedent to Plan Effective Date..............................................................39
9.2.     Waiver of Conditions Precedent .................................................................................39
9.3.     Effect of Failure of a Condition .................................................................................40

ARTICLE X.    EFFECT OF CONFIRMATION OF PLAN................................................................40
10.1.    Vesting of Assets in WindDown Co ...........................................................................40
10.2.    Binding Effect.............................................................................................................40
10.3.    RemainCo Debtors Are Not Entitled to a Discharge ..................................................40
10.4.    Term of Injunctions or Stays......................................................................................40
10.5.    Injunction ...................................................................................................................41
10.6.    Releases ......................................................................................................................42
10.7.    Exculpation .................................................................................................................44

ii

Table of Contents
(continued)

| | | Page |
|---|---|---|

10.8.    Retention of Causes of Action and Reservation of Rights................................................45
10.9.    Ipso Facto and Similar Provisions Ineffective ...................................................................45

**ARTICLE XI.    RETENTION OF JURISDICTION** ........................................................................45
11.1.    Retention of Jurisdiction....................................................................................................45
11.2.    Courts of Competent Jurisdiction .....................................................................................47

**ARTICLE XII.  MISCELLANEOUS PROVISIONS**........................................................................47
12.1.    Payment of Statutory Fees and Operating Reports ..........................................................47
12.2.    Substantial Consummation of Plan....................................................................................47
12.3.    Exemption from Certain Transfer Taxes ...........................................................................47
12.4.    Amendments .......................................................................................................................48
12.5.    Effectuating Documents and Further Transactions...........................................................48
12.6.    Revocation or Withdrawal of Plan.....................................................................................48
12.7.    Severability of Plan Provisions..........................................................................................48
12.8.    Governing Law ...................................................................................................................49
12.9.    Time....................................................................................................................................49
12.10.  Dates of Actions to Implement Plan .................................................................................49
12.11.  Immediate Binding Effect..................................................................................................49
12.12.  Deemed Acts.......................................................................................................................49
12.13.  Successor and Assigns .......................................................................................................49
12.14.  Entire Agreement................................................................................................................50
12.15.  Exhibits to Plan..................................................................................................................50
12.16.  Dissolution of Creditors' Committee.................................................................................50
12.17.  Notices ...............................................................................................................................50

Each of TPI Composites, Inc., TPI Texas, LLC, TPI International, LLC, TPI Turkey, LLC, TPI APAC, LLC, TPI APAC II, Inc., TPI Turkey II, LLC, TPI Turkey Izbas, LLC, TPI Composites Services, LLC, TPI Mexico, LLC, TPI Mexico II, LLC, TPI Mexico III, LLC, TPI Mexico IV, LLC, Ponto Alto Holdings, LLC, TPI Arizona, LLC, TPI Iowa, LLC, TPI Iowa II, LLC, Composite Solutions, Inc., TPI Holdings Mexico, LLC, and TPI Technology, Inc. (collectively, the "**RemainCo Debtors**") propose the following joint chapter 11 plan of liquidation pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used herein shall have the meanings set forth in Article I.A.

**ARTICLE I.        DEFINITIONS AND INTERPRETATION**.

A.        **Definitions**.  The following terms shall have the respective meanings specified below:

1.1        "***Administrative Expense Claim***" means any Claim for a cost or expense of administration incurred during the Chapter 11 Cases in connection with any RemainCo Debtor pursuant to sections 503(b), 507(a)(2), 507(b), and 1114(e)(2) of the Bankruptcy Code, including (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Plan Effective Date of preserving the Estates and operating the businesses of any RemainCo Debtor (such as wages, salaries, commissions or other payments for services, or payments for goods or other amounts owed to vendors or service providers that supply goods and services that are essential to the operation of a RemainCo Debtor's business) and (b) Professional Fee Claims.

1.2        "***Administrative Expense Claims Bar Date***" means the applicable deadline for filing requests for payment of Administrative Expense Claims (other than Professional Fee Claims and Statutory Fees), which shall be the date that is 60 calendar days after the Plan Effective Date.

1.3        "***Affiliate***" has the meaning set forth in section 101(2) of the Bankruptcy Code.

1.4        "***Affiliated Debtors***" means TPI MX V and TPI MX VI.

1.5        "***Allowed***" means, (a) any Claim arising on or before the Plan Effective Date (i) as to which no objection to allowance, priority, or secured status, and no request for estimation or other challenge, including pursuant to section 502(d) of the Bankruptcy Code or otherwise, has been interposed prior to the Claim Objection Deadline, or (ii) as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, (b) any Claim that is compromised, settled, or otherwise resolved pursuant to the authority of the RemainCo Debtors, the GUC Trust, or the WindDown Co, as applicable, (c) any Claim as to which the liability of any RemainCo Debtor and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court, or (d) any Claim expressly allowed hereunder; *provided*, *however*, that notwithstanding the foregoing, (x) unless expressly waived by this Plan, the Allowed amount of Claims shall be subject to and shall not exceed the limitations under or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable, and (y) the WindDown Co shall retain all claims and defenses of the RemainCo Debtors with respect to Allowed Claims that are Unimpaired pursuant to this Plan.

1.6        "***Asset***" means any right, title, or interest of the RemainCo Debtors in and to property of whatever type or nature (including real, personal, mixed, intellectual, tangible, and intangible property).

1.7        "***Avoidance Actions***" means any and all actual or potential Causes of Action to avoid a transfer of property or an obligation incurred by any of the RemainCo Debtors arising under chapter 5 of the Bankruptcy Code, including sections 502(d), 542, 544, 545, 547, 548, 549, 550, 551, 552, and 553(b) of the Bankruptcy Code, and applicable non-bankruptcy law; *provided* that, the Preference Actions shall

not constitute Avoidance Actions; *provided further* that, subject to Article X hereof, any avoidance actions transferred to ECP under the ECP Purchase Agreement shall not constitute Avoidance Actions hereunder.

1.8    "***Ballot***" means the ballot approved by the Bankruptcy Court and accompanying the Disclosure Statement.

1.9    "***Bankruptcy Code***" means title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*, as amended from time to time, as applicable to the Chapter 11 Cases.

1.10    "***Bankruptcy Court***" means the United States Bankruptcy Court for the Southern District of Texas Houston Division having jurisdiction over the Chapter 11 Cases, and to the extent of any reference made under section 157 of title 28 of the United States Code or the Bankruptcy Court is determined not to have authority to enter a Final Order on an issue, the district court having jurisdiction over the Chapter 11 Cases under section 151 of title 28 of the United States Code.

1.11    "***Bankruptcy Rules***" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and any Local Bankruptcy Rules of the Bankruptcy Court, in each case, as amended from time to time and applicable to the Chapter 11 Cases.

1.12    "***Bidding Procedures***" shall have the meaning set forth in the Bidding Procedures Order.

1.13    "***Bidding Procedures Order***" means the *Order (I) Approving (A) Bidding Procedures for Sale of the Debtors' Assets, (B) Form and Manner of Notice of Sale, Auction, and Sale Hearing, and (C) Assumption and Assignment Procedures, (II) Scheduling Auction for and Hearing to Approve Sale of Debtors' Assets, and (III) Granting Related Relief* (Docket No. 288).

1.14    "***Business Day***" means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.15    "***Cash***" means legal tender of the United States of America.

1.16    "***Causes of Action***" means any action, claim, cross-claim, third-party claim, cause of action, controversy, dispute, proceeding, demand, right, lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), reduced to judgment or otherwise, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including, without limitation, under any state or federal securities laws). Causes of Action also includes (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to Claims or Interests, (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code, (e) any state law fraudulent transfer claim, and (f) Avoidance Actions.

1.17    "***Chapter 11 Cases***" means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court in which this Plan was filed.

2

*1.18* "***Claim***" has the meaning set forth in section 101(5) of the Bankruptcy Code, as against any of the RemainCo Debtors.

*1.19* "***Claim Objection Deadline***" means the deadline for objecting to filed Proofs of Claim or scheduled Claims, which shall be, unless otherwise extended pursuant to this Plan (a) the 180th day following the later of (i) the Plan Effective Date and (ii) the date that a Proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim or (b) such later date as may be fixed by the Bankruptcy Court.

*1.20* "***Class***" means any group of Claims or Interests classified as set forth in Article III of this Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

*1.21* "***Confirmation Date***" means the date on which the Bankruptcy Court enters the Confirmation Order.

*1.22* "***Confirmation Hearing***" means the hearing to be held by the Bankruptcy Court to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

*1.23* "***Confirmation Order***" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

*1.24* "***Convertible Noteholders***" means the holders of convertible senior notes issued pursuant to the Convertible Notes Indenture.

*1.25* "***Convertible Notes***" means the convertible senior notes issued pursuant to the Convertible Notes Indenture.

*1.26* "***Convertible Notes Claims***" means any Claim against the Parent arising from, derived from, or in connection to the unsecured convertible senior notes issued pursuant to the Convertible Notes Indenture.

*1.27* "***Convertible Notes Indenture***" means that certain *Indenture*, dated March 3, 2023 (as amended, restated, amended and restated, modified, or supplemented from time to time prior to the date hereof), by and among, Parent and the Convertible Notes Trustee.

*1.28* "***Convertible Notes Trustee***" means U.S. Bank Trust Company, National Association and any successors thereto as permitted by the terms set forth in the Convertible Notes Indenture, in its capacity as trustee under the Convertible Notes Indenture.

*1.29* "***Convertible Notes Trustee Fees and Expenses***" means the reasonable and documented fees, expenses (including the fees and expenses of the Convertible Notes Trustee's counsel, agents, and advisors), or indemnity rights of the Convertible Notes Trustee owing under the terms of the Convertible Notes Indenture.

*1.30* "***Convertible Notes Trustee Fees and Expenses Cap***" means up to $250,000 that shall be paid by the Parent to the Convertible Notes Trustee on the Plan Effective Date on account of the Convertible Notes Trustee Fees and Expenses.

*1.31* "***Creditors' Committee***" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases by the U.S. Trustee.

*1.32* "***Creditors' Committee's Challenges***" means, collectively, the (i) Creditors' Committee Pleadings and (ii) all potential Challenges (as defined in the Final DIP Order and the *Order Authorizing and Approving Stipulation (I) Regarding Certain Prepetition Collateral and (II) Extending Challenge Period for Official Committee of Unsecured Creditors Under Final DIP Order* (Docket No. 471)) asserted or assertable as set forth in both the Creditors' Committee Pleadings and the Disputed Collateral Stipulation.

*1.33* "***Creditors' Committee's Pleadings***" means collectively the (i) *Adversary Complaint* (Adv. Pro. No. 25-03761, Docket No. 2), (ii) *Emergency Motion of the Official Committee of Unsecured Creditors for a Temporary Restraining Order and Preliminary Injunction Against the Credit Bid of the Oaktree Entities* (Adv. Pro. No. 25-03761, Docket No. 3), and (iii) *Emergency Motion of the Official Committee of Unsecured Creditors for Standing to Prosecute Claims on Behalf of the Debtors' Estates* (Docket No. 300).

*1.34* "***Cure***" means the payment of Cash by the RemainCo Debtors, or the WindDown Co, as applicable, or the distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary to (a) cure a monetary default by any of the RemainCo Debtors, in accordance with the terms of an executory contract or unexpired lease of any RemainCo Debtor, as applicable, and (b) permit any RemainCo Debtor, or the WindDown Co, as applicable, to assume such executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code.

*1.35* "***Cure Dispute***" means a pending objection relating to assumption or assumption and assignment of an executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, including objections based on the appropriate Cure amount or "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code).

*1.36* "***Cure Notice***" means that certain *Notice of Proposed Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Sales and Proposed Cure Amounts with Respect Thereto* (Docket No. 672), as amended by the *Amended Notice of Proposed Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with ECP Sale Transaction and Proposed Cure Amounts With Respect Thereto* (Docket No. 839), and as may be further amended, modified or otherwise supplemented from time to time, including any amendments or modifications to such notice, providing notice to parties to executory contracts or unexpired leases of any of the RemainCo Debtors' intention to potentially assume the contract or lease in connection with this Plan and, where applicable, setting forth the proposed Cure amount (if any).

*1.37* "***D&O Indemnified Parties***" means individuals who on or prior to the Plan Effective Date were directors, officers, managers, or employees (in all of their capacities) of any of the RemainCo Debtors.

*1.38* "***D&O Policy***" means any insurance policy, including tail insurance policies, issued or providing coverage for current or former directors', managers', members', trustees', and officers' liability, and all agreements, documents, or instruments related thereto maintained by any of the RemainCo Debtors and in effect or purchased as of the Petition Date.

*1.39* "***Debtors***" means, collectively, the RemainCo Debtors and the Affiliated Debtors.

*1.40* "***DIP Agent***" means Oaktree, solely in its capacity as administrative agent under the DIP Credit Agreement, its successors, permitted assigns, or any replacement agent appointed pursuant to the terms of the DIP Credit Agreement.

*1.41* "***DIP Amendment***" means that certain *Waiver, Amendment, and Assignment and Assumption to Super-Priority Senior Secured Debtor-in-Possession Loan Agreement*, dated as of March 24, 2026.

4

1.42    "**DIP Claims**" means all Claims (other than those addressed by the TPI MX V & VI Plan) held by the DIP Lenders or the DIP Agent against the Debtors on account of, arising under, or relating to the DIP Credit Agreement, the DIP Facility, or the DIP Orders, including Claims for all principal amounts outstanding, and any and all fees, interest, expenses, indemnification obligations, reimbursement obligations, and other amounts due under the DIP Documents, which, for the avoidance of doubt, shall include all "DIP Obligations" as such term is defined in the DIP Order.

1.43    "**DIP Credit Agreement**" means that certain *Super-Priority Senior Secured Priming Debtor-in-Possession Credit Agreement and Guaranty*, dated as of August 14, 2025, by and among Parent, as borrower, the subsidiary guarantors party thereto, the DIP Agent, and the DIP Lenders, as approved by the DIP Orders, as may be further amended, restated, amended and restated, supplemented or otherwise modified from time to time in accordance with its terms, including pursuant to the DIP Amendment.

1.44    "**DIP Documents**" has the meaning set forth in the DIP Orders.

1.45    "**DIP Facility**" means that certain multi-draw senior secured super-priority term loan debtor-in-possession credit facility entered into by the Debtors as approved by the DIP Orders.

1.46    "**DIP Lenders**" means the lenders from time to time party to the DIP Credit Agreement.

1.47    "**DIP Obligations**" has the meaning set forth in the DIP Orders.

1.48    "**DIP Orders**" means, together, the Interim DIP Order and the Final DIP Order.

1.49    "**Disallowed**" means, with respect to any Claim, that such Claim has been determined by a Final Order or specified in a provision of this Plan not to be Allowed.

1.50    "**Disbursing Agent**" means, with respect to any distributions to holders of Allowed Claims in accordance with this Plan (i) on the Plan Effective Date, the RemainCo Debtors or their designees or (ii) after the Plan Effective Date, the GUC Trustee or the WindDown Agent, as applicable, or their respective designees.

1.51    "**Disclosure Statement**" means the disclosure statement for this Plan, including all exhibits and schedules thereto, as approved or ratified by the Bankruptcy Court pursuant to sections 1125 and 1126 of the Bankruptcy Code.

1.52    "**Disputed**" means with respect to a Claim, (a) any Claim, which Claim is disputed under Article 7.1 of this Plan or as to which the RemainCo Debtors have interposed and not withdrawn an objection or request for estimation that has not been determined by a Final Order, (b) any Claim, proof of which was required to be filed by order of the Bankruptcy Court but as to which a Proof of Claim was not timely or properly filed by the applicable claims bar date, (c) any Claim that is listed in the Schedules as unliquidated, contingent, or disputed, and as to which no request for payment or Proof of Claim has been filed by the applicable claims bar date, or (d) any Claim that is otherwise disputed by the RemainCo Debtors, the GUC Trust, or the WindDown Co, as applicable, in accordance with applicable law or contract, which dispute has not been withdrawn, resolved or overruled by a Final Order.

1.53    "**Disputed Collateral Stipulation**" means the *Stipulation (I) Regarding Certain Prepetition Collateral and (II) Extending Challenge Period for Official Committee of Unsecured Creditors Under Final DIP Order* (Docket No. 465).

1.54 "**Distribution Record Date**" means the Plan Effective Date; *provided*, *however*, that, notwithstanding anything to the contrary herein, the Distribution Record Date shall not apply to any publicly held securities held in the name of, or by a nominee of, DTC, as to which distributions may be made in accordance with the applicable procedures of DTC.

1.55 "**DTC**" means the Depository Trust Company.

1.56 "**ECP**" means Blade Midco LLC (f/k/a ECP Blade Holdings LLC).

1.57 "**ECP Purchase Agreement**" means that certain *Stock and Asset Purchase Agreement*, dated as of March 6, 2026, entered into between Parent, ECP, and certain of the Debtors and their Affiliates, pursuant to which ECP agreed to effectuate the ECP Sale Transaction.

1.58 "**ECP Sale Proceeds**" means, in the event the ECP Sale Transaction is consummated, a base Cash purchase price of $20,000,000 (subject to certain purchase price adjustments as set forth in the ECP Purchase Agreement) for certain assets and causes of action of the Debtors, payable to Parent and each "Seller Party" pursuant to the ECP Purchase Agreement (and as defined therein).

1.59 "**ECP Sale Transaction**" means the purchase by ECP of (i) the equity interests of TPI Blade Services Europe S.L.U., TPI Composites, S. de R.L. de C.V. and TPI Blade Services LATAM S.A. de C.V., (ii) certain of the assets of non-Debtor TPI Composites Denmark ApS, and (iii) substantially all of the assets of the Debtors and certain of their Affiliates related to the Debtors' business in the United States and Mexico, other than the equity of the Affiliated Debtors and related assets, pursuant to the ECP Purchase Agreement.

1.60 "**Employee Arrangements**" means all employment or employee-related arrangements, agreements, programs, and policies, and all compensation and benefits plans, policies, award letters, key employee retention agreements, and compensatory programs of the RemainCo Debtors applicable to their respective employees, retirees, consultants, contractors, and non-employee directors, including all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans (including equity and equity-based plans), welfare benefits plans, and life and accidental death and dismemberment insurance plans.

1.61 "**Entity**" means an "entity," as defined in section 101(15) of the Bankruptcy Code.

1.62 "**Estate**" means the estate of the RemainCo Debtors created under section 541 of the Bankruptcy Code.

1.63 "**Excess Sale Proceeds**" means the aggregate Excess RemainCo Debtor Proceeds for the RemainCo Debtors, if any.

1.64 "**Excess RemainCo Debtor Proceeds**" means, for each applicable RemainCo Debtor, the portion of ECP Sale Proceeds allocated to such RemainCo Debtor, *less* the amounts needed to pay the DIP Claims and fund the Other Secured Claims at such RemainCo Debtor, as required in accordance with applicable priorities, and such RemainCo Debtor's allocable portion of the Senior Claims Recovery Pool and the WindDown Reserve.

1.65 "**Exculpated Parties**" means each of the following in their capacity as such and, in each case, to the maximum extent permitted by law, (i) the RemainCo Debtors and their Estates, (ii) the Independent Directors, and (iii) the Creditors' Committee and each of its members.

6

1.66    "***Executory Contract***" means a contract to which any RemainCo Debtor is a party and that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.67    "***Existing Equity Interests***" means any Interests in Parent, including all preferred securities, common interests, warrants, options, phantom or other equity and equity-like securities or interests, including the common stock in Parent with a par value of $0.01 per share, previously listed on The Pink Limited Market under the ticker "TPICQ," in each case, that existed immediately prior to the Plan Effective Date; *provided*, that the Convertible Notes shall not be considered Existing Equity Interests.

1.68    "***Final DIP Order***" means the *Final Order (I) Authorizing Debtors and Debtors in Possession to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Senior Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* (Docket No. 373), authorizing the Debtors to enter into the DIP Credit Agreement and access the DIP Facility on a final basis, as may be amended, supplemented or modified from time to time, including pursuant to the *Amended Final Order (I) Authorizing Debtors and Debtors in Possession to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Senior Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* (Docket No. 858).

1.69    "***Final Order***" means as applicable, an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, including any order subject to appeal but for which no stay of such order has been entered, and as to which the time to appeal, seek certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been withdrawn with prejudice, resolved by the highest court to which the order or judgment was appealed or from which certiorari could be sought, or any request for new trial, reargument, or rehearing has been denied, resulted in no stay pending appeal or modification of such order, or has otherwise been dismissed with prejudice; *provided*, *however*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

1.70    "***General Unsecured Claim***" means any prepetition Claim against the RemainCo Debtors other than a Secured Claim or Other Priority Claim, and that is not otherwise secured by collateral, subordinated, or entitled to priority under the Bankruptcy Code.  For the avoidance of doubt, General Unsecured Claims shall include the Convertible Notes Claims and the Intercompany Claims.

1.71    "***GERNA***" means GE Renewables North America, LLC.

1.72    "***Governmental Unit***" has the meaning set forth in section 101(27) of the Bankruptcy Code.

1.73    "***GUC Reserve Funding Amount***" means Cash to be allocated to the GUC Trust to fund the GUC Trust Expenses on the Plan Effective Date in the aggregate amount of $1,000,000.00 in accordance with the Unsecured Claims Settlement, subject to the RemainCo Debtors' continuing ownership of any amount remaining after completion of the wind down of the GUC Trust, with a portion of the Cash amount to be funded by the RemainCo Debtors from the ECP Sale Proceeds and the remaining portion to be funded by the Affiliated Debtors pursuant to the TPI MX V & VI Plan.  To the extent that the TPI MX V & VI Plan does not become effective, the WindDown Co shall use reasonable efforts to allocate additional ECP

7

Sale Proceeds to the GUC Trust to fund the GUC Trust Expenses such that the full $1,000,000.00 is funded consistent with the terms and obligations of the Unsecured Claims Settlement.

*1.74* "**GUC Trust**" means the trust established under the TPI MX V & VI Plan in accordance with the GUC Trust Agreement.

*1.75* "**GUC Trust Agreement**" means that certain trust agreement to be entered into upon the earlier to occur of the Plan Effective Date or the effective date of the TPI MX V & VI Plan (as provided for in the TPI MX V & VI Plan), by one or more RemainCo Debtor(s) and the GUC Trustee setting forth, among other things, the identity, terms of compensation, and authority of the GUC Trustee and the scope of services to be provided by the GUC Trustee.  For the avoidance of doubt, the GUC Trust Agreement shall be the same agreement as the "GUC Trust Agreement" under the TPI MX V & VI Plan.

*1.76* "**GUC Trust Assets**" means (i) the GUC Reserve Funding Amount and (ii) the Senior Secured Turnover Rights.

*1.77* "**GUC Trust Expenses**" means any and all reasonable fees, costs, and expenses incurred by the GUC Trust or the GUC Trustee (or any professional or other Person retained by the GUC Trustee) on or after the Plan Effective Date in connection with the administration of the GUC Trustee's duties under this Plan and the GUC Trust Agreement, including any attorneys' fees and expenses, including those related to the reconciliation and distributions on account of General Unsecured Claims, insurance, taxes, and escrow expenses, which shall be funded from the GUC Reserve Funding Amount.

*1.78* "**GUC Trust Interests**" means, the beneficial interests in the GUC Trust granted to holders of Allowed General Unsecured Claims and any beneficial interests in the GUC Trust that may be granted to holders of general unsecured claims under the TPI MX V & VI Plan, which beneficial interests shall entitle such holders to share in the Senior Secured Turnover Rights, which interests shall be non-transferable and uncertified.

*1.79* "**GUC Trustee**" means a Person selected and designated by the Creditors' Committee with the consent of the Debtors (which consent shall not be unreasonably withheld) whether in connection with this Plan or the TPI MX V & VI Plan, and any successor(s) thereto in accordance with the GUC Trust Agreement, who shall have all powers and authorities as set forth in Article 5.25.2 hereof and in the GUC Trust Agreement.

*1.80* "**Impaired**" means, with respect to a Claim, Interest, or Class of Claims or Interests, "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

*1.81* "**Incremental Payment**" means an amount equal to 1% of the purchase price (exclusive of taxes, tariffs and other fees) actually paid by GERNA to ECP or its Affiliates for wind turbine blades manufactured using, or otherwise attributable to, the assets acquired by ECP pursuant to the ECP Purchase Agreement as set forth in the Incremental Payment Agreement.

*1.82* "**Incremental Payment Agreement**" means that certain *Incremental Payment Agreement* to be entered into between Oaktree and GERNA setting forth the terms of the Incremental Payment.

*1.83* "**Indemnification Obligation**" means any obligation to indemnify current officers, directors, members, managers, agents, or employees with respect to all present and future actions, suits, and proceedings against the RemainCo Debtors or such officers, directors, members, managers, agents, or employees based upon any act or omission for or on behalf of the RemainCo Debtors.

8

*1.84* "**Independent Directors**" means collectively, Paul Giovacchini, Timothy Pohl, and Neal Goldman, each in his capacity as an independent and disinterested member of the board of directors of Parent.

*1.85* "**Intercompany Claim**" means any Claim against a RemainCo Debtor held by another Debtor.

*1.86* "**Intercompany Interest**" means any Interest held by one RemainCo Debtor in another RemainCo Debtor.

*1.87* "**Interest**" means any equity in any RemainCo Debtor as defined in section 101(16) of the Bankruptcy Code, including all ordinary shares, units, common stock, preferred stock, membership interest, partnership interest, or other instruments evidencing an ownership interest, or equity security (as defined in section 101(16) of the Bankruptcy Code) in any RemainCo Debtor, whether or not transferable, and any option, warrant or right, contractual or otherwise.

*1.88* "**Interim DIP Order**" means the *Interim Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status and (III) Granting Adequate Protection to the Senior Secured Parties, (IV) Modifying Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* (Docket No. 73), authorizing the Debtors to enter into the DIP Credit Agreement and access the DIP Facility on an interim basis.

*1.89* "**IRS**" means Internal Revenue Service.

*1.90* "**Lien**" has the meaning set forth in section 101(37) of the Bankruptcy Code.

*1.91* "**Local Bankruptcy Rules**" means the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas.

*1.92* "**Notice and Claims Agent**" means Kroll Restructuring Administration LLC, in its capacity as noticing, claims, and solicitation agent for the Debtors, pursuant to an order of the Bankruptcy Court.

*1.93* "**Oaktree**" means Oaktree Fund Administration, LLC.

*1.94* "**Oaktree Recovery**" has the meaning set forth in the Unsecured Claims Settlement.

*1.95* "**Other Priority Claim**" means any Claim other than an Administrative Expense Claim or a Priority Tax Claim entitled to priority in right of payment as specified in section 507(a) of the Bankruptcy Code.

*1.96* "**Other Secured Claim**" means any Secured Claim other than a DIP Claim or Senior Secured Term Loan Claim.

*1.97* "**Parent**" means TPI Composites, Inc., a Delaware corporation.

*1.98* "**Person**" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited partnership, trust, estate, unincorporated organization, Governmental Unit, or other Entity.

*1.99* "**Petition Date**" means August 11, 2025.

*1.100*   "**Plan**" means this joint chapter 11 plan, including all appendices, exhibits, schedules, and supplements hereto, as the same may be amended, supplemented, or modified from time to time.

*1.101*   "**Plan Effective Date**" means the date, selected by the RemainCo Debtors that is the first Business Day on which (a) all conditions precedent to the Plan Effective Date set forth in Article IX hereof have been satisfied or waived in accordance with this Plan and (b) no stay of the Confirmation Order is in effect.

*1.102*   "**Plan Supplement**" means a supplemental appendix to this Plan containing certain documents, schedules, and exhibits relevant to the implementation of this Plan, as may be amended, modified, or supplemented from time to time in accordance with the terms hereof and the Bankruptcy Code and the Bankruptcy Rules, which shall include (a) the GUC Trust Agreement, (b) a schedule of retained Causes of Action, (c) the Schedule of Assumed Contracts, (d) the identities of the GUC Trustee and the WindDown Agent to the extent known, and (e) any other information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code to the extent known.

*1.103*   "**Preference Actions**" means Causes of Action arising under section 547 of the Bankruptcy Code against holders of allowed General Unsecured Claims from the provision of goods and services to any Debtor, which were waived in accordance with the Unsecured Claims Settlement.

*1.104*   "**Prepetition Administrative Agent**" means Oaktree Fund Administration, LLC, as administrative agent under the Senior Secured Credit Agreement.

*1.105*   "**Priority Tax Claim**" means any Claim of a Governmental Unit against any RemainCo Debtor of the kind entitled to priority of payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

*1.106*   "**Pro Rata Share**" means, as the context so requires, (i) the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or (ii) the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims and Disputed Claims in a particular Class and other Classes entitled to share in the same recovery as such Class under this Plan and the TPI MX V & VI Plan.

*1.107*   "**Professional**" means any Person retained by order of the Bankruptcy Court in connection with the Chapter 11 Cases pursuant to sections 327, 328, 330, 331, or 363 of the Bankruptcy Code, excluding any ordinary course professional retained pursuant to an order of the Bankruptcy Court.

*1.108*   "**Professional Fee Claims**" means all Claims for fees and expenses incurred by a Professional on or after the Petition Date in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any applicable orders of the Bankruptcy Court, to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court; *provided, however,* that the Claims for fees and expenses incurred by the Creditors' Committee in the aggregate in connection with the Chapter 11 Cases on or after December 3, 2025 shall be subject to a cap of $1,250,000.00.

*1.109*   "**Professional Fee Escrow**" means the Professional Fees Escrow Account (as defined in the Final DIP Order), which shall be funded on the earlier of the Plan Effective Date and the effective date of the TPI MX V & VI Plan such that the total amount in such account is equal to the aggregate amount of Professional Fee Claims incurred by each Professional through the Plan Effective Date; *provided, however,* that, any amounts funded to the Professional Fee Escrow in accordance with the Final DIP Order in excess of the Professional Fee Contribution Amount shall be held in the Professional Fee Escrow until all Allowed Professional Fee Claims are satisfied in full.

1.110 "***Professional Fee Contribution Amount***" means an allocable portion of the estimated amount necessary to pay Professional Fee Claims in full as of the Plan Effective Date, to be funded by the RemainCo Debtors from the ECP Sale Proceeds into the Professional Fee Escrow on the Plan Effective Date.

1.111 "***Proof of Claim***" means a proof of Claim filed against any RemainCo Debtor in the Chapter 11 Cases.

1.112 "***Rejection Damages Bar Date***" means no later than 30 days after the later of (i) the Plan Effective Date or (ii) the effective date of rejection of such executory contract or unexpired lease by any RemainCo Debtor pursuant to this Plan.

1.113 "***Related Parties***" means with respect to a Person, that Person's current and former Affiliates, and such Person's and its current and former Affiliates' directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns (whether by operation of law or otherwise), subsidiaries, current, former, and future associated entities, managed or advised entities, accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors, managers, fiduciaries, trustees, employees, agents (including any disbursing agent), advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, representatives' advisors, predecessors, successors, and assigns, each solely in their capacity as such (including any attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of a Person), and the respective heirs, executors, estates, servants and nominees of the foregoing.

1.114 "***Released Parties***" means, collectively, and in each case solely in their capacity as such (a) the RemainCo Debtors, (b) the Senior Secured Lenders, (c) the Prepetition Administrative Agent, (d) the DIP Agent, (e) the DIP Lenders, (f) the GUC Trust and GUC Trustee, (g) the WindDown Co and WindDown Agent, and (h) the Related Parties of each Person in clauses (a) through (g); *provided, however*, that each Person that timely and properly opts out of, or fails to opt into, as applicable, the releases set forth in Article 10.6(b) of this Plan shall not be a Released Party; *provided*, *further*, that, other than with respect to the parties expressly identified as Released Parties, holders of Existing Equity Interests shall not be deemed Released Parties in such capacity.

1.115 "***Releasing Parties***" means collectively, and in each case solely in their capacity as such, (a) the RemainCo Debtors, (b) the Senior Secured Lenders, (c) the Prepetition Administrative Agent, (d) the DIP Agent, (e) the DIP Lenders, (f) each holder of a Claim in Class 1 or Class 2, that was given notice of the opportunity to opt out of granting the releases set forth in Section 10.6 of this Plan and does not affirmatively opt out of such releases, (g) each holder of a Claim in Class 4 that affirmatively opts in to the releases contained in Section 10.6 of this Plan by checking the applicable box on their Ballot, and (h) with respect to each of the foregoing Persons in clauses (a) through (g), such Persons' (x) Related Parties, to the extent that such Person is legally entitled to bind such Related Party to the releases contained in Section 10.6 of this Plan under applicable law, (y) predecessors, successors, or assigns, and (z) all Persons entitled to assert Claims or Causes of Action through or on behalf of such Persons with respect to the matters for which such Persons are providing releases; *provided*, *however*, that in no circumstance shall any Affiliated Debtor or its estate be considered a Releasing Party.

1.116 "***Restructuring Expenses***" means all invoiced reasonable and documented fees, expenses, and other amounts of the DIP Agent, Prepetition Administrative Agent, DIP Lenders, or Senior Secured Lenders, whether arising before or after the Plan Effective Date, related to the implementation,

11

consummation, and defense of the Plan and the TPI MX V & VI Plan, including the reasonable and documented fees and out-of-pocket expenses of counsel and advisors to each of the foregoing.

1.117   "**Sale Order**" means the *Order (I) Authorizing and Approving (A) Sale of Certain of Debtors' Assets to ECP Blade Holdings, LLC Free and Clear of All Interests and (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, (II) Authorizing and Approving Back-Up Bid, and (III) Granting Related Relief* (Docket No. 778), authorizing, among other things, the ECP Purchase Agreement and the ECP Sale Transaction.

1.118   "**Schedule of Assumed Contracts**" means the schedule of executory contracts and unexpired leases to be assumed by the RemainCo Debtors pursuant to this Plan, as the same may be amended, modified, or supplemented from time to time.

1.119   "**Secured Claim**" means any Claim that is (i) secured by a Lien on any collateral of the RemainCo Debtors as (a) set forth in this Plan, (b) agreed to by the holder of such Claim and the RemainCo Debtors, or (c) determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code or (ii) secured by the amount of any right of setoff of the holder thereof in accordance with section 553 of the Bankruptcy Code, including the Senior Secured Term Loan Claim.

1.120   "**Senior Claims Recovery Pool**" means the Cash pool established pursuant to this Plan from the ECP Sale Proceeds containing, on the Plan Effective Date, the amount of Cash reasonably estimated by the RemainCo Debtors to be necessary to pay holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed DIP Claims, Allowed Other Priority Claims, and Professional Fee Claims, plus the total Disputed amounts of such Claims until such Claim is Allowed or disallowed as applicable, which amount of Cash shall be determined in consultation with the Prepetition Administrative Agent.

1.121   "**Senior Secured Credit Agreement**" means that certain *Credit Agreement and Guaranty*, dated as of December 14, 2023 (as amended, restated, amended and restated, modified, or supplemented from time prior to the date hereof), by and among, Parent, as borrower, the subsidiary guarantors from time to time party thereto, as guarantors, the Prepetition Administrative Agent, and the Senior Secured Lenders.

1.122   "**Senior Secured Lenders**" means the lenders from time to time party to the Senior Secured Credit Agreement.

1.123   "**Senior Secured Term Loan Claim**" means any Claim arising from, derived from, or in connection to the Senior Secured Term Loans held under the Senior Secured Credit Agreement, including any accrued but unpaid interest (whether accruing pre- or postpetition), fees, premiums, and all other obligations, amounts, and expenses arising under or in connection with the Senior Secured Credit Agreement, and all Claims or Causes of Action relating thereto.

1.124   "**Senior Secured Term Loan Documents**" means, collectively, the Senior Secured Credit Agreement and all other loan documents, including all other agreements, documents, and instruments delivered or entered into pursuant thereto or in connection therewith (including any collateral documentation), in each case, as amended, restated, modified, or supplemented from time to time.

1.125   "**Senior Secured Term Loans**" means the senior, secured term loan under the Senior Secured Credit Agreement in the aggregate principal amount of approximately $456.8 million.

1.126   "**Senior Secured Turnover Rights**" means any rights to Cash distributions that the Senior Secured Lenders as holders of Senior Secured Term Loan Claims in Class 3 turn over to the GUC Trust

12

pursuant to the Unsecured Claims Settlement, including any such rights in respect of the Incremental Payment.

1.127    "**Single Share**" means a single share of Parent common stock to be issued on the Plan Effective Date to the WindDown Agent to hold in trust as custodian for the benefit of the holders of Existing Equity Interests for purposes of effectuating this Plan.

1.128    "**Statutory Fees**" means all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

1.129    "**Surplus Senior Claims Recovery Pool Cash**" means a surplus in the funding of the Senior Claims Recovery Pool as may be released from the Senior Claims Recovery Pool by the WindDown Co from time to time pursuant to this Plan.

1.130    "**Tax Code**" means title 26 of the United States Code, 26 U.S.C. § 1, *et seq.*, as amended from time to time, as applicable to the Chapter 11 Cases.

1.131    "**TPI MX V**" means TPI Mexico V, LLC.

1.132    "**TPI MX V & VI**" means collectively, TPI MX V and TPI MX VI.

1.133    "**TPI MX VI**" means TPI Mexico VI, LLC.

1.134    "**TPI MX V & VI Plan**" means the *Amended Joint Chapter 11 Plan of TPI Mexico V, LLC and TPI Mexico VI, LLC* (Docket No. 861), including all appendices, exhibits, schedules, and supplements thereto, as the same may be amended, supplemented, or modified from time to time.

1.135    "**U.S. Trustee**" means the United States Trustee for Region 7.

1.136    "**Unimpaired**" means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

1.137    "**Unsecured Claim**" means all Claims that are not a Secured Claim, Priority Tax Claim, Other Priority Claim, Professional Fee Claim, DIP Claim, or an Administrative Expense Claim.

1.138    "**Unsecured Claims Settlement**" means the settlement between TPI MX V, TPI MX VI, the Affiliated Debtors, the Creditors' Committee, the DIP Lenders (other than Vestas), and the Senior Secured Lenders resolving the Creditors' Committee Challenges and other matters on the terms and conditions set forth in the term sheet attached as Exhibit 1 to the *Order (I) Authorizing and Approving Settlement and (II) Granting Related Relief* (Docket No. 553).

1.139    "**Vestas**" means Vestas Wind Systems A/S, Vestas America Holding, Inc. and/or their applicable Affiliates, as the context may require.

1.140    "**WindDown Agent**" means the Person holding the office of agent, director, manager, or officer, as applicable, of the WindDown Co, as selected consistent with the terms of the TPI MX V & VI Plan.

1.141    "**WindDown Co**" means the Parent or successor to the Parent tasked with overseeing the administration of the Plan after the Plan Effective Date in accordance with the terms hereof.

13

1.142   "**_WindDown Reserve_**" means a $5.5 million Cash reserve established on the Plan Effective Date from the ECP Sale Proceeds that shall fund wind-down costs of the RemainCo Debtors and any Restructuring Expenses incurred after the Plan Effective Date, which reserve shall not be allocable to the GUC Trust or available for payment of any costs incurred by the GUC Trust.

B.       **Interpretation; Application of Definitions and Rules of Construction**.

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan, as the same may be amended or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein and have the same meaning as "in this Plan," "of this Plan," "to this Plan," and "under this Plan," respectively.  The words "includes" and "including" are not limiting.  The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or plural, shall include both the singular and plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, all references herein to "Sections" or "Articles" are references to Sections or Articles hereof or hereto; (4) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (5) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure shall have the meaning assigned to that term in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure, as the case may be; (6) any docket number references in this Plan shall refer to the docket number of any document filed with the Bankruptcy Court in the Chapter 11 Cases; (7) references to "shareholders," "directors," and/or "officers" shall also include "members," "managers," and/or general partners, as applicable, as such terms are defined under the applicable state limited liability and limited partnership company laws; (8) except as otherwise provided herein, any reference to a document or agreement that is to be issued or entered into that is dependent on an election to be made pursuant to this Plan or an event occurring shall be deemed to be followed by the words "if applicable"; (9) any immaterial effectuating provisions may be interpreted by the RemainCo Debtors, or after the Plan Effective Date, the GUC Trustee or the WindDown Co, as applicable, in such a manner that is consistent with the overall purpose and intent of this Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Person; _provided_, _however_, that any effectuating provision that has an economic impact will not be considered "immaterial"; and (10) except as otherwise provided, any references to the Plan Effective Date shall mean the Plan Effective Date or as soon as reasonably practicable thereafter.

C.       **Computation of Time**.

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to this Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next Business Day.

D.       **Reference to Monetary Figures**.

All references in this Plan to monetary figures shall refer to the legal tender of the United States of America, unless otherwise expressly provided.

14

E.       **Controlling Document**.

In the event of an inconsistency between this Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or the Confirmation Order).  In the event of an inconsistency between this Plan and any other instrument or document created or executed pursuant to this Plan, or between this Plan and the Disclosure Statement, this Plan shall control.  The provisions of this Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided*, *however,* that, if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of this Plan.

**ARTICLE II.       ADMINISTRATIVE EXPENSE CLAIMS, PROFESSIONAL FEE CLAIMS, DIP CLAIMS, RESTRUCTURING EXPENSES, AND PRIORITY TAX CLAIMS.**

2.1.       *Administrative Expense Claims Bar Date.*

Except as provided for herein or in any order of the Bankruptcy Court, and subject to section 503(b)(1)(D) of the Bankruptcy Code, holders of Administrative Expense Claims (other than Professional Fee Claims and statutory fees) must file and serve on any RemainCo Debtor, as applicable, requests for the payment of such Administrative Expense Claims not already Allowed by a Final Order in accordance with the procedures specified in the Confirmation Order, on or before the Administrative Expense Claims Bar Date or be forever barred, estopped, and enjoined from asserting such claims against any RemainCo Debtor, as applicable, or their Assets.

2.2.       *Administrative Expense Claims.*

Unless otherwise agreed to by a holder of an Allowed Administrative Expense Claim and the RemainCo Debtors, or the WindDown Co, as applicable, each holder of an Allowed Administrative Expense Claim (other than a Professional Fee Claim) shall receive, in full and final satisfaction of such Claim, Cash paid by the WindDown Co in an amount equal to such Allowed Administrative Expense Claim or such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code on, or as soon thereafter as is reasonably practicable, the later of (a) the Plan Effective Date and (b) the first Business Day after the date that is 30 calendar days after the date such Administrative Expense Claims becomes an Allowed Administrative Expense Claim.

2.3.       *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim, Cash in an amount equal to such Allowed Priority Tax Claim, as soon thereafter as is reasonably practicable, the later of (a) the Plan Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Plan Effective Date and (b) the first Business Day after the date that is 30 calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim.

2.4.       *DIP Claims.*

(a)    All DIP Claims shall be deemed Allowed as of the Plan Effective Date in an amount equal to the aggregate amount of the outstanding DIP Obligations, including (a) the principal amount outstanding

15

under the DIP Loans on such date, (b) all interest accrued and unpaid thereon through and including the date of payment, and (c) all accrued and unpaid fees, discounts, expenses, costs and indemnification obligations payable under the DIP Credit Agreement.  For the avoidance of doubt, Allowed DIP Claims shall not include any DIP Obligations satisfied (or intended to be satisfied) pursuant to the TPI MX V & VI Plan.

(b)   Subject to the DIP Orders, on the Plan Effective Date, each holder of an Allowed DIP Claim shall receive, in full and final satisfaction of such Allowed DIP Claim, payment in full in Cash from the ECP Sale Proceeds as proceeds of collateral of the DIP Lenders (other than Vestas) under the DIP Orders or such other treatment as agreed to by the RemainCo Debtors and such DIP Lender.

2.5.      *Professional Fee Escrow.*

(a)   On the Plan Effective Date, the RemainCo Debtors shall fund the Professional Fee Escrow with Cash from the ECP Sale Proceeds equal to the Professional Fee Contribution Amount, and no Liens, Claims, or interests shall encumber the Professional Fee Escrow in any way (whether on account of the DIP Loans or otherwise).  The Professional Fee Escrow (including funds held in the Professional Fee Escrow) (i) shall not be and shall not be deemed property of the RemainCo Debtors, their Estates, the GUC Trust, or the WindDown Co, and (ii) shall be held in trust for the Professionals; *provided, however,* that a proportionate share of funds remaining in the Professional Fee Escrow after all Allowed Professional Fee Claims have been irrevocably paid in full shall revert to the WindDown Co based on the amount the RemainCo Debtors fund into the Professional Fee Escrow.

(b)   All Professionals seeking approval by the Bankruptcy Court of Professional Fee Claims shall file, on or before the date that is the later of (y) 45 days after the Plan Effective Date or (z) the time period set forth in the TPI MX V & VI Plan for Professionals to file fee applications, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred.  Allowed Professional Fee Claims shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow when such Claims are Allowed by an order of the Bankruptcy Court.  The RemainCo Debtors' obligations with respect to Professional Fee Claims shall be limited to the Professional Fee Contribution Amount.

(c)   If the amount of funds in the Professional Fee Escrow is insufficient to fund payment in full of all Allowed Professional Fee Claims and any other Allowed amounts owed to Professionals, the deficiency shall be promptly funded to the Professional Fee Escrow from the Excess Sale Proceeds, as applicable, without any further action or order of the Bankruptcy Court.

(d)   Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Plan Effective Date, and shall deliver such estimate to the Debtors no later than two Business Days before the Plan Effective Date; *provided, however,* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of each Professional's final request for payment in the Chapter 11 Cases. If a Professional does not provide an estimate, the RemainCo Debtors, or the WindDown Co, as applicable, may estimate the unpaid and unbilled fees and expenses of such Professional.

2.6.      *Restructuring Expenses.*

The Restructuring Expenses incurred, or estimated to be incurred, up to and including the Plan Effective Date, shall be paid in full in Cash funded from the ECP Sale Proceeds or any other remaining Assets to the extent available, in either case, on the Plan Effective Date or as soon as reasonably practicable thereafter (to the extent not previously paid during the course of the Chapter 11 Cases) in accordance with,

16

and subject to, the terms set forth herein, without any requirement to file a fee application with the Bankruptcy Court, without the need for itemized time detail, and without any requirement for Bankruptcy Court or any other review of approval. All Restructuring Expenses to be paid on the Plan Effective Date shall be estimated prior to and as of the Plan Effective Date, and such estimates shall be delivered to the Debtors at least three Business Days before the anticipated Plan Effective Date; *provided*, *however*, that such estimates shall not be considered an admission or limitation with respect to such Restructuring Expenses. On the Plan Effective Date, invoices for all Restructuring Expenses incurred prior to and as of the Plan Effective Date shall be submitted to the Debtors. In addition, the Debtors and WindDown Co, as applicable, shall continue to pay from the ECP Sale Proceeds or any other remaining Assets to the extent available, when due and payable in the ordinary course, Restructuring Expenses without any requirement for review or approval by the Bankruptcy Court or for any party to file a fee application with the Bankruptcy Court.

**ARTICLE III.   CLASSIFICATION OF CLAIMS AND INTERESTS**.

### 3.1.   *Classification in General.*

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; *provided*, *however*, that a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been satisfied, released, or otherwise settled prior to the Plan Effective Date.

### 3.2.   *Formation of Debtor Groups for Convenience Only.*

The Plan groups certain of the RemainCo Debtors together solely for the purpose of describing treatment under this Plan, confirmation of this Plan, and making distributions in respect of Claims against and Interests in the RemainCo Debtors under this Plan. Such groupings shall not affect any RemainCo Debtor's status as a separate legal Person, change the organizational structure of the RemainCo Debtors' business enterprise, constitute a change of control of any RemainCo Debtor for any purpose, cause a merger or consolidation of any legal Entities, or cause the transfer of any assets; and, except as otherwise provided by or permitted under this Plan, the RemainCo Debtors shall continue to exist as separate legal Entities after the Plan Effective Date.

### 3.3.   *Summary of Classification.*

The following table designates the Classes of Claims against and Interests in the RemainCo Debtors and specifies which of those Classes are (a) Impaired or Unimpaired by this Plan, (b) entitled to vote to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code, and (c) presumed to accept or deemed to reject this Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims (including Professional Fee Claims), Priority Tax Claims, and DIP Claims have not been classified.

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | No (Presumed to Accept) |
| 2 | Other Secured Claims | Unimpaired | No (Presumed to Accept) |
| 3 | Senior Secured Term Loan Claims | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | Yes |

17

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 5 | Intercompany Interests | Unimpaired/Impaired | No (Presumed to Accept/Deemed to Reject) |
| 6 | Existing Equity Interests | Impaired | No (Deemed to Reject) |

### 3.4.  *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in this Plan, nothing under this Plan shall affect, diminish, or impair the rights of the RemainCo Debtors or the WindDown Co, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims; and, except as otherwise specifically provided in this Plan, nothing herein shall be deemed to be a waiver or relinquishment of any claim, Cause of Action, right of setoff, or other legal or equitable defense that any RemainCo Debtor had immediately prior to the Petition Date, against or with respect to any Claim that is Unimpaired by this Plan.  Except as otherwise specifically provided in this Plan, the RemainCo Debtors or the WindDown Co, as applicable, shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff, and other legal or equitable defenses that the RemainCo Debtors had immediately prior to the Petition Date fully as if the Chapter 11 Cases had not been commenced.

### 3.5.  *Elimination of Vacant Classes.*

Any Class of Claims against or Interests in the RemainCo Debtors that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from this Plan for purposes of voting to accept or reject this Plan, and disregarded for purposes of determining whether this Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

### 3.6.  *No Waiver.*

Nothing contained in this Plan shall be construed to waive a RemainCo Debtor's or other Person's right to object on any basis to any Disputed Claim.

## ARTICLE IV.    TREATMENT OF CLAIMS AND INTERESTS.

### 4.1.  *Other Priority Claims (Class 1).*

(a)  *Treatment*:  On or as soon as reasonably practicable after the later of the Plan Effective Date and the date that is ten Business Days after the date such Other Priority Claim becomes an Allowed Claim, except to the extent that a holder of an Allowed Other Priority Claim and the RemainCo Debtors or the WindDown Co, as applicable, agree to less favorable treatment, each holder of an Allowed Other Priority Claim shall receive in full and final satisfaction, settlement, and release, of such Claim, at the option of the RemainCo Debtors or the WindDown Co, as applicable, either (i) payment in full in Cash or (ii) other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

(b)  *Impairment and Voting*:  Class 1 is Unimpaired, and the holders of Other Priority Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Other Priority Claims are not entitled to vote to accept or reject this Plan, and the votes of such holders will not be solicited with respect to Other Priority Claims.

18

4.2.   ***Other Secured Claims (Class 2).***

(a)   *Treatment*:  On or as soon as reasonably practicable after the later of the Plan Effective Date and the date that is ten Business Days after the date such Other Secured Claim becomes an Allowed Claim, except to the extent that a holder of an Allowed Other Secured Claim and the RemainCo Debtors or the WindDown Co, as applicable, agree to less favorable treatment, each holder of an Allowed Other Secured Claim shall receive in full and final satisfaction, settlement, and release, of such Claim, at the option of the RemainCo Debtors or the WindDown Co, as applicable, either (i) payment in full in Cash or (ii) other treatment consistent with the provisions of section 1129(b)(2)(A) of the Bankruptcy Code.

(b)   *Impairment and Voting*:  Class 2 is Unimpaired, and the holders of Other Secured Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Other Secured Claims are not entitled to vote to accept or reject this Plan, and the votes of such holders will not be solicited with respect to Other Secured Claims.

4.3.   ***Senior Secured Term Loan Claims (Class 3).***

(a)   *Allowance*:  The Senior Secured Term Loan Claims are Allowed pursuant to section 506(a) of the Bankruptcy Code in the aggregate amount of no less than $456.8 million.

(b)   *Treatment*:  On or as soon as reasonably practicable after the later of the Plan Effective Date and the date that is ten Business Days after the date such Senior Secured Term Loan Claim becomes an Allowed Claim, except to the extent that a holder of an Allowed Senior Secured Term Loan Claim and the RemainCo Debtors or the WindDown Co, as applicable, agree to less favorable treatment, each holder of an Allowed Senior Secured Term Loan Claim shall receive, subject to the terms of the Unsecured Claims Settlement, its Pro Rata Share of the (i) Excess Sale Proceeds, (ii) any remaining GUC Reserve Funding Amount or WindDown Reserve after the completion of the claims reconciliation process and the wind down of the GUC Trust, the WindDown Co, and the estates of the Affiliated Debtors, as applicable, and (iii) the Surplus Senior Claims Recovery Pool Cash, until holders of Allowed Senior Secured Term Loan Claims receive collectively from all such sources an amount equal to the Allowed amount of their Allowed Senior Secured Term Loan Claims and, as a result of the foregoing, the obligations of the RemainCo Debtors, if any, with respect to the Senior Secured Term Loan Claims shall be released and discharged.

(c)   *Impairment and Voting*:  Class 3 is Impaired, and the holders of Senior Secured Term Loan Claims in Class 3 are entitled to vote to accept or reject this Plan.

4.4.   ***General Unsecured Claims (Class 4).***

(a)   *Treatment*:  Except to the extent that a holder of an Allowed General Unsecured Claim agrees to a less favorable treatment, each holder of an Allowed General Unsecured Claim shall receive, in final satisfaction, release and discharge of such Allowed General Unsecured Claims, on the Plan Effective Date, its Pro Rata Share, along with holders of beneficial interests in the GUC Trust granted in connection with TPI MX V & VI Plan, subject to the terms of the Unsecured Claims Settlement, of the GUC Trust Interests.

(b)   *Impairment and Voting*:  Holders of Class 4 Claims are Impaired and such holders are entitled to vote to accept or reject this Plan.

19

4.5.     *Intercompany Interests (Class 5).*

(a)   *Treatment*:   On the Plan Effective Date, or as soon as practicable thereafter, all Intercompany Interests in a RemainCo Debtor shall be (i) adjusted, (ii) reinstated, (iii) cancelled, or (iv) otherwise addressed, to the extent reasonably determined to be appropriate by the RemainCo Debtors or the WindDown Co, as applicable; *provided*, that no Plan distributions shall be made to holders of Intercompany Interests on account of such Intercompany Interests under the Plan unless all Allowed Claims against such RemainCo Debtor have been satisfied in full or as otherwise satisfied and released in accordance with the Bankruptcy Code and the Plan.

(b)   *Impairment and Voting*:   Holders of Class 5 Claims are either (i) Unimpaired under this Plan if the Intercompany Interests are reinstated or (ii) Impaired under this Plan if the Intercompany Interests are (1) adjusted, (2) cancelled, or (3) otherwise addressed, and such holders are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Intercompany Interests are not entitled to vote to accept or reject this Plan, and the votes of such holders will not be solicited with respect to such Intercompany Interests.

4.6.     *Existing Equity Interests (Class 6).*

(a)   *Treatment*:   On the Plan Effective Date, (i) the Single Share shall be issued to the WindDown Agent to hold in trust as custodian for the benefit of the holders of Existing Equity Interests as of the Plan Effective Date consistent with their former relative priority and economic entitlements and the Single Share shall be recorded on the books and records maintained by the WindDown Agent, and (ii) each holder of Existing Equity Interests as of the Plan Effective Date (through their interest in the Single Share, as applicable) shall neither receive nor retain any property of the Parent's Estate or direct interest in property of the Parent's Estate on account of such Existing Equity Interests; *provided*, that in the event that all Allowed Claims have been satisfied in full or as otherwise satisfied and released in accordance with the Bankruptcy Code and the Plan, each holder of an Existing Equity Interest as of the Plan Effective Date may receive its share of any remaining assets of the Parent consistent with such holder's rights of payment under applicable law or contract, as applicable, existing immediately prior to the Petition Date.  The continuing rights of former holders of Existing Equity Interests (including through their interest in Single Share or otherwise) shall be nontransferable other than if transferred by will, intestate succession, or otherwise by operation of law.

(b)   *Impairment and Voting*:   Class 6 is Impaired and its holders are not receiving or retaining any property under this Plan; accordingly, the holders of Existing Equity Interests in Class 6 are conclusively deemed to reject this Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Existing Equity Interests are not entitled to vote to accept or reject this Plan, and the votes of such holders will not be solicited with respect to such Existing Equity Interests.

**ARTICLE V.     MEANS FOR IMPLEMENTATION.**

5.1.     *WindDown Co.*

(a)   Upon the earlier of the Plan Effective Date and the effective date of the TPI MX V & VI Plan, as provided for in the TPI MX V & VI Plan, the WindDown Co shall be established in accordance with this Plan and the TPI MX V & VI Plan.  Subject to and to the extent set forth in this Plan, the TPI MX V & VI Plan, the Confirmation Order, or any other order of the Bankruptcy Court entered in connection therewith, the WindDown Co shall be authorized and empowered on behalf of the RemainCo Debtors to carry out and implement all provisions of this Plan and the TPI MX V & VI Plan, as applicable, such that there shall be one WindDown Co to wind down the Debtors' Estates.  For the avoidance of doubt, the Plan

20

Effective Date must occur before the WindDown Co shall be authorized to effectuate the provisions of this Plan notwithstanding the establishment of the WindDown Co upon the effective date of the TPI MX V & VI Plan.  The WindDown Agent shall be authorized to, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by this Plan, the TPI MX V & VI Plan, or the Confirmation Order, do the following:

(i)     effectuate this Plan, including the prosecution and any other disposition of all litigation related to any appeals in respect to the approval or implementation of this Plan;

(ii)    perform all actions and execute all agreements, instruments, and other documents necessary to effectuate the purpose of the WindDown Co;

(iii)   take any actions necessary to effectuate the terms of this Plan;

(iv)    withhold from the amount distributable to any Person the maximum amount needed to pay any tax or other charge that the WindDown Co has determined may be required to be withheld from such distribution under the income tax or other laws of the United States or of any state or political subdivision thereof;

(v)     administer the Professional Fee Escrow and pay Professional Fee Claims;

(vi)    make distributions on account of any Allowed Claims (other than Allowed General Unsecured Claims) pursuant to this Plan to the extent not otherwise satisfied by the RemainCo Debtors;

(vii)   maintain the books and records and accounts of the RemainCo Debtors, to the extent applicable;

(viii)  establish, maintain, and administer trust accounts, which shall be segregated to the extent appropriate in accordance with this Plan;

(ix)    accept, preserve, receive, collect, manage, invest, sell, liquidate, transfer, abandon, supervise, prosecute, settle, and protect, as applicable, the Estates in accordance with this Plan;

(x)     except to the extent Claims have already been Allowed, control and effectuate the Claims reconciliation process with respect to all Claims (other than Allowed General Unsecured Claims), including the exclusive authority to object to, seek to subordinate, recharacterize, compromise, or settle any and all such Claims (other than Allowed General Unsecured Claims) pursuant to the procedures prescribed in this Plan;

(xi)    reserve ECP Sale Proceeds, in consultation with the Prepetition Administrative Agent, in an amount estimated in good faith to be necessary to pay holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, and Allowed Other Secured Claims;

21

(xii)    determine, from time to time, whether the amounts available in the WindDown Reserve are in excess of the amount necessary to satisfy the purpose for which such reserve was established, including payment of Restructuring Expenses incurred after the Plan Effective Date, and, if the WindDown Agent determines that a surplus exists in the WindDown Reserve as of the date of such determination, the WindDown Agent may allocate such surplus pursuant to the terms of this Plan;

(xiii)   determine, from time to time, in consultation with the Prepetition Administrative Agent, whether the amounts available in the Senior Claims Recovery Pool are in excess of the amount necessary to pay holders of Allowed Administrative Expense Claims (other than those assumed by ECP under the ECP Purchase Agreement), Allowed Priority Tax Claims, Allowed DIP Claims, Allowed Other Priority Claims, and Professional Fee Claims, plus the total Disputed amounts of such Disputed Claims until final Allowance or Disallowance and, if the WindDown Agent determines that a surplus exists in the Senior Claims Recovery Pool as of the date of such determination, the WindDown Agent may allocate the Surplus Senior Claims Recovery Pool Cash pursuant to the terms hereof;

(xiv)   calculate and make distributions consistent with this Plan;

(xv)    retain, compensate, and employ professionals, in consultation with the Prepetition Administrative Agent, to represent the WindDown Co or WindDown Agent, as applicable, which shall be funded from the WindDown Reserve;

(xvi)   purchase and carry all insurance policies that the WindDown Agent deems reasonably necessary or advisable to pay all associated insurance premiums and costs;

(xvii)  prepare and file any and all informational returns, reports, statements, returns, or disclosures relating to the RemainCo Debtors that are required hereunder, by any Governmental Unit or applicable law;

(xviii) direct and control the wind down, liquidation, sale, or abandonment of the remaining Estates under this Plan and in accordance with applicable law as necessary to maximize distributions, to the extent applicable;

(xix)   exercise such other powers as may be vested in the WindDown Co, or as are deemed by the WindDown Agent to be necessary and proper to implement the provisions of this Plan;

(xx)    dissolve the WindDown Co;

(xxi)   close the Chapter 11 Cases of the RemainCo Debtors;

(xxii)  take any other actions not inconsistent with the provisions hereof that the WindDown Agent deems reasonably necessary or desirable in connection with the foregoing functions;

22

(xxiii)   perform all actions and execute all agreements, instruments, and other documents necessary to effectuate the ECP Sale Transaction;

(xxiv)   prepare, file, and prosecute any necessary filings or pleadings with the Bankruptcy Court to carry out the duties of the WindDown Agent as described herein;

(xxv)   administer the WindDown Co's tax obligations, including (i) preparing and filing tax returns and paying tax obligations and (ii) representing the interests and accounts of the WindDown Co before any taxing authority in all matters including, without limitation, any action, suit, proceeding, or audit; and

(xxvi)   perform other duties and functions that are consistent with the implementation of this Plan.

(b)      For the avoidance of doubt, and notwithstanding anything in the foregoing, the WindDown Agent's pursuit in respect of any Claim or Cause of Action shall be subject in all respects to <u>Article XI</u> of this Plan, and no Releasing Party may pursue any Claim or Cause of Action against any Released Party.

(c)      <u>Counsel to WindDown Agent</u>.  The WindDown Agent is authorized to retain advisors, in consultation with the Prepetition Administrative Agent, as necessary to exercise his duties set forth in this Plan.

     5.2.     ***GUC Trustee and GUC Trust.***

(a)   Upon the earlier of the Plan Effective Date and the effective date of the TPI MX V & VI Plan, as provided for in the TPI MX V & VI Plan, the GUC Trust shall be established in accordance with the GUC Trust Agreement for the purpose of being vested with and liquidating the GUC Trust Assets, reconciling Claims and making distributions to holders of Allowed General Unsecured Claims in accordance with the terms of this Plan, the TPI MX V & VI Plan, and the GUC Trust Agreement.  If prior to the Plan Effective Date and the effective date of the TPI MX V & VI Plan, the RemainCo Debtors and Affiliated Debtors determine that the implementation of the GUC Trust is no longer beneficial to their Estates, the RemainCo Debtors and Affiliated Debtors reserve the right to use alternative means to wind down their Estates or make distributions under this Plan, as necessary, in consultation with the Creditors' Committee and the Prepetition Administrative Agent.   For the avoidance of doubt, the GUC Trust shall be the same Entity as the "GUC Trust" under the TPI MX V & VI Plan.  For the avoidance of doubt, the Plan Effective Date must occur before the GUC Trust shall be authorized to effectuate the provisions of this Plan notwithstanding the establishment of the GUC Trust upon the effective date of the TPI MX V & VI Plan.

(b)   Subject to and to the extent set forth in this Plan, the TPI MX V & VI Plan, the Confirmation Order, the GUC Trust Agreement or any other order of the Bankruptcy Court entered in connection therewith, the GUC Trust, as applicable, shall be empowered, after the earlier of the Plan Effective Date and the effective date of the TPI MX V & VI Plan, and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by this Plan, the TPI MX V & VI Plan, the Confirmation Order, or the GUC Trust Agreement, to, among other things:

(i)     perform all actions and execute all agreements, instruments, and other documents necessary to effectuate the purpose of the GUC Trust;

(ii)   take any actions necessary to effectuate the applicable terms of this Plan and the GUC Trust Agreement;

(iii)   solely with respect to the General Unsecured Claims under this Plan and general unsecured claims under the TPI MX V & VI Plan, withhold from the amount distributable to any Person the maximum amount needed to pay any tax or other charge that the GUC Trustee has determined may be required to be withheld from such distribution under the income tax or other laws of the United States or of any state or political subdivision thereof;

(iv)   pay all Allowed General Unsecured Claims pursuant to this Plan to the extent not otherwise paid by the RemainCo Debtors, in addition to paying all Allowed General Unsecured Claims in accordance with the TPI MX V & VI Plan (as defined therein);

(v)   maintain the books and records and accounts of the GUC Trust;

(vi)   except to the extent Claims have already been Allowed, control and effectuate the Claims reconciliation process with respect to all General Unsecured Claims, including all General Unsecured Claims as provided for in the TPI MX V & VI Plan (as defined therein), including the exclusive authority to object to, seek to subordinate, recharacterize, compromise, or settle any and all such Claims pursuant to the procedures prescribed in this Plan;

(vii)   calculate and make distributions to holders of Allowed General Unsecured Claims and holders of beneficial interests in the GUC Trust granted in connection with the TPI MX V & VI Plan;

(viii)   retain, compensate, and employ professionals as reasonably necessary and on reasonable terms to represent the GUC Trust or the GUC Trustee, as applicable, which shall be solely funded from the GUC Reserve Funding Amount;

(ix)   purchase and carry all insurance policies that the GUC Trustee deems reasonably necessary or advisable to pay all associated insurance premiums and costs, which shall be solely funded from the GUC Reserve Funding Amount;

(x)   prepare and file any and all informational returns, reports, statements, returns, or disclosures relating to the GUC Trust that are required hereunder, by any Governmental Unit or applicable law;

(xi)   exercise such other powers as may be vested in the GUC Trust under the GUC Trust Agreement and this Plan, or as are deemed by the GUC Trustee to be necessary and proper to implement the provisions of the GUC Trust Agreement and effectuate the purpose of the GUC Trust;

(xii)   dissolve the GUC Trust in accordance with the terms of the GUC Trust Agreement;

24

(xiii)     prepare, file, and prosecute any necessary filings or pleadings with the Bankruptcy Court to carry out the duties of the GUC Trustee as described herein; and

(xiv)     administer the GUC Trust's tax obligations, including (i) preparing and filing tax returns and paying tax obligations and (ii) representing the interests and accounts of the GUC Trust before any taxing authority in all matters including, without limitation, any action, suit, proceeding, or audit.

(c)     Notwithstanding anything contained herein to the contrary, the authority of the GUC Trustee shall be exercised in a manner consistent with the purpose of the GUC Trust, as set forth in Article 5.2(a) of this Plan and in accordance with the TPI MX V & VI Plan, and the intended qualification of the GUC Trust as a "liquidating trust" for U.S. federal income tax purposes.

(d)     The sole purpose of the GUC Trust is to implement this Plan and the TPI MX V & VI Plan on behalf, and for the benefit, of the beneficiaries of the GUC Trust, and to serve as a mechanism for liquidating, converting to Cash and distributing the GUC Trust Assets in accordance with Treasury Regulations section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the GUC Trust.

(e)     The GUC Trustee may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all tax returns filed by or on behalf of the GUC Trust (including, to the extent any assets allocable to, or held on account of, Disputed General Unsecured Claims are treated as a disputed ownership fund or other separate taxable entity in relation to the GUC Trust, taxes of such fund or other separate taxable entity) through the date upon which the GUC Trust is terminated.

(f)     In furtherance of this section of this Plan, and subject to Section 5.2(g), (i) the GUC Trust shall be structured to qualify as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994-2 C.B. 684 and, thus, as a "grantor trust" within the meaning of sections 671 through 679 of the Tax Code to the holders of beneficial interests in the GUC Trust, consistent with the terms of this Plan, (ii) the sole purpose of the GUC Trust shall be the liquidation and distribution of the GUC Trust Assets in accordance with Treasury Regulation section 301.7701-4(d), including the resolution of General Unsecured Claims in accordance with this Plan, (iii) all parties (including the RemainCo Debtors, their Estates, holders of beneficial interests in the GUC Trust, and the GUC Trustee) shall report consistently with such treatment (including the deemed receipt of the underlying assets, subject to applicable liabilities and obligations, by the holders of beneficial interests in the GUC Trust, followed by the deemed transfer of such GUC Trust Assets to the GUC Trust), (iv) all parties shall report consistently with the valuation of the GUC Trust Assets transferred to the GUC Trust as determined by the GUC Trustee (or its designee), (v) the GUC Trustee shall be responsible for filing returns for the GUC Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a), and (vi) the GUC Trustee shall annually provide to each holder of beneficial interests in the GUC Trust a separate statement regarding the receipts and expenditures of the GUC Trust as relevant for U.S. federal income tax purposes.

(g)     Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the GUC Trustee of a private letter ruling if the GUC Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the GUC Trustee), the GUC Trustee (i) may elect to treat any assets allocable to, or held on account of, Disputed General Unsecured Claims as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 or

25

otherwise as a separate taxable entity and (ii) to the extent permitted by applicable law, shall report consistently with the foregoing for state and local income tax purposes. If a "disputed ownership fund" election is made, or all or any portion of the GUC Trust Assets allocable to, or held on account of, Disputed General Unsecured Claims is otherwise treated as a separate taxable entity, (i) all parties (including, without limitation, the RemainCo Debtors, their Estates, the GUC Trust, and the holders of beneficial interests in the GUC Trust) shall report for tax purposes consistently with such election, (ii) all distributions thereof shall be net of any costs and expenses, including taxes, relating to the retention or disposition of such assets, and the GUC Trustee shall be responsible for payment, out of such assets, of any taxes imposed on or with respect to such assets, and (iii) in the event any cash in such reserve or fund is insufficient to pay the costs and expenses of the reserve or fund (including any taxes attributable to any income that may arise upon the distribution of the assets), assets of the reserve or fund may be sold to pay such costs and expenses.

(h)    In no event shall the GUC Trust be dissolved later than five years from the date of the establishment of the GUC Trust unless ordered by the Bankruptcy Court, upon motion made within the six month period before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made within the six month period before the end of the preceding extension), upon determination that a fixed period extension (not to exceed three years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the GUC Trustee that any further extension would not adversely affect the status of the trust as a liquidating trust for U.S. federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the GUC Trust Assets.

(i)    The GUC Trust Interests, and any right to receive a distribution from the GUC Trust, shall not be evidenced by any certificate, security, receipt, or any other form or manner whatsoever, except as maintained on the books and records of the GUC Trust by the GUC Trustee.  Any and all GUC Trust Interests shall be non-transferable other than if transferred by will, intestate succession, or otherwise by operation of law.

(j)    In connection with the Senior Secured Turnover Rights, Oaktree (or its designee), either through its professionals or otherwise, shall furnish an annual report (each, an "**Annual OT Recovery Report**") in accordance with the terms of this Article 5.2(j) to the GUC Trustee (which may be via email), commencing with the calendar year that the Oaktree Recovery exceeds $75 million in aggregate.  Each Annual OT Recovery Report shall be provided to the GUC Trustee no later than 60 days following the end of the applicable calendar year and shall include (i) the aggregate amount of the Oaktree Recovery as of the end of the calendar year covered by such Annual OT Recovery Report, (ii) the date in such calendar year on which any Oaktree Recovery was received, (iii) a summary description of the source of any Oaktree Recovery, and (iv) any related documentation received by Oaktree in connection with such Oaktree Recovery.  In the event of any material failure to comply with the reporting obligations set forth in this Article 5.2(j), including any failure to timely furnish an Annual OT Recovery Report, the GUC Trustee shall first provide notice to Oaktree of such material failure and, unless such material failure has been cured within five Business Days of such notice, shall be entitled to seek appropriate relief from the Bankruptcy Court to enforce the reporting requirements set forth in this Article 5.2(j).

### 5.3.    *Corporate Action.*

Upon the Plan Effective Date, or as soon thereafter as is reasonably practicable, all actions contemplated by this Plan shall be deemed authorized and approved by the Bankruptcy Court in all respects, including, as applicable, (i) the cancellation of the Existing Equity Interests, (ii) the selection of the GUC Trustee and WindDown Agent, (iii) execution of and performance under the Plan Supplement documents, and (iv) all other actions contemplated by this Plan (whether to occur before, on, or after the Plan Effective Date).  Upon the Plan Effective Date, all matters provided for in this Plan involving the corporate structure

26

of the RemainCo Debtors, the GUC Trust, or the WindDown Co, as applicable, and any corporate or other organizational action required by the RemainCo Debtors, the GUC Trust, or the WindDown Co, as applicable, in connection with this Plan shall be deemed to have occurred and shall be in effect on the Plan Effective Date, without any requirement of further action by the security holders, directors, or officers of the RemainCo Debtors, the GUC Trust, the WindDown Co, as applicable.  Before, on, or after the Plan Effective Date, the appropriate officers of the RemainCo Debtors, the GUC Trustee, and the WindDown Co, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by this Plan (or necessary or desirable to effect the transactions contemplated by this Plan), in the name of and on behalf of the RemainCo Debtors, the GUC Trust, and the WindDown Co, as applicable, to the extent not previously authorized by the Bankruptcy Court.  The authorizations and approvals contemplated by this Article 5.35.3 shall be effective notwithstanding any requirements under non-bankruptcy law.

### 5.4. *Compromise and Settlement of Claims, Interests, and Controversies.*

Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distribution, releases, and other benefits provided under this Plan, upon the Plan Effective Date, the provisions of this Plan shall constitute an integrated and global good faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a creditor or an Interest holder may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made on account of such Allowed Claim or Allowed Interest. Entry of the Confirmation Order shall constitute the Bankruptcy Court's integrated and global approval of the compromise or settlement of all such Allowed Claims, Allowed Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise, settlement, and transactions are in the best interests of the RemainCo Debtors, their Estates, and holders of Allowed Claims, Allowed Interests, and is fair, equitable, and is within the range of reasonableness.  Subject to the provisions of this Plan governing distributions, all distributions made to holders of Allowed Claims and Allowed Interests in any Class are intended to be and shall be final.

### 5.5. *Cancellation of Existing Securities and Agreements.*

Except for the purpose of evidencing a right to a distribution under this Plan and except as otherwise set forth in this Plan, on the Plan Effective Date, all agreements, instruments, notes, certificates, mortgages, security documents, and any other instruments or documents evidencing any Claim or Interest solely against or solely held in a RemainCo Debtor, and any rights of any holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect, without any further act or action of any Person under any applicable agreement, instrument, document, law, regulation, order, or rule, and the obligations of the RemainCo Debtors thereunder shall be deemed fully satisfied, released, and discharged.  For the avoidance of doubt, if the effective date of the TPI MX V & VI Plan does not occur under the terms thereof before the Plan Effective Date herein, nothing contained in this Article 5.5 shall be construed to cancel, discharge, or otherwise alter any such agreements with respect to any Affiliated Debtor and (a) the Senior Secured Credit Agreement shall continue in effect (i) with respect to TPI MX V & VI, (ii) to the extent necessary to allow the holders of Allowed Senior Secured Term Loan Claims to receive distributions under this Plan, (iii) to the extent necessary to allow the WindDown Co to make post-Plan Effective Date distributions or take such other action pursuant to this Plan on account of Allowed Senior Secured Term Loan Claims and to otherwise exercise their rights and discharge their obligations relating to the interests of the holders of such Claims, and (iv) to appear in the Chapter 11 Cases and (b) the DIP Credit Agreement shall continue in effect (i) with respect to TPI MX V & VI, (ii) to the extent necessary to allow the holders of Allowed DIP Claims to receive distributions under this Plan, (iii) to the extent necessary to allow the RemainCo Debtors, the WindDown Co, the DIP Agent, or the GUC Trustee to make post-Plan Effective

27

Date distributions or take such other action pursuant to the Plan on account of Allowed DIP Claims and to otherwise exercise their rights and discharge their obligations relating to the interests of the holders of such Claims, and (iv) to appear in the Chapter 11 Cases.  Notwithstanding the foregoing, any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, any of the RemainCo Debtors or their interests, as a result of the cancellations, terminations, satisfaction, releases, or discharges provided for in this section shall be deemed null and void and shall be of no force and effect.  Nothing contained herein shall be deemed to cancel, terminate, release, or discharge the obligations of the RemainCo Debtors or any of their counterparties under any executory contract or lease to the extent such executory contract or lease has been assumed by the RemainCo Debtors pursuant to a Final Order of the Bankruptcy Court or hereunder.

### 5.6.    *Cancellation of Liens.*

(a)    Except as otherwise specifically provided herein, all notes, instruments, certificates, and all other documents evidencing debt of the RemainCo Debtors, and Existing Equity Interests will be cancelled and obligations of the RemainCo Debtors thereunder will be discharged and of no further force or effect, except for the purpose of allowing the applicable agents and trustees to receive distributions from the RemainCo Debtors under this Plan and to make any further distributions to the applicable holders on account of their Claims and Interests.  For the avoidance of doubt, if the effective date of the TPI MX V & VI Plan does not occur under the terms thereof before the Plan Effective Date herein, nothing contained in this Article 5.6 shall be construed to cancel, discharge, or otherwise alter any such agreements or interests with respect to any Affiliated Debtor.

(b)    Upon the full payment or other satisfaction of an Allowed Secured Claim, or promptly thereafter, any Lien securing any Secured Claim against any RemainCo Debtor shall be deemed released and the holder of such Allowed Secured Claim shall deliver to the RemainCo Debtors any collateral or other property of the RemainCo Debtors held by such holder, together with any termination statements, instruments of satisfaction, or releases of all security interests with respect to its Allowed Secured Claim that may be reasonably required to terminate or evidence the termination of any related financing statements, mortgages, mechanics' or other statutory Liens, or lis pendens, or similar interests or documents.

(c)    After the Plan Effective Date, the RemainCo Debtors, at their expense, may, in their sole discretion, take any action necessary to terminate, cancel, extinguish, and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges, and other security interests with respect to the Secured Claims, including the preparation and filing, as applicable, of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, Liens, pledges, and other security interests held by the Prepetition Administrative Agent or Senior Secured Lenders, including UCC-3 termination statements. Notwithstanding the foregoing, with respect to any Lien on the Interests in, or the assets or properties of, any RemainCo Debtor, securing the Senior Secured Credit Agreement which was granted pursuant to documentation governed by a law of a jurisdiction other than the Bankruptcy Court or any other jurisdiction in the United States of America, the Prepetition Administrative Agent shall execute and deliver to the RemainCo Debtors any necessary documentation to release such Lien.

### 5.7.    *Effectuating Documents; Further Transactions.*

On and after the Plan Effective Date, the WindDown Agent is authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of this Plan in the name of and on behalf of the Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to this Plan.

5.8.     *Wind Down.*

On the Plan Effective Date, the WindDown Agent is authorized to adjust, reinstate, cancel, or otherwise address, to the extent reasonably determined to be appropriate by the WindDown Agent, all Intercompany Interests in accordance with the terms of this Plan without the need for any further board, manager, stockholder, member, general partner, or other corporate or limited liability company action. The WindDown Agent may effectuate any merger of a RemainCo Debtor into WindDown Co without the necessity for any other or further actions to be taken by or on behalf of such merged RemainCo Debtors or their equity holders or any payments to be made in connection therewith, other than the filing of a certificate of merger with the appropriate governmental authorities and upon any such merger, the RemainCo Debtors may file a certification of counsel with the Bankruptcy Court to close the Chapter 11 Case of such RemainCo Debtor as otherwise provided in Article 5.9 of this Plan. Each RemainCo Debtor shall continue in existence unless otherwise determined by the WindDown Co and, any references to assets to be held by, transferred to or vest in WindDown Co, shall be satisfied by the retention of such assets by the applicable RemainCo Debtor, unless otherwise determined by the WindDown Co.

After the Plan Effective Date, pursuant to the Plan, the WindDown Agent shall, in an expeditious but orderly manner, wind down, sell, and otherwise liquidate and convert to Cash the remaining Assets, Causes of Action, and Intercompany Interests of the RemainCo Debtors as of the Plan Effective Date, or, as necessary or appropriate, reasonably assist any third-party designee(s) to accomplish each of the foregoing, with no objective to continue or conduct a trade or business except to the extent reasonably necessary to, and consistent with, the liquidation and orderly wind down of the RemainCo Debtors, and shall not unduly prolong the duration of the liquidation and the wind down. Upon the completion of the liquidation and wind down of each applicable RemainCo Debtor and any non-Debtor Affiliate in which the RemainCo Debtors held equity directly or indirectly immediately prior to the Plan Effective Date, the WindDown Agent may file a certificate of cancellation, a certificate of dissolution, or such other instrument as may be necessary or appropriate under applicable law to effectuate the dissolution of the relevant RemainCo Debtor or non-Debtor Affiliate with the appropriate governmental authorities, thereby terminating the legal existence of each such RemainCo Debtor or non-Debtor Affiliate, as determined in the sole discretion of the WindDown Agent, and take such other actions consistent therewith to effectuate the termination of the legal existence of each such RemainCo Debtor or non-Debtor Affiliate, as applicable. Notwithstanding anything to the contrary herein, the WindDown Agent shall consult with the Prepetition Administrative Agent in good faith with respect to any wind down matters.

5.9.     *Closing of Chapter 11 Cases.*

After the Plan Effective Date, the WindDown Co shall be authorized, but not directed, to submit one or more motions for order(s) that close and issue final decrees for the Chapter 11 Cases for the RemainCo Debtors in accordance with the Bankruptcy Code and the Bankruptcy Rules. Furthermore, the Notice and Claims Agent is authorized to destroy all paper or hardcopy records related to the Chapter 11 Cases of the RemainCo Debtors two years after the Plan Effective Date has occurred. Matters concerning Claims may be heard and adjudicated in a Debtor's Chapter 11 Case that remains open or by the WindDown Co, as applicable, regardless of whether the applicable Claim is against a Debtor in a Chapter 11 Case that is closed.

5.10.     *Notice of Plan Effective Date.*

As soon as practicable, but not later than three Business Days following the Plan Effective Date, the RemainCo Debtors shall file a notice of the occurrence of the Plan Effective Date with the Bankruptcy Court.

5.11.     ***Separate Plans.***

This Plan constitutes a separate chapter 11 plan for each of the RemainCo Debtors. Accordingly, if the Bankruptcy Court does not confirm this Plan with respect to one of the RemainCo Debtors, it may still confirm this Plan with respect to any other RemainCo Debtor that satisfies the confirmation requirements of section 1129 of the Bankruptcy Code.

5.12.     ***Convertible Notes Trustee Fees and Expenses.***

For the avoidance of doubt, the Convertible Notes Trustee Fees and Expenses, in an amount up to the Convertible Notes Trustee Fees and Expenses Cap, shall be paid to the Convertible Notes Trustee in Cash on the Plan Effective Date without the Convertible Notes Trustee needing to file a fee application or other documentation with the Bankruptcy Court; *provided*, *however*, that at least two Business Days prior to the Plan Effective Date, the Convertible Notes Trustee shall provide the RemainCo Debtors with an invoice setting forth the accrued Convertible Notes Trustee Fees and Expenses in reasonable detail.

## ARTICLE VI.     DISTRIBUTIONS.

6.1.     ***Distributions Generally.***

The Disbursing Agent shall make all applicable distributions under this Plan to the holders of Allowed Claims in accordance with the terms of this Plan and the GUC Trust Agreement, as applicable.

Except as otherwise provided in this Plan or in the GUC Trust Agreement, the Disbursing Agent shall make distributions under this Plan on or about the Plan Effective Date (or as soon thereafter as is practicable). The GUC Trust or the WindDown Co, as applicable, shall from time to time determine and announce subsequent distribution dates. Specifically, the Disbursing Agent shall distribute:

(a)   ECP Sale Proceeds to the Professional Fee Escrow for the benefit of holders of Professional Fee Claims in accordance with Article 2.5 of this Plan;

(b)   ECP Sale Proceeds to holders of Allowed Administrative Expense Claims, Allowed DIP Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, and Allowed Other Secured Claims;

(c)   Excess Sale Proceeds, any remaining GUC Reserve Funding Amount or WindDown Reserve after the completion of the claims reconciliation process and the wind down of the GUC Trust, the WindDown Co, and the estates of the Affiliated Debtors, as applicable, and the Surplus Senior Claims Recovery Pool Cash to holders of Allowed Senior Secured Term Loan Claims until holders of Allowed Senior Secured Term Loan Claims receive an amount equal to the Allowed amount of their Senior Secured Term Loan Claims; and

(d)   A distribution from the Senior Secured Turnover Rights to the GUC Trust for the benefit of holders of Allowed General Unsecured Claims.

To the extent holders of Convertible Notes Claims are entitled to distributions on account of the GUC Trust Interests held by such holders pursuant to this Plan, such distributions shall be paid in accordance with the Convertible Notes Indenture to the Convertible Notes Trustee unless otherwise agreed by the Convertible Notes Trustee. To the extent that any of the Convertible Notes Trustee Fees and Expenses are not otherwise paid, they shall be subject to the Convertible Notes Trustee's charging lien, consistent with the Convertible Notes Indenture.

6.2.    *Distribution Record Date.*

As of the close of business on the Distribution Record Date, the various lists or transfer registers for each of the Classes of Claims as maintained by the RemainCo Debtors or their respective agents shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims. RemainCo Debtors, the GUC Trustee, and the WindDown Co, as applicable, shall have no obligation to recognize any transfer of Claims occurring on or after the Distribution Record Date, *provided*, that, notwithstanding anything to the contrary herein, the Distribution Record Date shall not apply to any publicly held securities held in the name of, or by a nominee of DTC, as to which distributions may be made in accordance with the applicable procedures of DTC.

6.3.    *Date of Distributions.*

Except as otherwise provided in this Plan, on the Plan Effective Date or, if a Claim is not Allowed on the Plan Effective Date, on the date that such Claim becomes Allowed, or, in each case, as soon as reasonably practicable thereafter, or as otherwise determined in accordance with this Plan and Confirmation Order, each holder of an Allowed Claim shall receive the full amount of the distributions that this Plan provides for Allowed Claims in the applicable class provided in this Plan.

6.4.    *Rights and Powers of Disbursing Agent.*

(a)    Powers of Disbursing Agent. The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan, (ii) make all applicable distributions or payments provided for under this Plan, (iii) employ professionals to represent it with respect to its responsibilities, and (iv) exercise such other powers (A) as may be vested in such Disbursing Agent by order of the Bankruptcy Court (including any Final Order issued after the Plan Effective Date) or pursuant to this Plan or (B) as deemed by such Disbursing Agent to be necessary and proper to implement the provisions of this Plan.

(b)    Expenses Incurred on or After the Plan Effective Date. Subject to the written agreement of the RemainCo Debtors, the GUC Trustee, or the WindDown Co, as applicable, the amount of any reasonable and documented out-of-pocket fees and expenses incurred by the Disbursing Agent on or after the Plan Effective Date and any reasonable and documented compensation and out-of-pocket expenses (including for reasonable and documented outside attorneys' fees and other professional fees and out-of-pocket expenses) made by the Disbursing Agent shall be paid in Cash (i) to the extent incurred in connection with the General Unsecured Claims, by the GUC Trust from the GUC Reserve Funding Amount and (ii) to the extent incurred in connection with any other Claim, by the WindDown Co from the WindDown Reserve.

6.5.    *No Postpetition Interest on Claims*.

Except as otherwise specifically provided for in this Plan, the Confirmation Order, or another order of the Bankruptcy Court, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on such Claim on or after the Petition Date.

6.6.    *Delivery of Distributions.*

Subject to Bankruptcy Rule 9010, the Disbursing Agent shall make all distributions to any holder of an Allowed Claim or its authorized designee or transferee as and when required by this Plan at (a) the address of such holder on the books and records of the RemainCo Debtors or their agents, (b) at the address in any written notice of address change delivered to the RemainCo Debtors, or the Disbursing

31

Agent, as applicable, including any addresses included on any transfers of Claim filed pursuant to Bankruptcy Rule 3001, or (c) the address of the designee of such holder to the extent practicable.  Subject to Article 6.9 of this Plan, in the event that any distribution to any holder is returned as undeliverable, no distribution or payment to such holder shall be made unless and until the Disbursing Agent has been notified of the then-current address of such holder, at which time or as soon thereafter as reasonably practicable, such distribution shall be made to such holder without interest.

### 6.7.     *Distributions after Plan Effective Date*.

Distributions made after the Plan Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Plan Effective Date but which later become Allowed Claims shall be deemed to have been made on the Plan Effective Date.

### 6.8.     *Unclaimed Property*.

(a)   One year from the later of (i) the Plan Effective Date and (ii) the date that is 10 Business Days after the date a Claim is first Allowed, all distributions payable on account of such Claim that are not claimed or accepted by such date shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall revert to the GUC Trust or the WindDown Co, as applicable, and all claims of any other Person (including the holder of a Claim in the same Class) to such distribution shall be released and forever barred.  The GUC Trustee or the WindDown Co, as applicable, shall have no obligation to attempt to locate any holder of an Allowed Claim other than by reviewing the RemainCo Debtors' books and records and the Bankruptcy Court's filings.

(b)   A distribution shall be deemed unclaimed if a holder has not (i) accepted a particular distribution or, in the case of distribution made by check, by 90 calendar days after issuance, negotiated such check, (ii) given notice to the GUC Trustee or WindDown Co of an intent to accept a particular distribution, (iii) responded to the GUC Trustee's or WindDown Co's request for information necessary to facilitate a particular distribution, or (iv) taken any other action necessary to facilitate such distribution.

### 6.9.     *Manner of Payment under Plan.*

Except as otherwise specifically provided in this Plan, at the option of the RemainCo Debtors, the GUC Trust, or the WindDown Co, as applicable, any Cash payment to be made hereunder by the RemainCo Debtors, the GUC Trust, the WindDown Co, as applicable, may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the RemainCo Debtors.

### 6.10.     *Satisfaction of Claims.*

Except as otherwise specifically provided in this Plan, any distributions and deliveries to be made on account of Allowed Claims under this Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims and shall not exceed the amount of such Allowed Claims.

### 6.11.     *Minimum Cash Distributions.*

The Disbursing Agent shall not be required to make any distribution of Cash less than $100 to any holder of an Allowed Claim.

6.12. *Setoffs.*

RemainCo Debtors, the GUC Trustee, and the WindDown Co, as applicable, may, but shall not be required to, set off or recoup against any Claim, and any distribution to be made on account of such Claim, any and all claims, rights, and Causes of Action of any nature whatsoever that any RemainCo Debtor may have against the holder of such Claim pursuant to this Plan, the Bankruptcy Code, or applicable nonbankruptcy law; *provided*, *however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the RemainCo Debtors, or their successor of any claims, rights, or Causes of Action that the RemainCo Debtors, or their successors or assigns may possess against the holder of such Claim.

6.13. ***Allocation of Distributions between Principal and Interest.***

Except as otherwise required by law, distributions with respect to an Allowed Claim shall be allocated first to the principal portion of such Allowed Claim (as determined for United States federal income tax purposes) and then, to the extent the consideration exceeds the principal portion of such Allowed Claim, to any portion of such Allowed Claim for accrued but unpaid interest (including amortized original issue discount).

6.14. ***No Distribution in Excess of Amount of Allowed Claim.***

Notwithstanding anything in this Plan to the contrary, no holder of an Allowed Claim shall receive, on account of such Allowed Claim, distributions in excess of the Allowed amount of such Claim.

6.15. ***Withholding and Reporting Requirements.***

(a) *Withholding Rights*.  In connection with this Plan, any party issuing any instrument or making any distribution described in this Plan or payment in connection therewith shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to this Plan and all related agreements shall be subject to any such withholding or reporting requirements.  Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of this Plan.  Any party issuing any instrument or making any distribution pursuant to this Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.  In the case of a non-Cash issuance or distribution that is subject to withholding, the distributing party may withhold an appropriate portion of such distributed property and either (i) sell such withheld property to generate Cash necessary to pay over the withholding tax (or reimburse the distributing party for any advance payment of the withholding tax), or (ii) pay the withholding tax using its own funds and retain such withheld property.  Notwithstanding the foregoing, each holder of an Allowed Claim that receives a distribution pursuant to this Plan shall have responsibility for any taxes imposed by any governmental unit, including income, withholding, and other taxes, on account of such distribution.

(b) *Forms*.  Any party entitled to receive any property as an issuance or distribution under this Plan shall, upon request, deliver to the Disbursing Agent any applicable IRS Form W-9 or (if the payee is a foreign person) IRS Form W-8 and any other forms or documents as may be reasonably requested by the Disbursing Agent to reduce or eliminate any withholding required by any federal, state, or local taxing authority.  If such request is made by the Disbursing Agent and such party entitled to receive such property as an issuance, payment or distribution under this Plan fails to comply with any such request within 180 days after the request is made, the amount of such issuance, payment or distribution shall irrevocably revert to the GUC Trust or the WindDown Co, as applicable, and any Claim in respect of such issuance, payment

or distribution shall be discharged and forever barred from assertion against the RemainCo Debtors, the GUC Trust or the WindDown Co, as applicable, or their respective property.

**ARTICLE VII.    PROCEDURES FOR DISPUTED CLAIMS**.

### 7.1.    *Disputed Claims Generally.*

Except as expressly provided in this Plan or in any order entered in the Chapter 11 Cases before the Plan Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed pursuant to this Plan or Final Order, including the Confirmation Order (when it becomes a Final Order) Allowing such Claim.  Except insofar as a Claim is Allowed under this Plan or was Allowed prior to the Plan Effective Date, the GUC Trust or the WindDown Co, as applicable, shall have and retain any and all rights and defenses any RemainCo Debtor had with respect to any Disputed Claim, including the Causes of Action retained or transferred pursuant to Article 10.8.  Any objections to Claims shall be served and filed on or before the later of (a) the Claim Objection Deadline and (b) such later date as may be fixed by the Bankruptcy Court.  All Disputed Claims not objected to by the end of such period shall be deemed Allowed unless such period is extended upon approval of the Bankruptcy Court.

### 7.2.    *Objections to Claims.*

Except insofar as a Claim is Allowed under this Plan, the GUC Trust or the WindDown Co, as applicable, shall be entitled to object to Claims.  Except as otherwise expressly provided in this Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Plan Effective Date, the GUC Trust or the WindDown Co, as applicable, shall have the sole authority (a) to file, withdraw, or litigate to judgment objections to Claims, (b) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court, and (c) to administer and adjust the RemainCo Debtors' claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.  The GUC Trust or the WindDown Co, as applicable, shall be entitled to an extension of the Claim Objection Deadline from time to time, subject to filing an appropriate motion with, and obtaining an order from, the Bankruptcy Court based upon the GUC Trust's or WindDown Co's determination, as applicable, that such extension is appropriate and reasonable under the circumstances.  Nothing herein shall prejudice the GUC Trust's or WindDown Co's right, as applicable, to seek an extension of the Claim Objection Deadline at any time.

### 7.3.    *Estimation of Claims.*

Before or after the Plan Effective Date, the RemainCo Debtor, the GUC Trust, or the WindDown Co, as applicable, may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the RemainCo Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the RemainCo Debtors, the GUC Trust, or the WindDown Co, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such holder has filed a motion

requesting the right to seek such reconsideration on or before 14 days after the date on which such Claim is estimated.

### 7.4. *Adjustment to Claims Register Without Objection.*

Any Claim that (a) is a duplicate, (b) has been paid or satisfied, or (c) has been amended or superseded, may be adjusted or expunged on the claims register by the RemainCo Debtors, the GUC Trust, or the WindDown Co, as applicable, upon agreement between the parties in interest without an objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

### 7.5. *Disallowance of Claims.*

Any Claims held by Persons from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Person have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to a RemainCo Debtor by that Person have been turned over or paid to the RemainCo Debtors, the GUC Trust, or the WindDown Co, as applicable.

### 7.6. *No Distributions Pending Allowance.*

Notwithstanding any other provision hereof, with the exception of Article 7.2, if any portion of a Claim is a Disputed Claim, no payment or distribution provided under this Plan shall be made on account of such Claim unless and until (and only to the extent that) such Claim becomes an Allowed Claim.

### 7.7. *Distributions after Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of this Plan, including the treatment provisions provided in Article IV of this Plan, and in accordance with the GUC Trust Agreement, as applicable.

### 7.8. *Claim Resolution Procedures Cumulative.*

All of the Claims, objection, estimation, and resolution procedures in this Plan are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently settled, compromised, withdrawn, or resolved in accordance with this Plan and the GUC Trust Agreement, as applicable, without further notice or Bankruptcy Court approval.

## ARTICLE VIII.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

### 8.1. *General Treatment.*

(a)   Except as otherwise provided under this Plan or in the Confirmation Order, as of and subject to the occurrence of the Plan Effective Date and the payment of any applicable Cure amount all executory contracts and unexpired leases to which the RemainCo Debtors are parties, and which have not expired by their own terms on or prior to the Confirmation Date shall be deemed rejected except for any

35

executory contract or unexpired lease that (a) previously has been assumed, assumed or assigned, or rejected pursuant to a Final Order of the Bankruptcy Court, including the Sale Order, (b) is the subject of a separate assumption or rejection motion filed by the RemainCo Debtors under section 365 of the Bankruptcy Code before the Confirmation Date, (c) is specifically designated as a contract or lease to be assumed on the Schedule of Assumed Contracts, or (d) is the subject of a pending Cure Dispute.  Subject to the occurrence of the Plan Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions or rejections provided for in this Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Each executory contract and unexpired lease assumed or assumed and assigned pursuant to this Plan or Plan Supplement shall vest in and be fully enforceable by the RemainCo Debtors or the WindDown Co, as applicable, or assignee in accordance with its terms, except as modified by the provision of this Plan, any order of the Bankruptcy Court authorizing and providing for its assumption or assumption and assignment, or applicable law.

(b)   To the maximum extent permitted by law, to the extent any provision in any executory contract or unexpired lease assumed pursuant to this Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such executory contract or unexpired lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by this Plan shall not entitle the non-RemainCo Debtor party thereto to terminate such executory contract or unexpired lease or to exercise any other default-related rights with respect thereto.

(c)   Any Cure amounts associated with assumed executory contracts and unexpired leases shall be paid by the RemainCo Debtors, as applicable.  If any objections are filed by, or received from, any non-Debtor counterparty in response to the Cure Notice, the RemainCo Debtors will use commercially reasonable efforts to resolve any such objections with such non-Debtor counterparty, *provided*, *however*, that any resolution of a Cure dispute will be mutually acceptable to the RemainCo Debtors and the applicable non-Debtor counterparty.

(d)   The RemainCo Debtors reserve the right, on or before the Plan Effective Date, to amend the Schedule of Assumed Contracts, to add or remove any executory contract or unexpired lease; *provided*, the RemainCo Debtors may amend the Schedule of Assumed Contracts to add or delete any executory contracts or unexpired leases after such date to the extent agreed with the relevant counterparties and entry of an order of the Bankruptcy Court.

### 8.2. *Determination of Cure Disputes and Deemed Consent.*

(a)   The RemainCo Debtors shall file, as part of the Plan Supplement, the Schedule of Assumed Contracts.

(b)   If there is a dispute regarding (i) any Cure amount, (ii) the ability of the RemainCo Debtors to provide adequate assurance of future performance (within the meaning of section 365 of the Bankruptcy Code) under such contract or lease to be assumed, or (iii) any other matter pertaining to assumption or assumption and assignment, as applicable, such dispute shall be heard by the Bankruptcy Court prior to such assumption or assumption and assignment, as applicable, being effective.  Notwithstanding the foregoing, to the extent the dispute relates solely to any Cure amounts, the RemainCo Debtors, may assume the executory contract or unexpired lease prior to the resolution of any such dispute, in consultation with the Creditors' Committee, as long as the RemainCo Debtors or the WindDown Co, as applicable, reserves Cash in an amount sufficient to pay the full amount reasonably asserted as the required Cure amount by the contract counterparty.  Following entry of a Final Order resolving such dispute, the RemainCo Debtors or the WindDown Co, as applicable, shall have the right to reject any executory contract or unexpired lease within 30 calendar days of resolution.

(c)     Any counterparty to an executory contract or unexpired lease that failed to object timely to the notice of the proposed assumption or assumption and assignment, as applicable, of such executory contract or unexpired lease or the relevant Cure amount by the later of February 23, 2026 at 5:00 p.m. (Central Time) and the date that is seven days from the service of an amended Cure Notice modifying the Cure amount or treatment of such executory contract or unexpired lease, (i) shall be deemed to have assented to (A) such Cure amount and the nature thereof, (B) assumption or assumption and assignment, as applicable, of the applicable executory contract or unexpired lease notwithstanding any provision thereof that purports to (1) prohibit, restrict, or condition the transfer or assignment of such contract or lease, or (2) terminate or permit the termination of a contract or lease as a result of any direct or indirect transfer or assignment of the rights of a RemainCo Debtor under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by this Plan, and shall forever be barred and enjoined from asserting such objection against the RemainCo Debtors or terminating or modifying such contract or lease on account of transactions contemplated by this Plan, and (ii) shall be forever barred, estopped, and enjoined from challenging the validity of such assumption or assumption and assignment, as applicable, or the Allowed amount of such Cure amount thereafter.

### 8.3.     *Payments Related to Assumption or Assignment of Contracts and Leases.*

Subject to resolution of any Cure Dispute, all Cure amounts shall be satisfied promptly, or otherwise as soon as practicable, by the RemainCo Debtors, or the WindDown Co, as the case may be, upon assumption or assumption and assignment, as applicable, of the underlying contracts and unexpired leases. Assumption or assumption and assignment, as applicable, of any executory contract or unexpired lease pursuant to this Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure amount, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the Plan Effective Date of the assumption or assumption and assignment, as applicable. Any Proofs of Claim filed with respect to an executory contract or unexpired lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order or approval of the Bankruptcy Court or any other Person, upon the deemed assumption of such contract or unexpired lease.

### 8.4.     *Rejection Claims.*

In the event that the rejection of an executory contract or unexpired lease by the RemainCo Debtors pursuant to this Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the RemainCo Debtors, the GUC Trust, the WindDown Co, or their respective properties or interests in property as agents, successors, or assigns, unless a Proof of Claim is filed with the Bankruptcy Court by the Rejection Damages Bar Date, i.e., no later than 30 days after the later of (i) the Plan Effective Date or (ii) the effective date of rejection of such executory contract or unexpired lease. Any such Claims, to the extent Allowed, shall be classified in Class 4 (General Unsecured Claims).

### 8.5.     *Survival of RemainCo Debtors' Indemnification Obligations.*

Notwithstanding anything in this Plan (including Article 10.3 of this Plan), the rights of the D&O Indemnified Parties of the RemainCo Debtors, in their capacities as officers or directors, to indemnification and exculpation for acts or omissions occurring at or prior to the Plan Effective Date as provided in the certificate of incorporation, bylaws, or comparable organizational documents of the relevant RemainCo Debtor, as now in effect, shall survive the Plan Effective Date and shall continue in full force and effect against the applicable RemainCo Debtor, in accordance with the terms of such agreement. Such

rights shall not be amended or otherwise modified in any manner that would adversely affect the rights of the D&O Indemnified Parties for a period of six years, unless such modification is required by law.

### 8.6.   *Insurance Policies/Claims Payable by Third Parties.*

(a)   Notwithstanding anything to the contrary in this Plan, the Plan Supplement, any bar date notice or claim objection, and any other document related to any of the foregoing, on the Plan Effective Date all insurance policies (i) to which any RemainCo Debtor is a party as of the Plan Effective Date and (ii) issued or providing coverage to a RemainCo Debtor pursuant to which the applicable RemainCo Debtor has, prior to the Plan Effective Date, made a claim, including any D&O Policy, shall be deemed to be and treated as executory contracts and shall be assumed by the RemainCo Debtors, and assigned to the WindDown Co, to the extent applicable, and shall continue in full force and effect thereafter in accordance with their respective terms, and all such insurance policies shall be maintained by the WindDown Co. Coverage for defense and indemnity under the D&O Policy shall remain available to all individuals within the definition of "Insured" in any D&O Policy.

(b)   After the Plan Effective Date, all officers, directors, agents, or employees who served in such capacity at any time before the Plan Effective Date shall be entitled to the full benefits of any D&O Policy (including any "tail" policy) for the full term of such policy regardless of whether such officers, directors, agents, and/or employees remain in such positions after the Plan Effective Date, in each case, to the extent set forth in such policies.

(c)   After the Plan Effective Date, the WindDown Co shall not terminate or otherwise reduce the coverage under any D&O Policy (including any "tail policy") in effect as of the Petition Date, and any current and former directors, officers, members, managers, agents or employees of any RemainCo Debtor who served in such capacity at any time prior to the Plan Effective Date shall be entitled to the full benefits of any such D&O Policy for the full term of such policy regardless of whether such members, managers, directors, or officers remain in such positions after the Plan Effective Date to the extent set forth in such policies.

(d)   No distributions under this Plan shall be made on account of an Allowed Claim that is payable pursuant to any of the RemainCo Debtors' insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy and, *provided* that, for the avoidance of doubt, in no event will any RemainCo Debtor, its Estate, or the WindDown Co be liable for an Allowed Claim payable pursuant to any of the RemainCo Debtors' insurance policies in any way whatsoever except that, to the extent any applicable RemainCo Debtor's insurance policy contains a deductible, such deductible shall be satisfied through the allowance of a General Unsecured Claim solely in the amount of the applicable deductible, if any.  To the extent that one or more of the RemainCo Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

### 8.7.   *Intellectual Property Licenses and Agreements.*

All intellectual property contracts, licenses, royalties, or other similar agreements to which the RemainCo Debtors have any rights or obligations in effect as of the Plan Effective Date shall be deemed and treated as executory contracts pursuant to this Plan and shall be assumed by the RemainCo Debtors and shall continue in full force and effect unless any such intellectual property contract, license, royalty, or other similar agreement is rejected pursuant to a separate order of the Bankruptcy Court or is the subject of a separate rejection motion filed by the RemainCo Debtors.  Accordingly, absent the rejection of an

intellectual property contract, license, royalty, or other similar agreement, all such agreements shall vest in the WindDown Co and the WindDown Co may take all actions as may be necessary or appropriate to ensure such vesting as contemplated herein.

8.8.     ***Modifications, Amendments, Supplements, Restatements, or Other Agreements.***

Unless otherwise provided herein or by separate order of the Bankruptcy Court, each executory contract and unexpired lease that is assumed shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument, or other document is listed in the notice of assumed contracts.

8.9.     ***Reservation of Rights.***

(a)   Neither the exclusion nor inclusion of any contract or lease by the RemainCo Debtors on any exhibit, schedule, or other annex to this Plan or in the Plan Supplement, nor anything contained in this Plan, will constitute an admission by the RemainCo Debtors that any such contract or lease is or is not in fact an executory contract or unexpired lease or that the RemainCo Debtors, or their respective Affiliates has any liability thereunder, except to the extent otherwise provided pursuant to a Cure Notice or separate order of the Bankruptcy Court.

(b)   Except as otherwise provided in this Plan, nothing in this Plan will waive, excuse, limit, diminish, or otherwise alter any of the defenses, Causes of Action, or other rights of the RemainCo Debtors under any executory or non-executory contract or any unexpired or expired lease.

(c)   Nothing in this Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the RemainCo Debtors under any executory or non-executory contract or any unexpired or expired lease.

**ARTICLE IX.     CONDITIONS PRECEDENT TO CONFIRMATION OF PLAN AND PLAN EFFECTIVE DATE**.

9.1.     ***Conditions Precedent to Plan Effective Date.***

The following are conditions precedent to the Plan Effective Date:

(a)   the Bankruptcy Court shall have entered the Confirmation Order and the Confirmation Order shall not have been reversed, stayed, modified, or vacated on appeal;

(b)   the ECP Sale Transaction shall have been consummated; and

(c)   the Professional Fee Contribution Amount shall have been funded in Cash.

9.2.     ***Waiver of Conditions Precedent.***

Except as otherwise provided herein, all actions required to be taken on the Plan Effective Date shall take place and shall be deemed to have occurred simultaneously and no such action shall be deemed to have occurred prior to the taking of any other such action.  Each of the conditions precedent of this Plan may be waived in writing by the RemainCo Debtors and in consultation with the Creditors'

Committee and the Prepetition Administrative Agent.  If this Plan is confirmed for one of the RemainCo Debtors as provided for in Article 5.11 of this Plan, only the conditions applicable to the entity for which this Plan is confirmed must be satisfied or waived for the Plan Effective Date to occur.

### 9.3.  *Effect of Failure of a Condition.*

If the conditions listed in Article 9.1 of this Plan are not satisfied or waived in accordance with Article 9.2 of this Plan, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall (a) constitute a waiver or release of any Claims by or against or any Interests in the RemainCo Debtors, (b) prejudice in any manner the rights of any Person, or (c) constitute an admission, acknowledgement, offer, or undertaking by the RemainCo Debtors or any other Person.

## ARTICLE X.   EFFECT OF CONFIRMATION OF PLAN.

### 10.1.  *Vesting of Assets in WindDown Co.*

Except as otherwise provided herein, or in any agreement, instrument, or other documents incorporated into this Plan, on or after the Plan Effective Date, pursuant to section 1141(b) and (c) of the Bankruptcy Code, the WindDown Agent may transfer any remaining Assets or Causes of Action of the RemainCo Debtors (other than the Preference Actions and any Causes of Action acquired by ECP under the ECP Purchase Agreement) and any Intercompany Interests (except as cancelled), to the WindDown Co, free and clear of all Liens, Claims, charges, or other encumbrances unless expressly provided otherwise by this Plan or Confirmation Order.  On and after the Plan Effective Date, except as otherwise provided herein, the WindDown Co may operate any RemainCo Debtor's business (for the benefit of the respective RemainCo Debtor) and may use, acquire, or dispose of property and pursue, compromise or settle any Claims (including any Administrative Expense Claims), Interests, and Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

### 10.2.  *Binding Effect.*

As of the Plan Effective Date, this Plan shall bind all holders of Claims against and Interests in the RemainCo Debtors and their respective successors and assigns, notwithstanding whether any such holders were (a) Impaired or Unimpaired under this Plan, (b) deemed to accept or reject this Plan, (c) failed to vote to accept or reject this Plan, or (d) voted to reject this Plan.

### 10.3.  *RemainCo Debtors Are Not Entitled to a Discharge.*

Nothing in the Plan or the Confirmation Order shall grant the RemainCo Debtors a discharge pursuant to section 1141(d) of the Bankruptcy Code.

### 10.4.  *Term of Injunctions or Stays.*

Unless otherwise provided herein or in a Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Plan Effective Date and the date indicated in the order providing for such injunction or stay.

10.5.    *Injunction.*

Except as otherwise specifically provided in this Plan or for obligations issued or distributions required to be paid or delivered pursuant to this Plan or the Confirmation Order, all Persons that have held, hold, or may hold Claims, Interests, or Causes of Action that have been released, discharged, or are subject to exculpation pursuant to this Plan, including under Article 10.6(a), Article 10.6(b) or Article 10.7, and all other parties in interest, are permanently enjoined, from and after the Plan Effective Date, from taking any of the following actions against, as applicable, the RemainCo Debtors, an Estate, the Released Parties, or the Exculpated Parties (to the extent of the exculpation provided pursuant to Article 10.7 of this Plan with respect to the Exculpated Parties) with respect to such Claims, Interests, and Causes of Action: (a) commencing or continuing in any manner any action or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) on account of or in connection with or with respect to any such claims or interests; (b) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against such Persons on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (c) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any lien or encumbrance of any kind against such Persons or the property or the estates of such Persons on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Persons or against the property of such Persons on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless (x) such Person has timely asserted such setoff right either in a filed Proof of Claim, or in another document filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such Person asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the RemainCo Debtors or (i) an executory contract or (ii) an unexpired lease, in the case of (i) and (ii), that has been assumed by the RemainCo Debtors as of the Plan Effective Date; (e) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan and Confirmation Order, to the full extent permitted by applicable law; and (f) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released, settled, or treated, entitled to a distribution, or cancelled pursuant to this Plan, including pursuant to Article 10.6(a) or Article 10.6(b) of this Plan; *provided* that such Persons that have held, hold, or may hold Claims against, Interests in, or Causes of Action against, a RemainCo Debtor or an Estate shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of this Plan.

Subject in all respects to Article 11.1 of this Plan, and solely to the extent permitted by law, no Person may commence or pursue a Claim or Cause of Action of any kind against any Exculpated Party that arose or arises from, in whole or in part:  the RemainCo Debtors (including the governance, management, ownership, or operation thereof or otherwise) or their Estates, the Chapter 11 Cases (including the filing and administration thereof), the RemainCo Debtors' in- or out-of-court restructuring efforts, the GUC Trust, the WindDown Co, the ECP Purchase Agreement, intercompany transactions between or among the RemainCo Debtors or between the RemainCo Debtors and the Affiliated Debtors, the purchase, sale or rescission of any security of the RemainCo Debtors, the DIP Facility, and any and all related agreements, instruments, or other documents, the formulation, preparation, dissemination, negotiation, entry into, or filing of the Disclosure Statement, this Plan (including the Plan Supplement), or any transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Person regarding any transaction, contract, instrument, document, or other agreement contemplated by this Plan) created

41

or entered into in connection with the Disclosure Statement, or this Plan (including the Plan Supplement), the DIP Facility, the filing of the Chapter 11 Cases, the pursuit of confirmation and consummation of this Plan, the administration and implementation of this Plan, including the issuance or distribution of securities pursuant to this Plan, or the distribution of property under this Plan or any other agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Plan Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim that has not been exculpated under this Plan and (ii) specifically authorizing such Person to bring such Claim or Cause of Action against any such Exculpated Party.  The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and has not been exculpated and, only to the extent legally permissible and as provided for in Article 11.1 of this Plan, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.  For the avoidance of doubt, the foregoing sentence is subject to applicable law regarding the Bankruptcy Court's subject matter jurisdiction to hear such matter.

By participating in this Plan by voting or by accepting Plan distributions pursuant to this Plan (in whatever sum), each holder of an Allowed Claim extinguished, discharged, or released pursuant to this Plan shall be deemed to have affirmatively and specifically consented to be bound by this Plan, including the injunctions set forth in this Article 10.5, and each such holder acknowledges and accepts that this Plan is a binding compromise of an Allowed Claim or an Interest extinguished and releases all rights in respect of such Allowed Claim or Interest extinguished such that such holders of Claims agree to waive any right (if any) to object to or otherwise challenge this Plan and its effect on Claims or any other matter whatsoever and that such release and waiver shall be effective irrespective of which law governs the rights of the said holder as against any RemainCo Debtor.

The injunctions in this Article 10.5 shall extend to any successors of the RemainCo Debtors, the GUC Trust, or the WindDown Co, as applicable, and their respective property and interests in property.

10.6.    *Releases.*

(a)  **Releases by the RemainCo Debtors**.

Except as otherwise specifically provided in this Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration the adequacy of which is hereby confirmed, as of the Plan Effective Date, each Released Party is deemed, hereby conclusively, absolutely, unconditionally, irrevocably and forever released and discharged by the RemainCo Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Persons who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of, the foregoing Persons, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims, or claims for breach of fiduciary duty, asserted or assertable on behalf of the RemainCo Debtors, their Estates, the GUC Trust, or the WindDown Co (as applicable), that the RemainCo Debtors, their Estates, the GUC Trust, or the WindDown Co would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, any RemainCo Debtor or other Person, or that any holder of any Claim against or Interest in any RemainCo Debtor or other Person could have asserted on behalf of the RemainCo Debtors, based on

42

or relating to, or in any manner arising from, in whole or in part: any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Plan Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the RemainCo Debtors (including the governance, management, ownership, or operation thereof or otherwise) or their Estates, the Chapter 11 Cases (including the filing and administration thereof), the RemainCo Debtors' in- or out-of-court restructuring efforts, the GUC Trust, the WindDown Co, the ECP Purchase Agreement, intercompany transactions between or among the RemainCo Debtors or between the RemainCo Debtors and their Affiliated Debtors, the purchase, sale or rescission of any security of the RemainCo Debtors, the Senior Secured Term Loans, the DIP Facility, and any and all related agreements, instruments, or other documents, the formulation, preparation, dissemination, negotiation, entry into, or filing of the Disclosure Statement, this Plan (including the Plan Supplement), or any transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Person regarding any transaction, contract, instrument, document, or other agreement contemplated by this Plan or the reliance by any Released Party on this Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement or this Plan (including the Plan Supplement), the DIP Facility, the filing of the Chapter 11 Cases, the pursuit of confirmation and consummation of this Plan, the administration and implementation of this Plan or Confirmation Order, including the issuance or distribution of securities pursuant to this Plan, or the distribution of property under this Plan or any other agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Plan Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above (i) shall only be applicable to the maximum extent permitted by law; (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (provided that actual fraud shall not exempt from the scope of these RemainCo Debtor releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, *provided*, *however*, that the foregoing exception for Claims or Causes of Action arising out of, or related to, any act or omission of a Released Party that constitutes gross negligence or willful misconduct shall not preserve or retain any Claim or Cause of Action for breach of fiduciary duty, (b) releasing any post-Plan Effective Date obligations of any party or Person under this Plan or the TPI MX V & VI Plan, any transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan, (c) releasing any Causes of Action specifically retained by the RemainCo Debtors pursuant to a schedule of retained Causes of Action to be attached as an exhibit to the Plan Supplement, or (d) releasing any Intercompany Claims, which, for the avoidance of doubt, shall be treated in accordance with Article 4.4 of this Plan.

(b)      **Releases by Holders of Claims and Interests**.

Except as otherwise specifically provided in this Plan or the Confirmation Order, as of the Plan Effective Date, each Releasing Party is deemed to have, hereby conclusively, absolutely, unconditionally, irrevocably and forever released and discharged each of the RemainCo Debtors, and each Released Party from any and all Claims, obligations, rights, suits, damages, and Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative Claims or Causes of Action asserted or assertable on behalf of the Releasing Parties that such Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part: any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Plan Effective Date, including any Claims or Causes of

43

Action based on or relating to, or in any manner arising from, in whole or in part, the RemainCo Debtors (including the governance, management, ownership, or operation thereof or otherwise) or their Estates, the Chapter 11 Cases (including the filing and administration thereof), the RemainCo Debtors' in- or out-of-court restructuring efforts, the GUC Trust, the WindDown Co, the ECP Purchase Agreement, intercompany transactions between or among the RemainCo Debtors or between the RemainCo Debtors and the Affiliated Debtors, the purchase, sale or rescission of any security of the RemainCo Debtors, the Senior Secured Term Loans, the DIP Facility, and any and all related agreements, instruments, or other documents, the formulation, preparation, dissemination, negotiation, entry into, or filing of the Disclosure Statement, this Plan (including the Plan Supplement), or any transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Person regarding any transaction, contract, instrument, document, or other agreement contemplated by this Plan or the reliance by any Released Party on this Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, or this Plan (including the Plan Supplement), the DIP Facility, the filing of the Chapter 11 Cases, the pursuit of confirmation and consummation of this Plan, the administration and implementation of this Plan or Confirmation Order, including the issuance or distribution of securities pursuant to this Plan, or the distribution of property under this Plan or any other agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Plan Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above (i) shall only be applicable to the maximum extent permitted by law; (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (provided that actual fraud shall not exempt from the scope of these releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, (b) releasing any post-Plan Effective Date obligations of any party or Person under this Plan, any transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan, (c) releasing any Causes of Action specifically retained by the RemainCo Debtors pursuant to a schedule of retained Causes of Action to be attached as an exhibit to the Plan Supplement, or (d) releasing any Intercompany Claims, which, for the avoidance of doubt, shall be treated in accordance with Article 4.4 of this Plan. Nothing contained in this Plan, nor the release of any claims pursuant to this Plan, is evidence of the merit, or lack of merit, of the Claims or Causes of Action released by this Plan.

10.7.    *Exculpation.*

Except as otherwise expressly provided in this Plan or the Confirmation Order, to the fullest extent permitted by applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Cause of Action or any Claim related to any act or omission in connection with, relating to, or arising out of, in whole or in part, from the Petition Date through the Plan Effective Date, the RemainCo Debtors (including the governance, management, ownership, or operation thereof or otherwise) or their Estates, the Chapter 11 Cases (including the filing and administration thereof), the RemainCo Debtors' in- or out-of-court restructuring efforts, the GUC Trust, the WindDown Co, the ECP Purchase Agreement, intercompany transactions between or among the RemainCo Debtors or between the RemainCo Debtors and the Affiliated Debtors, the purchase, sale or rescission of any security of the RemainCo Debtors, the DIP Facility, and any and all related agreements, instruments, or other documents, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, this Plan (including the Plan Supplement), or any transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement, or this Plan (including the Plan Supplement), the DIP Facility, the filing of the Chapter 11 Cases, the pursuit

**of confirmation and consummation of this Plan, the administration and implementation of this Plan, including the issuance of securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.  The Exculpated Parties have, and upon completion of this Plan shall be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan. Notwithstanding anything to the contrary in the foregoing, the exculpations set forth above shall not be construed as exculpating any post-Plan Effective Date obligations of any party or Person under this Plan, any transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan.**

### 10.8.    *Retention of Causes of Action and Reservation of Rights.*

In accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to this Article X, the RemainCo Debtors or the WindDown Co, as applicable, shall have, retain, reserve and be entitled to assert, and may enforce all rights to commence and pursue, as appropriate, any and all claims or Causes of Action, whether arising before or after the Petition Date, including any Avoidance Actions (other than Preference Actions) and actions specifically enumerated in the Schedule of Retained Causes of Action, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Plan Effective Date.  The RemainCo Debtors or the WindDown Co, as applicable, expressly reserve all rights to prosecute any and all Causes of Action (other than Preference Actions) against any Person not released pursuant to this Plan; *provided, however*, that (i) the GUC Trust shall exclusively have and retain any and all rights and defenses the RemainCo Debtors had with respect to any Disputed General Unsecured Claim and (ii) the WindDown Co shall exclusively have and retain any and all rights and defenses the RemainCo Debtors had with respect to any other Disputed Claim.

### 10.9.    *Ipso Facto and Similar Provisions Ineffective.*

Any term of any prepetition policy, prepetition contract, or other prepetition obligation applicable to any RemainCo Debtor shall be void and of no further force or effect with respect to such RemainCo Debtor to the extent that such policy, contract, or other obligation is conditioned on, creates an obligation of a RemainCo Debtor as a result of, or gives rise to a right of any Person based on any of the following: (a) the insolvency or financial condition of a RemainCo Debtor; (b) the commencement of the Chapter 11 Cases; or (c) the confirmation or consummation of this Plan, including any change of control that shall occur as a result of such consummation.

## ARTICLE XI.    RETENTION OF JURISDICTION.

### 11.1.    *Retention of Jurisdiction.*

On and after the Plan Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases and this Plan for, among other things, the following purposes:

(a)    to determine any motion, adversary proceeding, proceeding, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

45

(b)    to ensure that distributions to holders of Allowed Claims are accomplished as provided for in this Plan and Confirmation Order and to adjudicate any and all disputes arising from or relating to distributions under this Plan;

(c)    to consider the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(d)    to enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(e)    to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(f)    to hear and determine any application to modify this Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(g)    to hear and determine all Professional Fee Claims;

(h)    to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Plan Supplement, or the Confirmation Order or any agreement, instrument, or other document governing or relating to any of the foregoing;

(i)    to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate this Plan;

(j)    to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(k)    to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(l)    to hear, adjudicate, decide, or resolve any and all matters related to Article X of this Plan, including, without limitation, the releases, discharge, exculpations, and injunctions issued thereunder;

(m)    to resolve disputes concerning Disputed Claims or the administration thereof;

(n)    to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(o)    to enter a final decree closing the Chapter 11 Cases;

(p)    to recover all assets of the Debtors and their Estates, wherever located; and

(q)    to hear and determine any rights, Claims, or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory.

46

11.2.   ***Courts of Competent Jurisdiction***.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of this Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**ARTICLE XII.   MISCELLANEOUS PROVISIONS**.

12.1.   ***Payment of Statutory Fees and Operating Reports***.

All Statutory Fees payable prior to the Plan Effective Date shall be paid by the RemainCo Debtors in full in Cash on the Plan Effective Date.  The RemainCo Debtors shall file all monthly operating reports through the Plan Effective Date.  The RemainCo Debtors and the WindDown Co, as applicable, shall remain obligated to pay quarterly fees to the U.S. Trustee until the closure of the Chapter 11 Cases.

After the Plan Effective Date, the WindDown Co shall file with the Bankruptcy Court quarterly reports when they become due, in a form reasonably acceptable to the U.S. Trustee, which reports shall include a separate schedule of disbursements made by the WindDown Co and GUC Trustee during the applicable period, attested to by the GUC Trustee.

12.2.   ***Substantial Consummation of Plan.***

On the Plan Effective Date, this Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

12.3.   ***Exemption from Certain Transfer Taxes.***

Pursuant to and to the fullest extent permitted by section 1146 of the Bankruptcy Code, (a) the issuance, distribution, transfer, or exchange of any debt, securities, instruments, documents or other interest in the RemainCo Debtors, (b) the creation, filing, or recording of any Lien, mortgage, deed of trust, or other security interest, (c) all sale transactions consummated by the RemainCo Debtors or the WindDown Co, as applicable, pursuant to this Plan (including the Plan Supplement) on and after the Confirmation Date, including any transfers in furtherance of this Plan, (d) any assumption or sale by the RemainCo Debtors or the WindDown Co, as applicable, of their interests in unexpired leases of nonresidential real property or Executory Contracts pursuant to section 365(a) of the Bankruptcy Code, (e) the making, assignment, filing or recording of any lease or sublease or the making or delivery of any deed, bill of sale, assignment, or other instrument of transfer under, pursuant to, in furtherance of, or in connection with this Plan, including any deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under this Plan or the reinvesting, transfer, or sale of any real or personal property of the RemainCo Debtors pursuant to, in implementation of or as contemplated in this Plan, and (f) the issuance, renewal, modification, or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including the Confirmation Order, shall constitute a "transfer under a plan" within the purview of section 1146 of the Bankruptcy Code and shall not be subject to or taxed under any law imposing any stamp or similar tax, including any document recording tax, conveyance fee, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax, or other similar tax or governmental assessment.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument

47

without requiring the payment of any filing fees, documentary stamp tax, deed stamps, transfer tax, intangible tax, or any other stamp or similar taxes.

### 12.4.   *Amendments.*

(a)   *Plan Modifications*.   The Plan may be amended, modified, or supplemented by the RemainCo Debtors, in consultation with the Creditors' Committee and the Prepetition Administrative Agent, in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, unless such amendment, modification, or supplement to this Plan materially and adversely affects (i) the treatment of the DIP Facility or (ii) the treatment of the Senior Secured Term Loan Claims and the recovery the holders of such Claims are entitled to hereunder, in which cases, the RemainCo Debtors shall provide advance notice to and obtain the prior consent of Oaktree in its capacities as DIP Agent or the Prepetition Administrative Agent, respectively.

(b)   *Other Amendments*.   Before the Plan Effective Date, the RemainCo Debtors may make appropriate technical adjustments and modifications to this Plan and the documents contained in the Plan Supplement without further order or approval of the Bankruptcy Court, in consultation with the Creditors' Committee and the Prepetition Administrative Agent.

### 12.5.   *Effectuating Documents and Further Transactions.*

Each of the officers of the RemainCo Debtors is authorized, in accordance with his or her authority under the resolutions of the applicable board of directors or managers, to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

### 12.6.   *Revocation or Withdrawal of Plan.*

The RemainCo Debtors reserve the right to revoke or withdraw this Plan prior to the Plan Effective Date as to any or all of the RemainCo Debtors.  If, with respect to the RemainCo Debtors, this Plan has been revoked or withdrawn prior to the Plan Effective Date, or if confirmation or the occurrence of the Plan Effective Date as to the RemainCo Debtors does not occur on the Plan Effective Date, then, with respect to the RemainCo Debtors: (a) this Plan shall be null and void in all respects; (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption of executory contracts or unexpired leases affected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void; and (c) nothing contained in this Plan shall (i) constitute a waiver or release of any Claim by or against, or any Interest in, the RemainCo Debtors or any other Person; (ii) prejudice in any manner the rights of the RemainCo Debtors or any other Person; or (iii) constitute an admission of any sort by the RemainCo Debtors or any other Person.

### 12.7.   *Severability of Plan Provisions.*

If, before the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the RemainCo Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and

provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to this Plan and may not be deleted or modified without the consent of the RemainCo Debtors, and, solely to the extent such deletion or modification to this Plan materially and adversely affects the treatment of the DIP Facility or the Senior Secured Term Loan Claims and the recovery the holders of such Claims are entitled to under this Plan, the consent of the Prepetition Administrative Agent, in consultation with the Prepetition Administrative Agent and the Creditors' Committee, the GUC Trustee, or the WindDown Agent, as applicable, and (c) nonseverable and mutually dependent.

### 12.8. *Governing Law.*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

### 12.9. *Time.*

In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

### 12.10. *Dates of Actions to Implement Plan.*

In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 12.11. *Immediate Binding Effect.*

Notwithstanding Federal Rules of Bankruptcy Procedure 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Plan Effective Date, the terms of this Plan and Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the RemainCo Debtors, the holders of Claims and Interests, the Released Parties, and each of their respective successors and assigns.

### 12.12. *Deemed Acts.*

Subject to and conditioned on the occurrence of the Plan Effective Date, whenever an act or event is expressed under this Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of this Plan and the Confirmation Order.

### 12.13. *Successor and Assigns.*

The rights, benefits, and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or permitted assign, if any, of each Person.

12.14.     ***Entire Agreement.***

On the Plan Effective Date, this Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

12.15.     ***Exhibits to Plan.***

All exhibits, schedules, supplements, and appendices to this Plan (including the Plan Supplement) are incorporated into and are a part of this Plan as if set forth in full herein.

12.16.     ***Dissolution of Creditors' Committee***.

On the later of the Plan Effective Date or an effective date under a chapter 11 plan for an Affiliated Debtor, the Creditors' Committee shall dissolve; *provided*, *however*, that following the Plan Effective Date, the Creditors' Committee shall continue in existence solely for the purposes of (i) filing and prosecuting applications for allowance of Professional Fee Claims pursuant to sections 330 and 331 of the Bankruptcy Code in accordance with Article 2.5 hereof and (ii) participating in any appeals of the Confirmation Order.  Following the completion of the Creditors' Committee's remaining duties set forth above, and upon the dissolution of the Creditors' Committee, such committee members and their respective Professionals shall cease to have any duty, obligation, or role arising from or related to the Chapter 11 Cases and shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases.

12.17.     ***Notices.***

All notices, requests, and demands to or upon the RemainCo Debtors to be effective shall be in writing (including by electronic transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or addressed as follows:

(a)   if to the RemainCo Debtors:

> TPI Composites, Inc.
> 9200 E. Pima Center Parkway, Suite 250
> Scottsdale, AZ 85258
> Attn:   William E. Siwek
>             Ryan Miller
>             Steven Fishbach
> Email: BSiwek@tpicomposites.com
>             R.Miller@tpicomposites.com
>             SFishbach@tpicomposites.com
>
>             - and –
>
> Weil, Gotshal & Manges LLP
> 700 Louisiana Street, Suite 3700
> Houston, TX 77002
> Attn:    Gabriel A. Morgan
> Telephone: (713) 546-5000
> Email:  gabriel.morgan@weil.com

- and -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Attn:   Matt Barr
        Lauren Tauro
Telephone:  (212) 310-8000
Email:  Matt.Barr@weil.com
        Lauren.Tauro@weil.com

(b)   if to the Senior Secured Lenders or Prepetition Administrative Agent:

Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Attn:   Ari B. Blaut
        Benjamin S. Beller
Telephone:  (212) 558-4000
Email:  blauta@sullcrom.com
        bellerb@sullcrom.com

(c)   if to the DIP Lenders (other than Vestas) or DIP Agent:

Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Attn:   Ari B. Blaut
        Benjamin S. Beller
Telephone:  (212) 558-4000
Email:  blauta@sullcrom.com
        bellerb@sullcrom.com

(d)   if to the Creditors' Committee:

Lowenstein Sandler LLP
1251 Avenue of the Americas
New York, NY 10020
Attn:   Jeffrey L. Cohen
        David M. Posner
        Eric S. Chafetz
        Erica G. Mannix
Telephone:  (212) 262-6700
Email:  jcohen@lowenstein.com
        dposner@lowenstein.com
        echafetz@lowenstein.com
        emannix@lowenstein.com

51

52

After the Plan Effective Date, the WindDown Agent shall have authority to send a notice to Persons providing that, to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Plan Effective Date, the WindDown Agent is authorized to limit the list of Persons receiving documents pursuant to Bankruptcy Rule 2002 to those Persons who have filed such renewed requests.

Dated:  May 22, 2026
       Scottsdale, Arizona

Respectfully submitted,

By:    /s/     *William E. Siwek*
          Name: William E. Siwek
          Title:  Authorized Signatory

On behalf of

TPI Composites, Inc.
TPI Texas, LLC
TPI International, LLC
TPI Turkey, LLC
TPI APAC, LLC
TPI APAC II, Inc.
TPI Turkey II, LLC
TPI Turkey Izbas, LLC
TPI Composites Services, LLC
TPI Mexico, LLC
TPI Mexico II, LLC
TPI Mexico III, LLC
TPI Mexico IV, LLC
Ponto Alto Holdings, LLC
TPI Arizona, LLC
TPI Iowa, LLC
TPI Iowa II, LLC
Composite Solutions, Inc.
TPI Holdings Mexico, LLC
TPI Technology, Inc.

*[SIGNATURE PAGE TO PLAN OF REMAINCO DEBTORS]*

**Exhibit B**

**Notice of Entry of Confirmation Order and Occurrence of Plan Effective Date**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **TPI COMPOSITES, INC.,** *et al.*, | § | **Case No. 25-34655 (CML)** |
| | § | |
| **Debtors.**[1] | § | **(Jointly Administered)** |
| | § | **Re: Docket Nos. 931 & [●]** |
| | § | |

**NOTICE OF ENTRY OF (I) ORDER**
**APPROVING DISCLOSURE STATEMENT ON**
**FINAL BASIS AND CONFIRMING AMENDED JOINT CHAPTER 11**
**PLAN OF LIQUIDATION OF TPI COMPOSITES, INC. AND CERTAIN OF ITS**
**AFFILIATED DEBTORS, AND (II) OCCURRENCE OF PLAN EFFECTIVE DATE**

      **PLEASE TAKE NOTICE** that on [●], 2026, the Honorable Christopher M. Lopez, United States Bankruptcy Judge for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**"), entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving Disclosure Statement on Final Basis and (II) Confirming Amended Joint Chapter 11 Plan of Liquidation of TPI Composites, Inc. and Certain of Its Affiliated Debtors* (Docket No. [●]) (the "**Confirmation Order**") confirming the *Amended Joint Chapter 11 Plan of Liquidation of TPI Composites, Inc. and Certain of Its Affiliated Debtors* (Docket No. 931) (as amended, supplemented, or otherwise modified from time to time, the "**Plan**")[2] and approving, on a final basis, the *Disclosure Statement for Amended Joint Chapter 11 Plan of Liquidation of TPI Composites, Inc. and Certain of Its Affiliated Debtors* (Docket No. 932) (the "**Disclosure Statement**").

      **PLEASE TAKE FURTHER NOTICE** that on [●], 2026, all conditions precedent to consummation of the Plan were satisfied or waived in accordance with Article IX of the Plan, and the Plan Effective Date occurred.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  TPI Texas, LLC (4000), TPI Composites, Inc. (0775), TPI International, LLC (9537), TPI Turkey, LLC (2552), TPI APAC, LLC (8038), TPI APAC II, Inc. (3515), TPI Turkey II, LLC (2551), TPI Turkey Izbas, LLC (0185), TPI Composites Services, LLC (4547), TPI Mexico, LLC (0745), TPI Mexico II, LLC (8269), TPI Mexico III, LLC (7315), TPI Mexico IV, LLC (1231), Ponto Alto Holdings, LLC (0322), TPI Arizona, LLC (9641), TPI Iowa, LLC (2887), TPI Iowa II, LLC (4175), Composite Solutions, Inc. (1486), TPI Holdings Mexico, LLC (1936), and TPI Technology, Inc. (2727).  The Debtors' mailing address is 9200 E. Pima Center Parkway, Suite 250, Scottsdale, AZ 85258.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

PLEASE TAKE FURTHER NOTICE that, unless otherwise provided by the Plan, the Confirmation Order, any other applicable order of the Bankruptcy Court, or agreed to by the holder of an Allowed Administrative Expense Claim and the WindDown Co, all requests for payment of Administrative Expense Claims must be filed with the Bankruptcy Court and served on the WindDown Co by email, first class mail, overnight mail, or hand delivery to the applicable address listed below by no later than [●], 2026 (the "**Administrative Expense Claims Bar Date**").

| WindDown Co |
|---|
| TPI WindDown Co<br>C/o Alvarez & Marsal North America, LLC<br>3424 Peachtree Road NE, Suite 1500<br>Atlanta, GA 30326<br>Attention: Joel Rogers<br>Email: TPIWindDown@alvarezandmarsal.com |

PLEASE TAKE FURTHER NOTICE that such proof of Administrative Expense Claim must include at a minimum (i) the name of the applicable Debtor that is purported to be liable for the Administrative Expense Claim and if the Administrative Expense Claim is asserted against more than one Debtor, the exact amount asserted to be owed by each such Debtor, (ii) the name of the holder of the Administrative Expense Claim, (iii) the asserted amount of the Administrative Expense Claim, (iv) the basis of the Administrative Expense Claim, and (v) supporting documentation for the Administrative Expense Claim.

PLEASE TAKE FURTHER NOTICE that holders of Administrative Expense Claims that are required to file and serve a request for payment of such Administrative Expense Claims but do not file and serve such a request by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the WindDown Co, the RemainCo Debtors or their Assets.

PLEASE TAKE FURTHER NOTICE that, unless otherwise provided by the Plan, the Confirmation Order, or any other applicable order of the Bankruptcy Court, any Person that asserts a Claim based on the rejection of an executory contract or unexpired lease of the RemainCo Debtors pursuant to the Plan must file a Proof of Claim with respect to such Claim with the Bankruptcy Court and serve the same on the GUC Trust, as set forth in the Confirmation Order, no later than 30 days after the later of (i) the Plan Effective Date or (ii) the effective date of rejection of such executory contract or unexpired lease by the RemainCo Debtors pursuant to the Plan (the "**Rejection Damages Claims Bar Date**"). Holders of such Claims that are required to file and serve a Proof of Claim with respect to such Claims that do not file and serve such a Proof of Claim by the Rejection Damages Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Claims against the RemainCo Debtors, the GUC Trust, the WindDown Co, or their respective property.

| GUC Trust | |
|---|---|
| Klestadt Winters Jureller Southard & Stevens, LLP<br>200 West 41st Street, 17th Floor<br>New York, NY 10036<br>Attention: Fred Stevens, as GUC Trustee<br>Email: fstevens@klestadt.com | With a copy to:<br><br>Lowenstein Sandler LLP<br>1251 Avenue of the Americas<br>New York, NY 10020<br>Attention: Jeffrey L. Cohen, Esq.; David M. Posner, Esq.; Eric S. Chafetz, Esq.<br>Email: jcohen@lowenstein.com; dposner@lowenstein.com; echafetz@lowenstein.com<br><br>-and-<br><br>Munsch Hardt Kopf & Harr, P.C.<br>700 Milam Street, Suite 800<br>Houston, TX 77002<br>Attention: John D. Cornwell, Esq.<br>Email: jcornwell@munsch.com |

**PLEASE TAKE FURTHER NOTICE** that copies of the Confirmation Order, the Plan, and the Disclosure Statement may be obtained free of charge by visiting the website maintained by Kroll Restructuring Administration LLC at https://restructuring.ra.kroll.com/TPIComposites.  Parties may also obtain any documents filed in the Chapter 11 Cases for a fee via PACER at https://www.pacer.gov/.  Please note that a PACER password and login are required to access documents via PACER.

**PLEASE TAKE FURTHER NOTICE** that the Plan and the provisions thereof are binding on the RemainCo Debtors, any holder of a Claim against or Interest in any RemainCo Debtor (notwithstanding whether any such holders were Impaired under the Plan, voted to accept or reject the Plan, or failed to vote on the Plan), the Released Parties, and each of their respective successors and assigns, including the WindDown Co.